No. 25-12873

IN THE
**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

FRIENDS OF THE EVERGLADES, INC., et al.,

*Plaintiffs-Appellees*,

v.

EXECUTIVE DIRECTOR,
FLORIDA DIVISION OF EMERGENCY MANAGEMENT,

*Defendant-Appellant.*

On Appeal from the U.S. District Court for the
Southern District of Florida, No. 1:25-cv-22896
The Honorable Kathleen M. Williams

**BRIEF OF INDIANA AND 21 OTHER STATES
AS *AMICI CURIAE* IN SUPPORT OF
APPELLANT'S MOTION FOR STAY PENDING APPEAL**

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

THEODORE E. ROKITA
Attorney General of Indiana

JAMES A. BARTA
Solicitor General

BETSY DENARDI
Special Litigation Counsel

*Counsel for State of Indiana*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1, the undersigned counsel certifies that in addition to the persons identified in the Certificate of Interested Persons and Corporate Disclosure Statement that Defendant-Appellant filed with the Court in their Time-Sensitive Motion to Stay Preliminary Injunction Pending Appeal and for Administrative Stay, the persons listed below are known to have an interest in the outcome of this case:

1. Bailey, Andrew

2. Bird, Brenna

3. Carr, Christopher M.

4. Coleman, Russell

5. Commonwealth of Kentucky

6. DeNardi, Betsy

7. Drummond, Gentner F.

8. Griffin, Tim

9. Hilgers, Michael T.

10. Jackley, Marty

11.  Kautz, Keith G.

i

12.    Knudsen, Austin

13.    Kobach, Kris

14.    Labrador, Raúl

15.    Marshall, Steve

16.    McCuskey, John B.

17.    Murrill, Liz

18.    Paxton, Ken

19.    Rokita, Theodore E.

20.    Skrmetti, Jonathan

21.    State of Alabama

22.    State of Alaska

23.    State of Arkansas

24.    State of Georgia

25.    State of Idaho

26.    State of Indiana

27.    State of Iowa

28.    State of Kansas

29.    State of Louisiana

30.    State of Missouri

31.    State of Montana

32.    State of Nebraska

33.    State of North Dakota

34.    State of Ohio

35.    State of Oklahoma

36.    State of South Carolina

37.    State of South Dakota

38.    State of Tennessee

39.    State of Texas

40.    State of West Virginia

41.    State of Wyoming

42.    Taylor, Treg

43.    Wilson, Alan

44.    Wrigley, Drew H.

45.    Yost, David A.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

DISCLOSURE STATEMENT ...................................................................i

TABLE OF AUTHORITIES ................................................................... v

INTEREST OF AMICI CURIAE ............................................................ 1

STATEMENT OF THE ISSUE............................................................... 2

SUMMARY OF THE ARGUMENT ...................................................... 3

ARGUMENT ......................................................................................... 3

    I.  NEPA Applies to the Federal Government Alone .......................... 4

    II. NEPA Provides No Cause of Action Against States ...................... 6

CONCLUSION ..................................................................................... 13

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Sandoval,*
   532 U.S. 275 (2001).................................................................7

*Atlanta Coal. on Transp. Crisis, Inc. v. Atlanta Regional
   Comm'n,*
   599 F.2d 1333 (5th Cir. 1979)...........................................4, 5

*Biderman v. Morton,*
   497 F.2d 1141 (2d Cir. 1974) ...............................................8

*Citizens Alert Regarding the Env't v. E.P.A.,*
   259 F. Supp. 2d 9 (2d Cir. 2003).......................................12

*Citizens for Smart Growth v. Sec'y of Dep't of Transp.,*
   669 F.3d 1203 (11th Cir. 2012).................................7, 8, 10

*City of Boston v. Volpe,*
   464 F.2d 254 (1st Cir. 1972) .................................................9

*Ctr. for a Sustainable Coast v. U.S. Army Corps of Eng'rs,*
   100 F.4th 1349 (11th Cir. 2024) ..........................................6

*Dep't of Transp. v. Pub. Citizen,*
   541 U.S. 752 (2004).............................................................11

*Ely v. Velde,*
   451 F.2d 1130 (4th Cir. 1971) ..............................................5

*Macht v. Skinner,*
   916 F.2d 13 (D.C. Cir. 1990) ................................................9

*Medina v. Planned Parenthood S. Atl.,*
   145 S. Ct. 2219 (2025).........................................................8

*New York v. United States,*
   505 U.S. 144 (1992).............................................................12

## CASES [CONT'D]

*Ouachita Watch League v. Jacobs,*
   463 F.3d 1163 (11th Cir. 2006) ................................................. 6

*Palm Beach Cnty. Env't Coal. v. Florida,*
   651 F. Supp. 2d 1328 (S.D. Fl. 2009) ................................... 5

*Protect Our Parks, Inc. v. Buttigieg,*
   97 F.4th 1077 (7th Cir. 2024) ........................................... 10

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty.,*
   145 S. Ct. 1497 (2025) ........................................... *passim*

*Steel Co. v. Citizens for a Better Env't,*
   523 U.S. 83 (1998) ................................................... 7

*United States v. S. Fla. Water Mgmt. Dist.,*
   28 F.3d 1563 (11th Cir. 1994) ....................................... 9

*West Virginia v. EPA,*
   597 U.S. 697 (2022) .................................................. 5

*Whitman v. Am. Trucking Ass'n,*
   531 U.S. 457 (2001) .................................................. 5

## STATUTES

5 U.S.C § 701 ............................................................. 7

5 U.S.C § 702 ............................................................. 7

5 U.S.C. § 704 ........................................................... 7

5 U.S.C. § 706 ........................................................... 7

42 U.S.C. § 4332(2)(C) ............................................. 4, 5

42 U.S.C. § 4336e(10)(A) .......................................... 4, 5

## INTEREST OF AMICI CURIAE

The National Environmental Policy Act (NEPA) imposes only a "modest procedural requirement" on federal agencies, directing them to consider the environmental impact of major federal actions. *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 145 S. Ct. 1497, 1513 (2025). Its goal is to "inform agency decisionmaking," not erect a "substantive roadblock." *Id.* at 1507. In recent years, opponents of construction projects have persuaded some courts to stray from what NEPA requires. *See id.* at 1513–14. As the Supreme Court recently reminded, however, "Congress did not design NEPA for *judges* to hamstring new infrastructure and construction projects." *Id.* at 1514.

The district court appears not to have received the message. Invoking NEPA, the court not only blocked further construction of an urgently needed facility for detaining aliens who have entered this country illegally, but also ordered existing parts of the facility dismantled. Dkt. 131 at 80–81. More astonishing still, the court did not merely enjoin federal agencies from undertaking federal actions. The court ordered the State of Florida to halt construction and tear down

1

parts of a facility that it built on state land using state funds. Dkt. 131 at 80–81.

Amici Curiae are the States of Indiana, Alabama, Alaska, Arkansas, Georgia, Idaho, Iowa, Kansas, Kentucky, Louisiana, Missouri, Montana, Nebraska, North Dakota, Ohio, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, West Virginia, and Wyoming. This latest attempt to make NEPA into "blunt and haphazard tool" that allows judges to halt urgently needed construction projects—and even order existing facilities dismantled before a final ruling on the merits—is highly concerning to Amici. *Seven Cnty.*, 145 S. Ct. at 1513. The district court's injunction disregards Congress's decision to impose obligations only on the federal government and to withhold a cause of action for enforcing NEPA against States. And the ruling disregards the preliminary posture of this case, imposing what amounts to final relief. This Court should promptly stay the district court's injunction.

## STATEMENT OF THE ISSUE

Whether the preliminary injunction should be stayed considering that NEPA imposes obligations only on the federal government and provides no cause of action against States.

2

## SUMMARY OF THE ARGUMENT

In halting the construction of a detention facility put up by Florida, and ordering parts of it dismantled, the district court exceeded its authority. NEPA imposes obligations on the federal agencies—not States. Enjoining Florida under NEPA disregards that important limitation, effectively making States subject to NEPA.

The district court also disregarded that Congress declined to provide a cause of action for NEPA violations. The only way to seek review of NEPA issues is through an APA action seeking review of a *federal* agency's final action. In a footnote, the district court asserted it had jurisdiction to enjoin state defendants. That confuses the issue of jurisdiction with whether a cause of action exists. And it overlooks intervening Supreme Court precedent clarifying that Florida's actions are not subject to NEPA and the limits of judicial power.

## ARGUMENT

The district court blocked Florida from building a detention facility on its own land—and even ordered parts of the facility torn down— because the federal government did not prepare an environmental impact (EIS) statement under NEPA. The stay motion identifies many reasons

why that broad injunction exceeds the district court's authority. Amici focus on one of those reasons: Congress never imposed obligations on States or made NEPA enforceable against them.

## I.    NEPA Applies to the Federal Government Alone

By its terms, NEPA applies to the federal government and only the federal government. NEPA requires "all agencies of the federal government" to prepare an environmental impact statement for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). NEPA defines "major Federal actions" to mean "action[s] that the agency carrying out such action[s] determines is subject to substantial Federal control and responsibility." 42 U.S.C. § 4336e(10)(A). That definition can encompass projects that a federal agency is "build[ing], fund[ing], or approv[ing]." *Seven Cnty.,* 145 S. Ct. at 1507. But the fact remains that NEPA's requirements operate only against "agencies of the federal government." 42 U.S.C. § 4332(2)(C).

As the Fifth Circuit explained in a decision binding on this Court, "Congress did not intend NEPA to apply to state, local, or private actions hence, the statute speaks only to 'federal agencies' and requires impact statements only as to 'major federal actions.'" *Atlanta Coal. on Transp.*

*Crisis, Inc. v. Atlanta Regional Comm'n*, 599 F.2d 1333, 1344 (5th Cir. 1979). Or put more simply, NEPA "impose[s] no duties on the states." *Ely v. Velde*, 451 F.2d 1130, 1139 (4th Cir. 1971); *see Palm Beach Cnty. Env't Coal. v. Florida*, 651 F. Supp. 2d 1328, 1339 (S.D. Fl. 2009) (similar).

Throughout its order, the district court misapprehended the significance of this fundamental point. The court focused on whether the federal government exercised sufficient control over the detention facility to make its construction a major federal action. Dkt. 131 at 46, 53–55. As a statutory matter, however, the degree of control is relevant only to whether a federal agency must prepare an EIS. *See* 42 U.S.C. §§ 4332(2)(C), 4336e(10)(A). The fact remains that NEPA imposes obligations only on "agencies of the federal government." § 4332(2)(C). Thus, no matter the degree of control, the statute does not authorize a court to prevent a State from building a facility.

Construing NEPA to authorize judicial control of state actions would raise serious difficulties. "Extraordinary grants of regulatory authority are rarely accomplished through 'modest words,' 'vague terms,' or 'subtle device[s].'" *West Virginia v. EPA*, 597 U.S. 697, 723 (2022) (quoting *Whitman v. Am. Trucking Ass'n.*, 531 U.S. 457, 468 (2001)). Yet

5

that is precisely how the district court construed NEPA. It invoked a definitional provision defining what constitutes a "major federal action" to impose obligations on Florida, ordering Florida to stop building a facility on state land and ordering Florida to remove fencing, lights, and generators it installed. Dkt. 131 at 53–55, 80–81. Its injunction disregards Congress's decision to confine NEPA to federal agencies.

## II.    NEPA Provides No Cause of Action Against States

That plaintiffs lack any cause of action against the State defendants makes the error doubly clear. As this Court has held, NEPA does not "contain[] a private cause of action" against any defendant—federal or state. *Ctr. for a Sustainable Coast v. U.S. Army Corps of Eng'rs,* 100 F.4th 1349, 1355 n.2 (11th Cir. 2024); *see Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1173 (11th Cir. 2006). A project opponent must instead use the Administrative Procedure Act (APA) to seek review of a federal agency's final agency action. *See Sustainable Coast,* 100 F.4th at 1355 n.2; *Ouachita Watch League*, 463 F.3d at 1173.

To state the obvious, this means that federal law provides no mechanism to enjoin States for alleged NEPA violations by federal agencies. The APA "provides for judicial review of *federal* agency actions

and allows *federal* courts to enjoin authorities of the United States government." *Citizens for Smart Growth v. Sec'y of Dep't of Transp.*, 669 F.3d 1203, 1210 (11th Cir. 2012) (citing 5 U.S.C §§ 701, 702) (emphasis added); *see also* 5 U.S.C. §§ 704, 706. "[T]he APA does not apply to state agencies." *Citizens for Smart Growth*, 669 F.3d at 1210.

In deciding to enjoin Florida regardless, the district court sought refuge in *Citizens for Smart Growth*'s statement that it was proper to exercise "jurisdiction" over a state official sued for alleged NEPA violations by the federal government because the state agency was "working in tandem with federal agencies." 669 F.3d at 1210; *see* Dkt. 131 at 80 n.39. That decision—based on state and federal coordination in the planning phase, with scant analysis—hardly justifies what the district court ordered in this case.

First, *Citizens for Smart Growth* addressed whether federal courts had "jurisdiction" over state officials. 669 F.3d at 1210. That is a separate issue from whether a cause of action exists. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). Even if a federal court has jurisdiction over a case, the court must respect Congress's control over causes of action. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

7

That is because "the decision whether to let private plaintiffs enforce a new statutory right poses delicate questions of public policy" best weighed by "elected representatives, not unelected judges." *Medina v. Planned Parenthood S. Atl.*, 145 S. Ct. 2219, 2229 (2025).

Second, to the extent *Citizens for Smart Growth* speaks to the cause-of-action issue, it conflicts with intervening Supreme Court precedent. *Citizens for Smart Growth* and cases like it have enjoined "non-federal parties" in NEPA cases on the theory that those parties accepted federal funding and so "consent[ed]" to federal jurisdiction. *Biderman v. Morton*, 497 F.2d 1141, 1147 (2d Cir. 1974); *see Citizens*, 669 F.3d at 1210 (noting that the project at issue was federally funded). Earlier this year, however, the Supreme Court made clear that private parties cannot sue a State merely because it received federal funds. Rather, Congress must have "clearly and unambiguously" made "private enforcement . . . a funding condition." *Medina*, 145 S. Ct. at 2229.

Here, the district court cited no evidence that Congress made private enforcement of NEPA against Florida a funding condition for anything—or that Florida had accepted such a condition. The court assessed that Florida would be reimbursed later. Dkt. 131 at 64. But

mere receipt of federal funding is not what makes a State subject to suit under *Medina* (especially considering that States have sovereign immunity). And even pre-*Medina* NEPA cases reject the argument that mere anticipation of federal funds provides a basis for granting relief against non-federal actors. *Macht v. Skinner*, 916 F.2d 13, 17 (D.C. Cir. 1990); *see City of Boston v. Volpe*, 464 F.2d 254, 259 (1st Cir. 1972) ("tentatively allocated" federal funds insufficient). Thus, "[t]he possibility that federal funding will be provided in the future is not sufficient to federalize a state project, even when such funding is likely." *United States v. S. Fla. Water Mgmt. Dist.*, 28 F.3d 1563, 1573 (11th Cir. 1994).

*Seven County* reinforces that federal courts lack authority to enter relief against States. There, the Supreme Court made clear that review of an EIS "is not the same thing as review of the agency's final decision concerning the project." *Seven Cnty.*, 145 S. Ct. at 1514. Federal courts might be able to set aside a federal agency's final action should the action violate APA standards. *See id.* But a federal court cannot halt a federal agency's construction of a project simply because the agency's EIS was "inadequate." *Id.* That observation controls here. Under the APA, a federal court may be able to set aside a final agency action. But a court

9

cannot enforce NEPA directly against a State, meaning that the district court had no authority to enjoin Florida, and certainly no authority to demand Florida dismantle the facility, on NEPA grounds.

Third, the "circumstances of this case" are different from those in *Citizens for Smart Growth*. 669 F.3d at 1210. In *Citizens for Smart Growth*, the Court deemed the project at issue to be a federal project because the project received federal funding and the federal government had a "substantial role." *Id*. Here, by contrast, Florida did not seek permission or approval from the federal government to build the facility, nor did the federal government "order the State to construct the site." Dkt. 116-1 ¶ 20. Florida decided to build the site at a location of its choosing. "Construction and day-to-day maintenance of the site is [also] handled exclusively by state officials," Dkt. 116-1 ¶ 24, putting the construction beyond NEPA, *see Protect Our Parks, Inc. v. Buttigieg*, 97 F.4th 1077, 1093 (7th Cir. 2024) ("The federal agencies had (and have) no control over where the Center is being built, and NEPA imposes no requirement that they oversee the Foundation's or the City's actions.").

Rather than focus on which entity was building the facility, the district court sought to focus on the federal government's authority over

"immigration enforcement activities" and the federal government's ability to direct the treatment of alien detainees pursuant to Section 287(g). Dkt. 131 at 55. As the Supreme Court recently emphasized, however, the focus in any NEPA case must be on the "proposed action"—here, constructing the site—not downstream effects. *Seven Cnty.*, 145 S. Ct. at 1515. Any decisions the federal government makes with immigration enforcement are subsequent to and separate from the facility's construction. That it may be "foreseeable" the federal government will use the facility for immigration enforcement does not provide a basis for holding that the construction is subject to NEPA. *Id.*

"Moreover, and importantly," the federal agencies sued here "possess[] no regulatory authority" to determine what Florida builds on its own land. *Seven Cnty.*, 145 S. Ct. at 1516. Under *Seven County*, a federal agency is not responsible for looking at the environmental effects of "projects over which they do not exercise regulatory authority." *Id.* 1516; *see Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 770 (2004). By that same logic, Florida cannot be prevented from building a facility based on a separate federal agency's alleged failure to prepare an EIS.

Indeed, it could raise Tenth Amendment concerns to prevent a State from undertaking a state construction project on state land that does not require federal funding or approval. "A state may, after all, proceed with construction wholly independent of the federal government." *Citizens Alert Regarding the Env't v. E.P.A.*, 259 F. Supp. 2d 9, 21 (2d Cir. 2003). The Constitution does not provide Congress with "the ability to require the States to govern according to Congress' instructions." *New York v. United States*, 505 U.S. 144, 162 (1992). And far from attempting to dictate how States are to assess the environmental impact of their own actions, Congress steered clear in NEPA. The district court should not have second-guessed Congress's judgment about what matters are to be left to the States.

*    *    *

Florida has chosen to construct a facility on state land. The district court exceeded its authority in enjoining state actions and decisions not subject to NEPA. This is especially so in light of the fact that the court's "preliminary" injunction does not preserve the status quo but grants what amounts to final relief—it orders Florida to remove fencing, lights, and generators already installed at the facility and for the federal

government to stop using the facility. Allowing the injunction to stand would contravene the Supreme Court's recent admonition that NEPA's purely procedural cross-check should not be wielded as a substantive roadblock to paralyze development. *Seven Cnty.*, 145 S. Ct. at 1507.

## CONCLUSION

The district court's injunction should be stayed.

Dated: August 26, 2025

Respectfully submitted,

THEODORE E. ROKITA
Indiana Attorney General

/s/ James A. Barta
JAMES A. BARTA
Solicitor General

BETSY DENARDI
Special Litigation Counsel

Office of the Indiana Attorney General
302 W. Washington St.
Indiana Government Center South,
5th Floor
Indianapolis, IN 46204-2770
Phone: (317) 232-0709
Fax: (317) 232-7979
Email: James.Barta@atg.in.gov

*Counsel for State of Indiana*

13

## ADDITIONAL SIGNATORIES

STEVE MARSHALL
Attorney General
State of Alabama

TREG TAYLOR
Attorney General
State of Alaska

TIM GRIFFIN
Attorney General
State of Arkansas

CHRISTOPHER M. CARR
Attorney General
State of Georgia

RAUL LABRADOR
Attorney General
State of Idaho

BRENNA BIRD
Attorney General
State of Iowa

KRIS KOBACH
Attorney General
State of Kansas

RUSSELL COLEMAN
Attorney General
Commonwealth of Kentucky

LIZ MURRILL
Attorney General
State of Louisiana

ANDREW BAILEY
Attorney General
State of Missouri

AUSTIN KNUDSEN
Attorney General
State of Montana

MICHAEL T. HILGERS
Attorney General
State of Nebraska

DREW H. WRIGLEY
Attorney General
State of North Dakota

DAVID A. YOST
Attorney General
State of Ohio

GENTNER F. DRUMMOND
Attorney General
State of Oklahoma

ALAN WILSON
Attorney General
State of South Carolina

MARTY JACKLEY
Attorney General
State of South Dakota

JONATHAN SKRMETTI
Attorney General and Reporter
State of Tennessee

KEN PAXTON
Attorney General
State of Texas

JOHN B. MCCUSKEY
Attorney General
State of West Virginia

KEITH G. KAUTZ
Attorney General
State of Wyoming

## CERTIFICATE OF COMPLIANCE

This amicus brief complies with Federal Rules of Appellate Procedure 27(d)(2)(A) and 29(a)(5) because it contains 2,462 words, excluding the parts that can be excluded under Federal Rule of Appellate Procedure 32(f). This amicus brief also complies with Rule 32(a)(5)–(6) because it has been prepared in a proportionally spaced face using Microsoft Word in 14-point Century Schoolbook font.

Dated: August 26, 2025              /s/ James A. Barta
                                     JAMES A. BARTA
                                     Solicitor General

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ James A. Barta
JAMES A. BARTA
Solicitor General


Office of the Indiana Attorney General
Indiana Government Center South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 232-0709
James.Barta@atg.in.gov