No. 25-12873

IN THE
**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

FRIENDS OF THE EVERGLADES, INC., et al.,
*Plaintiffs-Appellees*,

v.

EXECUTIVE DIRECTOR,
FLORIDA DIVISION OF EMERGENCY MANAGEMENT, et al.,
*Defendant-Appellants.*

On Appeal from the U.S. District Court for the Southern District of
Florida, No. 1:25-cv-22896, The Honorable Kathleen M. Williams

**BRIEF OF AMICI CURIAE CONSERVATION ORGANIZATIONS
IN OPPOSITION TO APPELLANTS' AND AMICI-22 STATES'
MOTION FOR STAY PENDING APPEAL**

Jaclyn Lopez
Florida Bar No. 96445
Jacobs Public Interest Law Clinic
for Democracy and the Environment
Stetson University College of Law
1401 61st St. S.
Gulfport, FL 33707
(727) 490-9190
jmlopez@law.stetson.edu

Rachael Curran
Florida Bar No. 1002221
*Admission Pending*
Jacobs Public Interest Law Clinic
for Democracy and the Environment
Stetson University College of Law
1401 61st St. S.
Gulfport, FL 33707
(727) 537-0802
rcurran1@law.stetson.edu

*Counsel for Amici-Conservation Organizations*

No. 25-12873, *Friends of the Everglades v. Executive Director, Florida Division of Emergency Management*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STASTEMENT

Pursuant to 11th Cir. R. 26.1, amici make the following disclosures:

Amici are nonprofit conservation organizations. They have no parent corporations and no publicly held corporation owns any portion of any amici.

The undersigned counsel hereby certifies that the following is a complete list of all the known trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the case:

1.    The list provided by Appellants in DE 9-1

2.    The list provided by Appellants in DE 20

3.    The list provided by Amici-22 States in DE 19-2

4.    The list provided by Appellees in DE 35

5.    Curran, Rachael

6.    Florida Wildlife Federation

7.    Izaak Walton League of America's Florida Chapter

8.    Lopez, Jaclyn

9.     People's Economic and Environmental Resiliency Group

10.    Sierra Club

11.    Stetson University, Inc. College of Law's Jacobs Public Interest Law Clinic for Democracy and the Environment.

12.    Tropical Audubon Society Incorporated

13.    University of Miami School of Law's Environmental Justice Clinic

14.    VoteWater, Inc.

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

Dated:     September 2, 2025              /s/ Jaclyn Lopez
                                         JACLYN LOPEZ

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STASTEMENT     1

TABLE OF CONTENTS     i

TABLE OF AUTHORITIES     ii

INTERESTS OF AMICI CURIAE     1

STATEMENT OF THE ISSUES     4

SUMMARY OF ARGUMENT     5

ARGUMENT     6

    I.    NEPA's text, structure, and precedent authorized the district court to preserve the status quo—even though non-federal actors are involved—until the merits are resolved or a lawful NEPA review is complete. ................................................................................. 6

    A.     Courts may restrain non-federal steps that would short-circuit NEPA, because the harm NEPA prevents is the foreclosing of alternatives. ........................................................................... 9

    B.     Sovereign immunity is no bar: courts enforce NEPA against federal agencies, and ancillary restraints on non-federal actions do not offend equity. .............................................................. 12

CONCLUSION     14

CERTIFICATE OF COMPLIANCE     16

CERTIFICATE OF SERVICE     16

i

# TABLE OF AUTHORITIES

**Cases**

*Arlington Coalition on Transp. v. Volpe,*
    458 F.2d 1323 (4th Cir. 1972) ........................................................... 13

*Canal Auth. v. Callaway,*
    489 F.2d 567 (5th Cir. 1974) ............................................................ 14

*Federal Wildlife Fed. V. USACE,*
    404 F. Supp. 2d 1352 (S.D. Fla. 2005) ............................................. 10

*Maryland Conservation Council v. Gilchrist,*
    808 F.2d 1039 (4th Cir. 1986) .......................................................... 13

*Monsanto Co. v. Geertson Seed Farms,*
    561 U.S. 139 (2010) ........................................................................ 11

*Named Individual Members of San Antonio Conservation Soc. v Texas Highway Dep't,*
    446 F.2d 1013 (5th Cir. 1971) ........................................... 9, 10, 12, 13

*Seven County Infrastructure Coalition v. Eagle County*
    145 S Ct. 1497 (2025) .................................................................. 10, 11

*Sierra Club v. Marsh,*
    872 F.2d 497 (1st Cir. 1989) ...................................... 9, 10, 11, 12, 14

*Swain v. Brinegar,*
    542 F.2d 364 (7th Cir. 1976) ........................................................... 13

*United States v. S. Fla. Water Mgmt. Dist.,*
    28 F.3d 1563 (11 Cir. 1994) ........................................................... 7-8

*Winter v. NRDC,*
    555 U.S. 7 (2008) .................................................................. 10-11, 11

**Statutes**

See 5 U.S.C. §§ 705–06 ................................................................. 12, 13

**Regulations**

40 C.F.R. §§ 1500—1508 .......................................................................... 6

**Other Authorities**

James Uthmeier (@AGJamesUthmeier), X, Alligator Alcatraz: the one-stop shop to carry out President Trump's mass deportation agenda. (June 19, 2025, at 12:49 ET), https://x.com/AGJamesUthmeier/status/1935741644101374271........... 7

Kate Payne & Mike Schneider, Top Florida official says 'Alligator Alcatraz' will likely be empty within days, email shows, AP NEWS (Aug. 27, 2025), https://apnews.com/article/florida-immigration-detention-center-desantis-alligator-alcatraz-f36fd04c18635eb7938a9ec26a31e92e....................................................... 8

Removal of National Environmental Policy Act Implementing Regulations, 90 Fed. Reg. 10610 (Feb. 25, 2025). .................................... 6

## INTERESTS OF AMICI CURIAE

Amici are conservation organizations (Amici-Conservation Organizations) who share a common goal of restoring, protecting, and stewarding the Greater Everglades ecosystem. They have decades of on-the-ground experience with the Comprehensive Everglades Restoration Plan (CERP) and related federal–state projects; they routinely participate in National Environmental Policy Act (NEPA) processes and, when necessary, litigate to ensure compliance with federal environmental law. For Amici-Conservation Organizations, NEPA is crucial to their missions to protect the environment, and they consistently rely upon NEPA as a procedural safeguard to ensuring transparent, informed decision-making.

Florida Wildlife Federation is a statewide non-profit corporation focused on the conservation of Florida's wildlife and its habitat and other natural resources. It represents thousands of members throughout Florida and to advance its mission and relies on NEPA to provide input on  projects impacting the Greater Everglades ecosystem.

The Izaak Walton League of America's (IWLA) Florida Keys Chapter works to protect the natural resources of South Florida and is

1

one of the founding members of the Everglades Coalition as well as an active participant in that organization's work to restore America's Everglades ecosystem. The IWLA's Florida Keys Chapter has worked on, and submitted public comments related to, many issues involving federally financed projects impacting South Florida and the Greater Everglades.

People's Economic and Environmental Resiliency Group (PEER Group) is a nonprofit law firm based in the Greater Miami region that works at the intersection of environmental and social justice through advocacy, research, education, and litigation support. NEPA has been a crucial tool for PEER Group by ensuring a hard look at governmental action for harmful impacts to the environment and public health.

Sierra Club is a national non-profit organization dedicated to exploring, enjoying, and protecting the wild places of the earth; to practicing and promoting the responsible use of the earth's ecosystems and resources; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives. Sierra Club's members who work to preserve and protect local resources and are frequently

informed by federal review and analysis of projects required under the NEPA.

Tropical Audubon Society is a leading voice for conservation in Miami-Dade County that champions the protection of South Florida's unique ecosystems,  focusing on birds, other wildlife, and their habitats from Everglades wetlands and Biscayne Bay to imperiled Pine Rocklands through advocacy, education, and grassroots engagement. Tropical Audubon Society relies on NEPA as a cornerstone for ensuring transparency, accountability, and science-based decision-making in federal projects that affect South Florida's ecosystems.

University of Miami School of Law's Environmental Justice Clinic is an in-house legal clinic of the University of Miami School of Law, staffed by faculty and students that represents and works alongside communities throughout Florida facing urgent environmental and climate challenges. It employs NEPA as a core tool in its advocacy on behalf of communities and ecosystems in South Florida and the Greater Everglades.

VoteWater is a 501(c)(4) organization with a mission to inspire

Floridians to demand leaders and policies that promote clean water. VoteWater has and plans to continue to participate in NEPA processes for projects impacting South Florida, the Everglades, and clean water.

This appeal directly affects Amici-Conservation Organizations' interests: whether courts may deploy traditional equitable tools—stays and injunctions—to preserve NEPA's "hard look" and public-disclosure functions when non-federal participants would otherwise irretrievably commit resources and foreclose alternatives. No party's counsel authored this brief in whole or part. No party or party's counsel contributed money that was intended to fund preparing or submitting this brief. No persons, other than the Amici-Conservation Organizations, their members, and their counsel, contributed money that was intended to fund preparing or submitting this brief.

Amici-Conservation Organizations seek this Court's leave to submit this brief to address—and refute—arguments as raised by the Appellants' and Amici-22 States' briefs.

## STATEMENT OF THE ISSUES

This brief addresses the issue that, notwithstanding the

intertwined nature of the federal and state actions that resulted in Alligator Alcatraz, NEPA nonetheless imposed obligations on the federal government to conduct at least an environmental assessment prior to the construction and operation of the detention facility. First, because the federal government failed to fulfill its NEPA obligations, the district court was right to enjoin Alligator Alcatraz, regardless of its impact on non-federal actors. Second, conservation organizations in the Greater Everglades ecosystem routinely engage in advocacy on joint federal-state Everglades projects through the NEPA processes. This is the norm, from which Alligator Alcatraz deviated.

## SUMMARY OF ARGUMENT

NEPA and the Administrative Procedure Act (APA) support the district court's equitable approach to preserving the status quo of America's Everglades while the federal government complies with its NEPA obligations and allows the public access to its informed decision-making. NEPA's text and structure require agencies to take a "hard look" at environmental consequences before undertaking or authorizing major Federal actions. United States Supreme Court and Eleventh Circuit Court of Appeals precedent confirm that: (1) NEPA is procedural

but enforceable; (2) the proper remedy for a NEPA violation is equitable and turns on the traditional factors; and (3) courts may preserve the status quo by restraining non-federal steps that would frustrate a federal agency's ongoing NEPA review or moot available alternatives.

## ARGUMENT

**I. NEPA's text, structure, and precedent authorized the district court to preserve the status quo—even though non-federal actors are involved—until the merits are resolved or a lawful NEPA review is complete.**

The district court's order enjoining Alligator Alcatraz after finding there was a high probability that the federal government should have first complied with NEPA is well-supported by precedent and the plain language of the statute.[1] A *federal* agency (Appellant-FEMA) said it would pay Florida *federal* funds to build a facility to hold *federal*

---

[1] On February 25, 2025, the Council on Environmental Quality (CEQ) published an interim final rule removing its NEPA implementing regulations from the Code of Federal Regulations, effective April 11, 2025. *See* Removal of National Environmental Policy Act Implementing Regulations, 90 Fed. Reg. 10610 (Feb. 25, 2025). Agencies therefore rely on the NEPA statute, binding case law, and their own procedures—supplemented by CEQ guidance—rather than CEQ's former regulations. Where this brief references CEQ's guidance, it does so by reference to provisions formerly codified at 40 C.F.R. §§ 1500—1508; the concepts themselves remain grounded in NEPA's text and precedent.

immigration detainees at the request of a *federal* agency (Appellant-ICE). Upon receiving these *federal* requests and commitments, Florida seized land in a *federal* unit of the National Park System, to quickly erect a remote detention facility in the Everglades. Perhaps inspired by President Trump's May 2025 proclamation that he would reopen San Francisco's Alcatraz (incidentally, another unit of the National Park System), Florida Attorney General James Uthmeier coined the Everglades facility "Alligator Alcatraz." James Uthmeier (@AGJamesUthmeier), X, *Alligator Alcatraz: the one-stop shop to carry out President Trump's mass deportation agenda.* (June 19, 2025, at 12:49 ET), https://x.com/AGJamesUthmeier/status/1935741644101374271.

While NEPA explicitly targets federal actions, its scope extends to projects where there is substantial federal involvement or control. Indeed, this Court has found that "[m]ajor federal action can exist when the primary actors are not federal agencies," and that "[t]he touchstone of major federal activity constitutes a federal agency's authority to influence nonfederal activity." *United States v. S. Fla. Water Mgmt. Dist.*, 28 F.3d 1563, 1572 (11 Cir. 1994). The district court's

determination that Alligator Alcatraz constitutes a "major federal action" at the preliminary injunction stage of litigation is supported by unrefuted evidence of the federal government's significant role in the project, including federal funding (Op. at 4, 5, 62, 64), anticipated federal use of the facility (Op. 5, 11, 13, 61-63), and the federal government's overarching authority in immigration enforcement (Op. 5, 11).

The injunction of further construction and dismantling of parts of Alligator Alcatraz that are already constructed and likely impacting the human environment are necessary steps to address the environmental impacts of the project and ensure compliance with NEPA. The district court's order preserves the status quo and does not infringe on any Tenth or Eleventh Amendment rights. Notably, the State's actions in closing down operations at Alligator Alcatraz have apparently already far exceeded the judge's order, with the population imminently set to be brought down to zero, Kate Payne & Mike Schneider, *Top Florida official says 'Alligator Alcatraz' will likely be empty within days, email shows*, AP NEWS (Aug. 27, 2025), https://apnews.com/article/florida-immigration-detention-center-desantis-alligator-alcatraz-

[f36fd04c18635eb7938a9ec26a31e92e](), calling into question whether Appellants can meet their burden in light of the extraordinary nature of the relief they seek: a stay pending appeal. (DE 9, 20).

### A. Courts may restrain non-federal steps that would short-circuit NEPA, because the harm NEPA prevents is the foreclosing of alternatives.

Courts routinely preserve NEPA's integrity by pausing only those steps that would prejudice alternatives, while allowing planning and data collection to continue. *Named Individual Members of San Antonio Conservation Soc. v Texas Highway Dep't*, 446 F.2d 1013 (5th Cir. 1971); *Sierra Club v. Marsh*, 872 F.2d 497, 500–04 (1st Cir. 1989). This is because early construction activities—paving, dewatering, excavation— can lock in alignments, foreclose design options, and irreversibly alter hydrology. And while NEPA binds federal agencies, courts may issue equitable relief to prevent non-federal steps that would defeat the federal NEPA process by foreclosing alternatives before the agency completes review. *See San Antonio Conservation Soc'y*, 446 F.2d at 1029–30. That is exactly the balance the district court struck here.

NEPA is about process and timing, and the relevant harm arises when actions precommit projects in ways that limit the "choice of

reasonable alternatives." Courts therefore enjoin non-federal steps where necessary to prevent irretrievable commitments that would defeat NEPA's purposes. *See Sierra Club,* 872 F.2d at 500–04 (construction before NEPA completion risks biasing outcomes). Fifth Circuit law—binding here—halted state construction pending federal compliance. *See Named Individual Members of the San Antonio Conservation Soc'y v. Texas Highway Dep't*, 446 F.2d 1013, 1029–30 (5th Cir. 1971). The S.D. Florida in *Florida Wildlife Federation* has likewise held "[i]n NEPA cases, courts have enjoined non-federal entities pending further environmental review after finding violations of NEPA by a federal agency … [where] … the federal agency is in some way also a proponent of the proposed project, including by having provided federal funds." *Federal Wildlife Fed. V. USACE*, 404 F. Supp. 2d 1352, 1360 (S.D. Fla. 2005). Here, the federal government has not only asked the State to construct the detention facility, but has also apparently promised and set aside funds for Alligator Alcatraz. Op. 5, 62.

Appellants and Amici-22 States rely on *Seven County Infrastructure Coalition v. Eagle County* 145 S Ct. 1497 (2025), *Winter v. NRDC*, 555 U.S. 7 (2008), and *Monsanto Co. v. Geertson Seed Farms*,

561 U.S. 139 (2010) for their position that the district court lacked authority to enjoin Alligator Alcatraz. *Seven County* clarified that agencies need to analyze only effects within their authority and causation chain, and cautioned against remedies broader than necessary. 145 S. Ct. 1497, 1505–13 (2025). It did not hold that courts lack power to preserve NEPA's decision space or that NEPA vanishes from federal–state projects. Tailored injunctions remain available where the agency's NEPA is likely deficient and non-federal actions would constrain alternatives.

Moreover, injunctions are equitable, not disfavored. They must be justified on the record. *Winter* and *Monsanto* require the familiar four-factor test and tailoring—nothing more. Where, as here, non-federal steps risk irretrievable commitments that would defeat NEPA's purpose, narrowly tailored relief is appropriate. *Sierra Club*, 872 F.2d at 500–04. *Winter* and *Monsanto* counsel tailoring, not abdication. See 555 U.S. at 24; 561 U.S. at 165–66. Courts calibrate NEPA remedies to the equities—targeting activities that would irreversibly alter landscapes or lock in alternatives, while allowing planning and data collection to proceed. Here, the NEPA harm is precommitment: losing

meaningful alternatives and biasing outcomes once construction begins. *See Sierra Club*, 872 F.2d at 500–04. Courts therefore must halt steps that would make federal reconsideration a sham—even when taken by state sponsors—pending lawful NEPA review.

### B. Sovereign immunity is no bar: courts enforce NEPA against federal agencies, and ancillary restraints on non-federal actions do not offend equity.

Amici-Conservation Organizations do not contend that NEPA directly binds states. Rather, courts enforce NEPA against federal agencies under the APA, and fashion equitable relief to prevent actions (including by non-federal actors) that would make a mockery of NEPA by foreclosing alternatives before the federal agency completes its review. See 5 U.S.C. §§ 705–06. That equitable authority extends to orders preserving the status quo—even if they incidentally restrain a state actor who is poised to undertake construction that would make the federal NEPA exercise futile. *San Antonio Conservation Society*, 446 F.2d at 1029–30. The relief runs against federal defendants and preserves their jurisdiction and duties under NEPA; any incidental restraint on state actors flows from the court's equitable power to prevent irreparable harm to the federal NEPA process. *See* 5 U.S.C. §§

705–06; *San Antonio Conservation Society*, 446 F.2d at 1029–30.

When a project depends on federal approvals, funding, or permissions, courts may issue equitable relief that halts prejudicial state steps pending lawful federal NEPA review. *See San Antonio Conservation Soc'y*, 446 F.2d at 1028–31 (enjoining right-of-way acquisition and construction pending compliance); *Arlington Coalition on Transp. v. Volpe*, 458 F.2d 1323, 1337–40 (4th Cir. 1972) (barring further work that would foreclose alternatives); *Maryland Conservation Council v. Gilchrist*, 808 F.2d 1039, 1042–44 (4th Cir. 1986) (injunction proper to preserve the status quo where federal approvals were required); *Swain v. Brinegar*, 542 F.2d 364, 369–73 (7th Cir. 1976) (recognizing federal obligations and cautioning against state-led actions that would circumvent NEPA).

The Amici-22 States flirt with a Tenth Amendment concern, suggesting that the district court's injunction interferes with Florida's sovereign authority to construct facilities on state land. (DE 19-2 at 10). The order does not commandeer Florida to regulate; it temporarily bars actions that would frustrate compliance with federal law. Prospective relief of this sort is routine where federal approvals are prerequisites to

the project's realization. Nor does the order provide final relief. The purpose of a preliminary injunction is to preserve meaningful choice among alternatives and prevent irreparable harm. When the "currently existing status quo itself is causing . . . irreparable injury," courts may restore the status quo ante—even if doing so requires dismantling certain features. *Canal Auth. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974). NEPA jurisprudence recognizes this momentum problem—early construction can bias outcomes and foreclose alternatives—justifying tailored interim relief. *Sierra Club*, 872 F.2d at 500–04. Again, *Winter* and *Monsanto* confirm that such relief must be justified and narrowly tailored; the district court's order satisfies both. Meanwhile, the Tenth Amendment does not shield compliance with federal laws that apply to projects with significant federal influence. The district court's injunction respects the balance of federal and state responsibilities and ensures that NEPA's requirements are met in the context of a project with substantial federal involvement.

## CONCLUSION

The district court's injunction is consistent with NEPA's purpose and the APA's reach, ensuring compliance with federal law in the

context of a project with substantial federal influence and involvement. Any theory to the contrary fails to account for the broader implications of federal involvement and would destabilize that settled practice, erode NEPA's core guarantees, and undermine the tremendous investments made in restoring America's Everglades. This Court should not allow that to happen and should affirm the district court's order.

Respectfully submitted,

Dated: September 2, 2025

/s/ Jaclyn Lopez
Jaclyn Lopez
Florida Bar No. 96445
Jacobs Public Interest Law Clinic
for Democracy and the Environment
Stetson University College of Law
1401 61st St. S.
Gulfport, FL 33707
(727) 490-9190
jmlopez@law.stetson.edu

/s/ Rachael Curran
Rachael Curran
*Admission Pending*
Florida Bar No. 1002221
Jacobs Public Interest Law Clinic
for Democracy and the Environment
Stetson University College of Law
1401 61st St. S.
Gulfport, FL 33707
(727) 537-0802
rcurran1@law.stetson.edu

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 27(d)(2)(A) and 29(a)(5) because it contains 2,598 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

Dated:      September 2, 2025          /s/ Jaclyn Lopez
                                       JACLYN LOPEZ

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 25(d), I certify that on September 2, 2025, I filed the foregoing via CM/ECF, which will serve all counsel of record.

Dated:      September 2, 2025          /s/ Jaclyn Lopez
                                       JACLYN LOPEZ