No. 25-12873

In the United States Court of Appeals
for the Eleventh Circuit

FRIENDS OF THE EVERGLADES, INC., ET AL.,
*Plaintiffs-Appellees,*

V.

EXECUTIVE DIRECTOR, FLORIDA DIVISION OF
EMERGENCY MANAGEMENT, ET AL.,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Southern District of Florida
No. 25-cv-22896-KMW

## APPELLANT FDEM'S RESPONSE IN OPPOSITION TO APPELLEES' MOTION TO EXPEDITE APPEAL

James Uthmeier
  *Attorney General of Florida*
Jeffrey Paul DeSousa
  *Acting Solicitor General*
Nathan A. Forrester
  *Chief Deputy Solicitor General*
Kevin A. Golembiewski
  *Senior Deputy Solicitor General*
Robert S. Schenck
  *Assistant Solicitor General*
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399
jeffrey.desousa@myfloridalegal.com

September 22, 2025

Jesse Panuccio
Evan Ezray
David Costello
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, FL 33301
jpanuccio@bsfllp.com

*Counsel for Kevin Guthrie, in his official capacity as Executive Director of the Florida Division of Emergency Management*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellant Kevin Guthrie, in his official capacity as Executive Director of the Florida Division of Emergency Management (FDEM), certifies that, to the best of his knowledge, the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 to 26.1-3:

1.  Ajizian, Christopher

2.  Bailey, Andrew

3.  Barta, James A.

4.  Bennett, Elise Pautler

5.  Bird, Brenna

6.  Boies Schiller Flexner LLP

7.  Bonzon-Keenan, Geraldine

8.  Brabender, Allen M.

9.  Burkhardt, Dominique

10. Carpenter, Hayley A.

11. Carr, Christopher M.

12. Center for Biological Diversity

13. Chris Ajizian P.A.

14. Coe, Alisa

15. Coffey Burlington P.L.

16. Coleman, Russel

17. Commonwealth of Kentucky

18. Costello, David M.

19. Crockett, Jeffrey B.

20. Curran, Rachael

21. DeNardi, Betsy

22. DeSousa, Jeffrey Paul

23. Drummond, Gentner F.

24. Earthjustice

25. Ezray, Evan M.

26. Ficarelli, Dante

27. Florida Division of Emergency Management

28. Florida Wildlife Federation

29. Forrester, Nathan A.

30. Friedman, Todd R.

31.    Friends of the Everglades, Inc.

32.    Galloni, Tania

33.    Golembiewski, Kevin A.

34.    Griffin, Tim

35.    Gustafson, Adam R.F.

36.    Guthrie, Kevin

37.    Hiaasen, Scott

38.    Hilgers, Michael T.

39.    Izaak Walton League of America's Florida Chapter

40.    Jackley, Marty

41.    Kautz, Keith G.

42.    Knudsen, Austin

43.    Kobach, Kris

44.    Kula & Associates, P.A.

45.    Kula, Elliot B.

46.    Labrador, Raúl

47.    Lopez, Jaclyn

48.    Lyons, Todd

49.　　Marshall, Steve

50.　　Martinez, Hon. Jose E.

51.　　McCuskey, John B.

52.　　Miami-Dade County

53.　　Miccosukee Tribe of Indians

54.　　Murray, David M.

55.　　Murrill, Liz

56.　　Noem, Kristi

57.　　O'Byrne, Hayden P.

58.　　Panuccio, Jesse

59.　　Paxton, Ken

60.　　People's Economic and Environmental Resiliency Group, Inc.

61.　　Perez, Monica Rizo

62.　　Piropato, Marissa

63.　　Raurell, Carlos J.

64.　　Rokita, Theodore E.

65.　　Sierra Club

66.　　Skrmetti, Jonathan

67.     State of Alabama

68.     State of Alaska

69.     State of Arkansas

70.     State of Georgia

71.     State of Idaho

72.     State of Iowa

73.     State of Kansas

74.     State of Louisiana

75.     State of Missouri

76.     State of Montana

77.     State of Nebraska

78.     State of North Dakota

79.     State of Ohio

80.     State of Oklahoma

81.     State of South Carolina

82.     State of South Dakota

83.     State of Tennessee

84.     State of West Virginia

85. State of Wyoming

86. Stetson University, Inc. College of Law's Jacobs Public Interest Law Clinic for Democracy and the Environment

87. Quiñones, Jason A. Reding

88. Sanchez, Hon. Eduardo I.

89. Schenck, Robert S.

90. Schwiep, Paul J.

91. Singer, Frank

92. Stander, Robert

93. Taylor, Treg

94. Todd R. Friedman P.A.

95. Torres, Hon. Edwin G.

96. Torstensen, Peter M.

97. Totoiu, Jason Alexander

98. Tropical Audubon Society

99. United States Department of Homeland Security

100. United States Immigration and Customs Enforcement

101. University of Miami School of Law's Environmental Justice Clinic

102. Uthmeier, James

103. VoteWater, Inc.

104. Wahl, Christopher J.

105. Walter, Elaine D.

106. Williams, Hon. Kathleen M.

107. Wilson, Alan

108. Wrigley, Drew H.

109. Yost, David A.

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

## INTRODUCTION

At Appellees' insistence, the district court barreled through important and complicated questions of venue, jurisdiction, federalism, administrative procedure, and immigration law, all to enter a sweeping preliminary injunction requiring the expensive and disruptive decommissioning of a detention facility housing thousands of illegal aliens. A motions panel of this Court stayed that injunction and the proceedings below so that a merits panel may give those issues the careful attention they deserve. Now, Appellees again seek a rushed ruling, despite the sweeping implications of this case for national immigration-enforcement efforts. Worse still, Appellees seek to have FDEM bear the burden of their expedition request by proposing a schedule that shrinks Appellants' briefing period by nearly a month, all while preserving nearly the full response time for themselves.

Appellees have not come close to justifying their request. They ground their motion in hypothetical harms that the stay panel already rejected. They ignore that an injunction should not issue even if they succeed on appeal. They delayed in seeking expedition and thus have

unclean hands.  And they have not shown that this legally significant case is suitable for expedition.

For these and the reasons below, this Court should deny expedition and allow this appeal to proceed in the ordinary course.  If this Court does expedite, however, it should adopt FDEM's alternative briefing proposal and reject Appellees' effort to impose a one-sided schedule.

## ARGUMENT

I.     APPELLEES HAVE NOT SHOWN GOOD CAUSE TO EXPEDITE REVIEW

**1.**  "[A]n appeal may be expedited only by the court upon motion and for good cause shown."  11th Cir. R. 27-1, I.O.P. 3.  To make that showing, Appellees rely (at 2-4) on the district court's harm findings.  By their lights, Appellees say they will suffer irreparable harm because changes at the facility may increase water run-off in a 72-hour, 100-year storm, or harm species that have not been detected near the site for years. *See* Stay Op.32; Doc. 38-10; Vol. I 275:8-25, 276:6-12; Vol. II 91:11-13.

Absent from Appellees' motion is the stay panel's treatment of those alleged harms.  The panel questioned Appellees' narrative because it does not account "for the Site's former use as an airport in order to establish a reliable baseline to evaluate possible future environmental impacts." Stay Op.32.  And rightly so.  Before Florida used the TNT facility as an

immigration-detention hub, it was a busy airport that "routinely host[ed] over 150 aviation operations each day." FDEM App'x 1538-39. From January 1, 2025 through July 23, 2025, nearly 28,000 takeoffs and landings occurred at TNT involving aircraft of many sizes (including jets and military helicopters). Stay Op.4; FDEM App'x 1493, 1522-24, 1541.

Neither Appellees nor the district court sufficiently accounted for that preexisting use. *Cf.* Stay Op.32. Yet without a "reliable baseline," Stay Op.32, Appellees cannot offer any cogent theory that the facility will make things worse, *cf. Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1307-08 (11th Cir. 2014) (affirming exclusion of causation experts because of failure to consider "baseline" background risk). To the contrary, because "[f]light traffic at the airport" has "decreased approximately 98% since the detention facility opened," FDEM App'x 1494, the TNT site may indeed *reduce* harmful water runoff, *e.g.*, Vol. II 88:24-25, 89:1-14 (Plaintiffs' water expert did not compare harmful runoff between airport use and detention use), and reduce harm to habitat, *e.g.*, Vol. I 272:24-25 (Plaintiffs' panther expert agrees that airports are not "typically good natural habitats for panthers"). Because Appellees "accounted for" none of that, Stay Op.32, they can show neither harm nor

3

good cause. And even if they could, Appellees' alleged harms are exceptionally long-tailed. Doc. 131 at 70 n.31 ("[T]he harms Plaintiffs fear take time to accrue[.]"). Appellees have thus not cited a realistic possibility that any harm they allege will accrue during the time it takes this Court to resolve the appeal.

**2.** Appellees' good-cause claim suffers another defect: It assumes they are entitled to an injunction should they win. They are not. NEPA errors "may not necessarily require a court to vacate the agency's ultimate approval of a project, at least absent reason to believe that the agency might disapprove the project if it added more to the EIS." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 145 S. Ct. 1497, 1514 (2025). Here, Florida's project has the support of the President and the DHS Secretary, promotes critical federal and state policies, and risks minimal environmental impact. *See* FDEM Stay Mot.38-39. It blinks reality to think DHS would forgo a "blueprint for detention facilities" that detains the "worst of the worst," FDEM App'x 1553, if only some national-security specialist spent more time poring over panther telemetry. And because additional process would make no difference, *Seven County* says an injunction is inappropriate. The stay panel noted that the district court

largely ignored the implications of *Seven County* for this case. Stay Op.10. Now, Appellees seek to do so again by ignoring, in their request to expedite, one of the case's central teachings.

**3.** Appellees have also forfeited any "right ... to expedited consideration" by slow-walking their expedition request. *Morland v. Sprecher*, 443 U.S. 709, 710 (1979); *see also Carver v. Liberty Mut. Ins. Co.*, 277 F.2d 105, 109 (5th Cir. 1960) ("Equity aids the vigilant."). This Court docketed FDEM's appeal on August 22. Had Appellees truly thought time was of the essence, they could have moved to expedite immediately. Instead, they waited nearly three weeks to do so, seeking to expedite only *after* this Court stayed the district court's injunction pending appeal. That is pure gamesmanship.

Tellingly, Appellees have not offered to "self-expedite the case by filing [their] briefs early." *Medeva Pharma Suisse A.G. v. Par Pharm., Inc.*, 430 F. App'x 878, 880 (Fed. Cir. 2011). Rather, they propose a lopsided schedule granting them nearly the full time available to file their answer briefs, while shrinking Appellants' ordinary briefing period by nearly a month. Mot.4. Gamesmanship is not good cause. *See Morland*, 443 U.S. at 710 (declining to order expedited review when

movant waited weeks before seeking expedition); *see also Shaffer v. Def. Intel. Agency*, 2011 WL 13243826, at \*2 (D.D.C. Feb. 17, 2011) ("A party's failure to act promptly in … requesting expedited proceedings may preclude the court from granting such a request.").

**4.** In all events, this important case is ill-suited for expedition. It comes to this Court after a four-day evidentiary hearing involving ten live witnesses, twenty-four unique declarants, nearly 150 exhibits, and over 1,000 pages of transcript. Many of the arguments—like Appellees' alleged harms and the balance of the equities—turn on careful review of the factual record. *See, e.g.*, FDEM Stay Mot.39-44. And this case is rife with weighty and consequential legal and policy questions, including interplay between NEPA and the APA, FDEM Stay Mot.23-32, 37; the proper construction and application of the INA's jurisdiction-stripping provisions, FDEM Stay Mot.32-36; the state and federal government's ability to combat the scourge of illegal immigration, FDEM Stay Mot.4-5, 42-44; and whether NEPA requires every local police department with a 287(g) agreement to conduct an EIS before modifying local jails.

Despite the exceptional importance of these issues, this case's extraordinarily compressed posture (at Appellees' insistence) has thus

far allowed FDEM just a few days to brief them.  *E.g.*, Doc. 16 (TRO response filed just three days after TRO motion); FDEM Stay Mot. (filed August 26, just five days after the district court entered its injunction). As a result, the complex legal issues presented have not received the measured, in-depth consideration they deserve.  For issues as weighty and wide-ranging as these, it is better to measure twice and cut once.[1]

## II. IF THIS COURT EXPEDITES REVIEW, IT SHOULD ADOPT FDEM'S ALTERNATIVE SCHEDULE

This Court should not expedite this appeal.  But if it does, it should not adopt Appellees' proposed schedule, which is notably one-sided and unworkable.  On Appellees' timeline, Appellants have twelve days from the filing of the expedition motion to write an opening brief and seven days to draft a reply.  Appellees, by contrast, grant themselves twenty-eight days (nearly the normal briefing period) to draft their answer brief.

---

[1] Appellees invoke (at 3) FDEM's previous request to expedite consideration of its stay motion.  That presents an entirely different issue.  As the stay panel recognized, FDEM was suffering immediate irreparable harm from the district court's hasty and ill-considered injunction.  Now that FDEM's immediate harm has been abated—and given there is no immediate harm to Appellees—this matter should receive the measured consideration it deserves.

If Appellees want this case expedited, they—not this Court or Appellants—should bear the burden.

Nor is Appellees' schedule workable. FDEM's lead counsel is scheduled for a trial period starting on September 22 and has a Florida Supreme Court argument on October 9. Given those conflicts, FDEM had planned to request a thirty-day phone extension for its opening brief, extending its deadline to October 31, 2025.

Thus, if this Court grants expedition, it should set a briefing schedule that appropriately accommodates FDEM and places the onus of expedition on the moving parties.

If this Court expedites this case (and it should not, for the reasons stated above), FDEM proposes the following schedule:

- Appellants' Opening Briefs: October 24, 2025

- Appellees' Response Briefs: November 7, 2025

- Appellants' Reply Briefs: Fourteen days after last-filed Response Brief

Contrary to Appellees' proposal, FDEM's schedule avoids unnecessary conflict with counsel's schedule, requires the moving parties to bear the brunt of expedition, and still completes briefing by mid-

November at latest. That schedule also permits Appellees to "self-expedite the case by filing [their] briefs early," *Medeva*, 430 F. App'x at 880, allowing them to accelerate the appeal at their discretion.

## CONCLUSION

For these reasons, this Court should deny the motion to expedite. But if this Court expedites, it should adopt FDEM's proposed schedule.

Dated: September 22, 2025

James Uthmeier
  *Attorney General of Florida*
Jeffrey Paul DeSousa (FBN 110951)
  *Acting Solicitor General*
Nathan A. Forrester (FBN 1045107)
  *Chief Deputy Solicitor General*
Kevin A. Golembiewski (FBN 1002339)
Robert S. Schenck (FBN 1044532)
  *Assistant Solicitor General*
**Office of the Attorney General**
The Capitol, PL-01
Tallahassee, FL 32399
jeffrey.desousa@myfloridalegal.com

Respectfully submitted,

s/ *Jesse Panuccio*
Jesse Panuccio (FBN 31401)
Evan Ezray (FBN 1008228)
David Costello (FBN 1004952)
**BOIES SCHILLER FLEXNER LLP**
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, FL 33301
jpanuccio@bsfllp.com

*Counsel for Kevin Guthrie, in his official capacity as Executive Director of the Florida Division of Emergency Management*

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limits of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 1,625 words.

2. This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

s/ *Jesse Panuccio*
Jesse Panuccio

# CERTIFICATE OF SERVICE

I certify that on September 22, 2025, I electronically filed this document with the Clerk of Court using the Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

s/ *Jesse Panuccio*
Jesse Panuccio
