No. 25-12873

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

FRIENDS OF THE EVERGLADES, INC., et al.,

*Plaintiffs-Appellees*,

v.

EXECUTIVE DIRECTOR,
FLORIDA DIVISION OF EMERGENCY MANAGEMENT,
*et al.*,

*Defendant-Appellant.*

On Appeal from the U.S. District Court for the
Southern District of Florida, No. 1:25-cv-22896
The Honorable Kathleen M. Williams

## BRIEF OF INDIANA AND 23 OTHER STATES
## AS AMICI CURIAE IN SUPPORT OF APPELLANT

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

THEODORE E. ROKITA
Attorney General of Indiana

JAMES A. BARTA
Solicitor General

JOHN P. LOWREY
Asst. Dep. Solicitor General

BETSY DENARDI
Special Litigation Counsel

*Counsel for Amici Curiae*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1, the undersigned counsel certifies that, in addition to the persons identified in the Corrected Opening Brief for the Federal Defendants' Certificate of Interested Persons and Corporate Disclosure Statement (Dkt. 86, at C-1–C-5), the persons listed below are also known to have an interest in the outcome of this case:

1.    Cox, Stephen J.

2.    Fitch, Lynn

3.    Lowrey, John P.

4.    Montenegro, Steve

5.    Petersen, Warren

6.    State of Mississippi

7.    The Arizona Legislature

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

/s/ James A. Barta
JAMES A. BARTA

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ........................................................................i

TABLE OF AUTHORITIES ................................................................iii

INTEREST OF AMICI CURIAE ............................................................ 1

STATEMENT OF THE ISSUE ............................................................. 2

SUMMARY OF THE ARGUMENT ...................................................... 2

ARGUMENT ...................................................................................... 4

I.   NEPA Does Not Authorize Injunctions Against States ................. 4

II.  *Citizens for Smart Growth* Does Not Sanction the Injunction ........ 7

III. The Preliminary Injunction Disregards Traditional Limits on Equitable Relief ...................................................................... 14

CONCLUSION ................................................................................. 17

# TABLE OF AUTHORITIES

## CASES

*Alabama v. U.S. Army Corps of Eng'rs,*
    424 F.3d 1117 (11th Cir. 2005) ........................................................ 6, 14

*Alexander v. Sandoval,*
    532 U.S. 275 (2001) ................................................................................ 8

*Atlanta Coal. on Transp. Crisis, Inc. v. Atlanta Reg'l Comm'n,*
    599 F.2d 1333 (5th Cir. 1979) ................................................................ 5

*Biderman v. Morton,*
    497 F.2d 1141 (2d Cir. 1974) ................................................................. 8

*Citizens for Smart Growth v. Sec'y of Dep't of Transp.,*
    669 F.3d 1203 (11th Cir. 2012) ............................................. 3, 7, 8, 10

*City of Boston v. Volpe,*
    464 F.2d 254 (1st Cir. 1972) ............................................................... 11

*College Saving Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,*
    527 U.S. 666 (1999) ................................................................................ 9

*Ctr. for a Sustainable Coast v. U.S. Army Corps of Eng'rs,*
    100 F.4th 1349 (11th Cir. 2024) ....................................................... 5, 15

*Dep't of Transp. v. Pub. Citizen,*
    541 U.S. 752 (2004) .............................................................................. 12

*Doe v. Bush,*
    261 F.3d 1037 (11th Cir. 2001) ............................................................. 6

*Ely v. Velde,*
    451 F.2d 1130 (4th Cir. 1971) ............................................................... 5

## CASES [CONT'D]

*Friends of Lydia Ann Channel v. U.S. Army Corps of Eng'rs,*
701 F. App'x 352 (5th Cir. 2017).......................................................... 6

*Garrido v. Dudek,*
731 F.3d 1152 (11th Cir. 2013).......................................................... 14

*Macht v. Skinner,*
916 F.2d 13 (D.C. Cir. 1990) .............................................................. 11

*Medina v. Planned Parenthood,*
606 U.S. 357 (2025)........................................................................... 8, 9

*Named Individual Members of San Antonio Conservation
Soc. v. Texas Highway Dep't,*
446 F.2d 1013 (5th Cir. 1971) .............................................................. 8

*New York v. United States,*
505 U.S. 144 (1992)..................................................................... 13, 14

*Old Town Neighborhood Ass'n Inc. v. Kauffman,*
333 F.3d 732 (7th Cir. 2003).............................................................. 15

*Ouachita Watch League v. Jacobs,*
463 F.3d 1163 (11th Cir. 2006)............................................................ 5

*Palm Beach Cnty. Env't Coal. v. Florida,*
651 F. Supp. 2d 1328 (S.D. Fl. 2009).................................................. 5

*Protect Our Parks, Inc. v. Buttigieg,*
39 F.4th 389 (7th Cir. 2022) .............................................................. 11

*Protect Our Parks, Inc. v. Buttigieg,*
97 F.4th 1077 (7th Cir. 2024) ............................................................ 11

*Save Barton Creek Ass'n v. Fed. Highway Admin.,*
950 F.2d 1129 (5th Cir. 1992)............................................................ 13

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty.,*
605 U.S. 168 (2025)......................................... 1, 2, 9, 10, 12, 13, 15, 16

CASES [CONT'D]

*Sierra Club v. Marsh,*
    872 F.2d 497 (1st Cir. 1989) ................................................................. 8

*Starbucks Corp. v. McKinney,*
    602 U.S. 339 (2024)........................................................................... 14

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998).............................................................................. 7

*United States v. S. Fla. Water Mgmt. Dist.,*
    28 F.3d 1563 (11th Cir. 1994) ........................................................... 11

*Vieux Carre Prop. Owners, Residents & Assocs., Inc. v.*
    *Brown,*
    875 F.2d 453 (5th Cir. 1989) ............................................................... 7

*West Virginia v. EPA,*
    597 U.S. 697 (2022)........................................................................... 13

*Whitman v. Am. Trucking Ass'n.,*
    531 U.S. 457 (2001)........................................................................... 13

STATUTES AND RULES

5 U.S.C. § 701(b)(1) ................................................................................. 6

5 U.S.C. § 704 .......................................................................................... 6

5 U.S.C. § 706 ..................................................................................... 6, 15

42 U.S.C. § 4332(2)(C) ..................................................................... 4, 5, 12

42 U.S.C. § 4336e(10) ............................................................................. 4

42 U.S.C. § 4336e(10)(A) ...................................................................... 12

42 U.S.C. § 4336e(10)(B)(i) ................................................................... 11

11th Cir. R. 26.1-1 ................................................................................... i

Fed. R. App. P. 26.1 ................................................................................ i

## INTEREST OF AMICI CURIAE

Indiana and Alabama, Alaska, Arkansas, Georgia, Idaho, Iowa, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, Ohio, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, West Virginia, Wyoming, and the Arizona Legislature, submit this amicus brief addressing the district court's unwarranted expansion of the National Environmental Policy Act (NEPA).

As the Supreme Court recently reiterated, NEPA imposes only a "modest procedural requirement" on *federal* agencies, directing them to consider the environmental impact of major *federal* actions. *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 183 (2025). Its goal is to "inform [federal] agency decisionmaking," not erect a "substantive roadblock." *Id.* at 173. In recent years, opponents of construction projects have persuaded some courts to stray from what NEPA requires. *See id.* at 183. "Congress," however, "did not design NEPA for *judges* to hamstring new infrastructure and construction projects." *Id.* at 184.

The district court disregarded the Supreme Court's admonition. Invoking NEPA, the court not only blocked further construction of an urgently needed facility for detaining aliens who have entered this country

illegally, but also ordered existing parts of the facility dismantled. JA 1435–36. More astonishing still, the court did not merely enjoin *federal* agencies from undertaking *federal* actions. The court ordered *a Florida agency* to halt construction and tear down parts of a facility that it built on *state* land using *state* funds. JA 1435–36.

This latest attempt to remake NEPA into a "blunt and haphazard tool" that allows judges to block urgently needed construction projects is highly concerning to amici. *Seven Cnty.*, 605 U.S. at 183. It disregards NEPA's plain text, recent Supreme Court decisions, and traditional limits on the judicial power—all at the expense of States. This Court should reverse the district court's decision and vacate the injunction.

## STATEMENT OF THE ISSUE

Whether the district court had authority to preliminarily enjoin a Florida agency from building a facility on state land using state funds, and order parts of the facility dismantled, due to a federal agency's alleged failure to prepare an environmental impact statement.

## SUMMARY OF THE ARGUMENT

In halting the construction of a detention facility put up by Florida and ordering parts of it dismantled, the district court exceeded its

authority. NEPA imposes no obligations on States, and no federal statute provides a cause of action against States. The district court thus lacked any ground for ordering Florida to dismantle a detention facility based on a federal agency's alleged failure to prepare paperwork designed to inform its own separate actions.

*Citizens for Smart Growth v. Secretary of Department of Transportation*, 669 F.3d 1203 (11th Cir. 2012), does not sanction the injunction against the state defendants. That decision, which *rejected* an injunction, did not address whether federal law authorizes injunctive relief against States in NEPA cases. Nor could the decision be read to authorize injunctive relief against States without running headlong into intervening Supreme Court precedent. And even on its own terms, *Citizens for Smart Growth* disclaims that it is saying anything about whether a State can be sued under circumstances like the ones here.

Finally, even if one assumes States can be defendants in actions brought for NEPA violations, traditional equitable principles preclude courts from granting preliminarily relief greater than could be obtained on final judgment. Yet the district court did precisely that by ordering

construction halted and part of an existing facility demolished. Its preliminary injunction should be reversed.

## ARGUMENT

The district court blocked Florida from building a detention facility on its own land—and even ordered parts of the facility torn down—because the federal government did not prepare an environmental impact statement (EIS) under NEPA. That injunction is inconsistent with NEPA, which imposes no obligations on States and has not been made enforceable against States by Congress. The court's broad injunction also contravenes long-standing equitable principles and recent Supreme Court decisions. The preliminary injunction should be reversed.

## I.   NEPA Does Not Authorize Injunctions Against States

By its terms, NEPA applies to the federal government and only the federal government. NEPA requires "all agencies of the Federal Government" to prepare an environmental impact statement for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). For NEPA purposes, a major federal action can include projects with non-federal participants. *See* § 4336e(10). Even for

projects with non-federal participants, however, NEPA imposes obligations on "agencies of the federal government" alone. § 4332(2)(C).

As the Fifth Circuit explained in a decision binding on this Court, "Congress did not intend NEPA to apply to state, local, or private actions hence, the statute speaks only to 'federal agencies' and requires impact statements only as to 'major federal actions.'" *Atlanta Coal. on Transp. Crisis, Inc. v. Atlanta Reg'l Comm'n*, 599 F.2d 1333, 1344 (5th Cir. 1979). Or put more simply, NEPA "impose[s] no duties on the states." *Ely v. Velde*, 451 F.2d 1130, 1139 (4th Cir. 1971); *see Palm Beach Cnty. Env't Coal. v. Florida*, 651 F. Supp. 2d 1328, 1339 (S.D. Fl. 2009) (similar).

NEPA's lack of a cause of action makes doubly clear that NEPA imposes no obligations on independent state actors. As this Court has explained, NEPA does not "contain[] a private cause of action" against any defendant—federal or state. *Ctr. for a Sustainable Coast v. U.S. Army Corps of Eng'rs,* 100 F.4th 1349, 1355 n.2 (11th Cir. 2024); *see Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1173 (11th Cir. 2006). A project opponent must instead use the Administrative Procedure Act (APA) to seek review of a federal agency's final action. *See Sustainable Coast,* 100 F.4th at 1355 n.2; *Ouachita Watch League*, 463 F.3d at 1173.

5

To state the obvious, this means that federal law provides no mechanism to sue States and their agencies for alleged NEPA violations. The APA applies solely to "authorit[ies] of the Government of the United States." 5 U.S.C. § 701(b)(1). It authorizes district courts to review "final agency action[s]," § 704, set aside unlawful agency actions, and compel actions "unlawfully withheld or unreasonably delayed." § 706. But "the federal APA clearly does not apply to state agencies," and provides no cause of action against them. *Doe v. Bush,* 261 F.3d 1037 (11th Cir. 2001).

As a result, federal district courts lack authority to enjoin States and state agencies based on alleged NEPA violations. "Any motion or suit for either a preliminary or permanent injunction must be based upon a cause of action." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127, 1134 (11th Cir. 2005). But NEPA imposes no duties on States and provides no cause of action against them; the only relief available for NEPA violations is against federal agencies under the APA. Consequently, the district court should never have enjoined the state defendants or, indeed, allowed them to be made defendants in this case. *See Friends of Lydia Ann Channel v. U.S. Army Corps of Eng'rs*, 701 F. App'x 352, 358 (5th Cir. 2017) (holding it improper to enjoin nonfederal

defendant for alleged NEPA violation); *Vieux Carre Prop. Owners, Residents & Assocs., Inc. v. Brown*, 875 F.2d 453, 457 (5th Cir. 1989) (holding it improper to join non-federal actors as defendants in APA action).

## II. *Citizens for Smart Growth* Does Not Sanction the Injunction

The district court's passing reference to *Citizens for Smart Growth v. Secretary of Department of Transportation*, 669 F.3d 1203 (11th Cir. 2012), buried in a one-sentence footnote, hardly justifies its sweeping injunction against the state defendants. *Contra* JA 1435 n.39. That decision, which rejected a NEPA claim, did not address the cause of action issue, offered scant analysis that conflicts with intervening Supreme Court precedent, and expressly limited its holding to the case's facts.

***First,*** in *Citizens for Smart Growth*, this Court did not address whether state officials can be enjoined in an APA action brought over an alleged NEPA violation. The Court held that it had "jurisdiction" to entertain a claim against a state official "working in tandem with federal agencies" under "the circumstances of th[e] case." 669 F.3d at 1210. But that is a separate issue from whether a cause of action exists against a state official or the APA authorizes an injunction against a state official. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998).

7

Even if a federal court has jurisdiction over a case, the court must respect Congress's control over causes of action. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). That is because "the decision whether to let private plaintiffs enforce a new statutory right poses delicate questions of public policy" best weighed by "elected representatives, not unelected judges." *Medina v. Planned Parenthood*, 606 U.S. 357, 369 (2025). Thus, even if jurisdiction over the state defendants exists here, the Court must respect Congress's decision not to create a cause of action against them.

**Second**, to the extent *Citizens for Smart Growth* speaks to the cause-of-action issue, it conflicts with intervening Supreme Court precedent. *Citizens for Smart Growth* and cases like it apparently rest on the theory that the "non-federal parties" accepted federal funding and so "consent[ed]" to suits for alleged NEPA violations. *Biderman v. Morton*, 497 F.2d 1141, 1147 (2d Cir. 1974); *see also Citizens*, 669 F.3d at 1210 (noting that the project at issue was federally funded); *Sierra Club v. Marsh*, 872 F.2d 497, 498–99 (1st Cir. 1989) (similar); *Named Individual Members of San Antonio Conservation Soc. v. Texas Highway Dep't*, 446 F.2d 1013, 1027–28 (5th Cir. 1971) (similar). Just this last Term, however, the Supreme Court made clear that private parties cannot sue a

8

State merely because it received federal funds. Rather, Congress must have "clearly and unambiguously" made "private enforcement . . . a funding condition." *Medina*, 606 U.S. at 374; *see id.* at 376, 380.

Here, the district court cited no evidence that Congress made private enforcement of NEPA against Florida a funding condition for anything—or that Florida had accepted such a condition. The court assessed that Florida would be reimbursed later. JA 1419. But mere receipt of federal funding is not what makes a State subject to suit under *Medina*, especially considering that States possess sovereign immunity absent an unequivocal waiver or valid congressional abrogation. *See College Saving Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). A State must have "consented to answer private claims as part of its bargain with the federal government." *Medina*, 606 U.S. at 373. Florida, however, did not consent to private suits here.

*Seven County* reinforces that federal courts lack authority to halt state construction efforts due to an alleged federal NEPA violation. There, the Supreme Court made clear that review of a federal agency's EIS "is not the same thing as review of the agency's final decision concerning the project." *Seven Cnty.*, 605 U.S. at 184. Federal courts might

9

be able to set aside a final agency decision that violates the APA's requirements. *See id.* at 184–85. But a federal court cannot halt a federal agency's construction of a project simply because the agency's EIS was "inadequate." *Id.* That observation controls here: if a federal agency's project cannot be halted based on an inadequate EIS, surely a State's project may not be. Construing NEPA to authorize injunctions against state defendants would circumvent Congress's choice as to how it should be enforced.

**Third**, the "circumstances of this case" are different from those in *Citizens for Smart Growth.* 669 F.3d at 1210. In *Citizens for Smart Growth*, the Court thought it significant that the defendant state official was "'working in tandem with federal agencies'" on a project that had "received [federal] funding." *Id.* at 1209–10. Here, by contrast, Florida has not yet received federal funding. *See* JA 1494 ¶ 5; JA 1503 ¶ 4. Florida did not seek (or require) federal permission to build its facility, nor did the federal government "order the State to construct the site." JA 1521 ¶ 20. Florida built the facility at a location of its choosing. *Id.* "Construction and day-to-day maintenance of the site is [also] handled exclusively by state officials." JA 1522 ¶ 24.

That lack of federal control is significant. As explained earlier, "NEPA reaches only major federal actions, not actions of non-federal actors." *Protect Our Parks, Inc. v. Buttigieg*, 39 F.4th 389, 399 (7th Cir. 2022). In fact, NEPA expressly states that major federal actions "do[] not include" projects with "no or minimal Federal funding; *or*" projects with "no or minimal Federal involvement where a Federal agency cannot control the outcome of the project." 42 U.S.C. § 4336e(10)(B)(i) (emphasis added). That means projects under state control are not "major federal action[s]" subject to NEPA, even if they receive federal funding. *See Protect Our Parks, Inc. v. Buttigieg,* 97 F.4th 1077, 1093 (7th Cir. 2024). The district court simply misconstrued NEPA in asserting that "no or minimal Federal funding' *and* 'no or minimal Federal involvement" is required to make a project non-federal. JA 1408 (emphasis added).[1]

---

[1] Besides, even pre-*Medina* cases recognize that "[t]he possibility that federal funding will be provided in the future is not sufficient to federalize a state project, even when such funding is likely." *United States v. S. Fla. Water Mgmt. Dist.*, 28 F.3d 1563, 1573 (11th Cir. 1994). Enjoining non-federal actors is improper unless federal funds have been "irretrievably committed." *Macht v. Skinner*, 916 F.2d 13, 17 (D.C. Cir. 1990); *see also City of Boston v. Volpe*, 464 F.2d 254, 259 (1st Cir. 1972) ("tentatively allocated" federal funds insufficient). Here, Florida has not sought or been awarded federal funds, so those funds cannot have been "irretrievably committed." *See* JA 1494 ¶ 5; JA 1503 ¶ 4.

The district court's alternative rationale fares no better. Rather than focus on federal control over the activity challenged—the facility's construction—the district court observed that the federal government oversees "immigration enforcement activities" and detainees' treatment. JA 1401, 1408–10. But NEPA's "textual focus" is on "the 'proposed action.'" *Seven Cnty.*, 605 U.S. at 182 (quoting 42 U.S.C. § 4332(2)(C)). So, the relevant control for NPEA purposes is control over the "action" challenged—here, the facility's "construction." *See* 42 U.S.C. § 4336e(10)(A); JA 1107 ¶ 64. Federal control over immigration is legally irrelevant to whether NEPA covers a state construction project.

"Moreover, and importantly," the federal agencies sued here "possess[] no regulatory authority" to determine what Florida builds on its own land. *Seven Cnty.*, 605 U.S. at 188. Under *Seven County*, a federal agency is not responsible for looking at the environmental effects of "projects over which they do not exercise regulatory authority." *Id.*; *see Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 770 (2004). That is true even if it is "foreseeable" that other projects will be built. *Seven Cnty.*, 605 U.S. at 189–190.  By that same logic, Florida cannot be prevented from

building a facility subject to its control based on federal control over "downstream" immigration enforcement activities. *Id.* at 190–91.

Construing NEPA to subject state activities outside of federal control to federal requirements would raise serious difficulties. "Extraordinary grants of regulatory authority are rarely accomplished through 'modest words,' 'vague terms,' or 'subtle device[s].'" *West Virginia v. EPA*, 597 U.S. 697, 723 (2022) (quoting *Whitman v. Am. Trucking Ass'n.*, 531 U.S. 457, 468 (2001)). And saying that project opponents can wield NEPA to block state construction projects based on how federal agencies later use the infrastructure would be truly extraordinary. Congress fashioned NEPA to place a "modest procedural requirement" on *federal* agencies, not block or delay projects. *Seven Cnty.*, 605 U.S. at 183.

Beyond that, allowing federal courts to oversee state decisions about what to build and how would raise significant federalism issues. "A state may, after all, proceed with construction of its projects wholly independently of the federal government." *Save Barton Creek Ass'n v. Fed. Highway Admin.*, 950 F.2d 1129, 1138 (5th Cir. 1992). The Constitution does not provide Congress with "the ability to require the States to govern according to Congress' instructions." *New York v. United States*,

13

505 U.S. 144, 162 (1992). Yet as the district court construed NEPA, federal courts can wield a procedural cross-check on federal agencies to block States from building facilities that do not require federal approval or funding. Nothing in NEPA authorizes such a result.

## III. The Preliminary Injunction Disregards Traditional Limits on Equitable Relief

The breadth of the preliminary injunction underscores the extent to which the district court overstepped. "It is axiomatic that injunctive relief should be limited in scope to the extent necessary to protect the interests of the parties." *Garrido v. Dudek*, 731 F.3d 1152, 1159 (11th Cir. 2013) (internal quotation omitted). A preliminary injunction's purpose "is merely to preserve the relative positions of the parties until a trial on the merits can be held" by preventing future, irreparable harm. *Starbucks Corp. v. McKinney,* 602 U.S. 339, 346 (2024) (internal quotation omitted). It cannot be used to undo harm that "has *already* occurred" or grant intermediate relief of a different character than "'*that which may be granted finally*.'" *Alabama*, 424 F.3d at 1133, 1135.

Here, the district court disregarded traditional equitable limits twice over. First, the district court sought to undo past harm. It ordered the defendants to "remove" fencing, certain lighting, and "all generators,

14

gas, sewage, and other waste and waste receptacles that were installed to support th[e] project." JA 1436. But this Court has recognized that a NEPA violation does not allow a court to "order" a structure "torn down" or "order [a federal agency] to initiate enforcement action to remove it." *Sustainable Coast,* 100 F.4th at 1358.

Second, the district court granted greater relief than the project's opponents could hope to obtain on final judgment. Recall that Congress chose not to make NEPA itself enforceable. *Seven Cnty.*, 605 U.S. at 184. It provided for enforcement against federal agencies only through the APA, which limits a court to setting aside or enjoining the final federal agency action being challenged. *Id.*; *see* 5 U.S.C. § 706. Consequently, if what triggers NEPA in the context of a state-initiated project is federal funding, any remedy must be limited to blocking federal funding. *See Old Town Neighborhood Ass'n Inc. v. Kauffman,* 333 F.3d 732, 736 (7th Cir. 2003). Blocking the State's construction efforts goes too far. *See id.*

That is particularly true if there is "reason to believe that the agency" would decide to take the challenged action after preparing an adequate EIS. *Seven Cnty.*, 605 U.S. at 185. A reviewing court should not forget that "NEPA is a *purely procedural statute.*" *Id.* at 180. "NEPA

imposes no *substantive* constraints on the agency's ultimate decision to build, fund, or approve a proposed project." *Id.* "[T]he adequacy of an EIS is relevant only to the question of whether an agency's final decision . . . was reasonably explained." *Id.* Thus, "[e]ven if an EIS falls short in some respects, that deficiency may not necessarily require a court to vacate the agency's ultimate approval of a project." *Id.* at 185.

The district court disregarded NEPA's procedural character here. It did not ask whether the agency had offered a reasonable explanation for deciding to use and to reimburse Florida for an urgently needed detention facility despite alleged deficiencies with the EIS. Nor did the court limit itself to restraining federal actions reviewable under the APA, such as a final reimbursement decision. The district court ordered Florida, a non-federal actor, to halt further construction and to remove fencing, lights, and generators already installed at the facility. The district court therefore improperly granted the facility's opponents a greater remedy than they would have been entitled to by a victory on the merits.

\* \* \*

At bottom, this case is a simple one. Friends of the Everglades is challenging Florida's decision to build a detention facility on state land

16

with its own funds. Federal agencies may use the facility and eventually may reimburse Florida for building the facility. But whatever NEPA might require federal agencies to do before taking their own actions, NEPA places no requirements on States and state agencies themselves. The district court had no authority to order Florida to stop building its facility or order parts torn down. Allowing the injunction to stand would contravene NEPA's text, Supreme Court precedent, and equity's limits.

## CONCLUSION

The district court's injunction should be reversed.

Dated: December 23, 2025

Respectfully submitted,

THEODORE E. ROKITA
Indiana Attorney General

Office of the Indiana Attorney General
302 W. Washington St.
IGC South, 5th Floor
Indianapolis, IN 46204-2770
Phone: (317) 232-0709
Fax: (317) 232-7979
Email: James.Barta@atg.in.gov

/s/ James A. Barta
JAMES A. BARTA
Solicitor General

JOHN P. LOWREY
Asst. Dep. Solicitor General

BETSY DENARDI
Special Litigation Counsel

*Counsel for Amici Curiae*

17

# ADDITIONAL SIGNATORIES

STEVE MARSHALL
Attorney General
State of Alabama

STEPHEN J. COX
Attorney General
State of Alaska

STEVE MONTENEGRO
Speaker of the Arizona
House of Representatives

WARREN PETERSEN
President of the
Arizona Legislature

TIM GRIFFIN
Attorney General
State of Arkansas

CHRISTOPHER M. CARR
Attorney General
State of Georgia

RAÚL LABRADOR,
Attorney General
State of Idaho

BRENNA BIRD
Attorney General
State of Iowa

KRIS KOBACH
Attorney General
State of Kansas

RUSSELL COLEMAN
Attorney General
State of Kentucky

LIZ MURRILL
Attorney General
State of Louisiana

LYNN FITCH
Attorney General
State of Mississippi

ANDREW BAILEY
Attorney General
State of Missouri

AUSTIN KNUDSEN
Attorney General
State of Montana

MICHAEL T. HILGERS
Attorney General
State of Nebraska

DREW H. WRIGLEY
Attorney General
State of North Dakota

DAVID A. YOST
Attorney General
State of Ohio

GENTNER F. DRUMMOND
Attorney General
State of Oklahoma

ALAN WILSON
Attorney General
State of South Carolina

KEN PAXTON
Attorney General
State of Texas

MARTY JACKLEY
Attorney General
State of South Dakota

JOHN B. MCCUSKEY
Attorney General
State of West Virginia

JONATHAN SKRMETTI
Attorney General and Reporter
State of Tennessee

KEITH G. KAUTZ
Attorney General
State of Wyoming

## CERTIFICATE OF COMPLIANCE

This amicus brief complies with Federal Rules of Appellate Procedure 32(a)(7)(B) and 29(a)(5) because it contains 3,392 words, excluding the parts that may be excluded under Federal Rule of Appellate Procedure 32(f). This amicus brief also complies with Federal Rule of Appellate Procedure 32(a)(5)–(6) because it has been prepared in a proportionally spaced face using Microsoft Word in 14-point Century Schoolbook font.

Dated: December 23, 2025          /s/ James A. Barta
                                  JAMES A. BARTA
                                  Solicitor General

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ James A. Barta
JAMES A. BARTA
Solicitor General


Office of the Indiana Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 232-0709
James.Barta@atg.in.gov