Case No. 25-12873

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

FRIENDS OF THE EVERGLADES, INC., et al.,
*Plaintiffs-Appellees*,

v.

SECRETARY, UNITED STATES DEPARTMENT
OF HOMELAND SECURITY, *et al.*,
*Defendants-Appellants*.

On Appeal from the United States District Court
for the Southern District of Florida
Case No. 1:25-cv-22896-KMW
(Hon. Kathleen M. Williams, Dist. Judge)

## APPELLEES' MOTION FOR LEAVE
## TO SUPPLEMENT RECORD ON APPEAL

Tania Galloni, FBN 619221
Dominique Burkhardt, FBN 100309
**EARTHJUSTICE**
4500 Biscayne Boulevard, Suite 201
Miami, Florida 33137
Telephone: (305) 440-5434
tgalloni@earthjustice.org
dburkhardt@earthjustice.org

*Counsel for Friends of the Everglades*

Paul J. Schwiep, FBN 823244
Scott A. Hiaasen, FBN 103318
Jeffrey B. Crockett, FBN 347401
**COFFEY BURLINGTON, P.L.**
2601 S. Bayshore Drive, PH-1
Miami, Florida 33133
Telephone: (305) 858-2900
pschwiep@coffeyburlington.com
shiaasen@coffeyburlington.com
jcrockett@coffeyburlington.com
yvb@coffeyburlington.com
service@coffeyburlington.com

*Counsel for Appellees*

Elise Pautler Bennett, FBN 106573
**CENTER FOR BIOLOGICAL
DIVERSITY**
Post Office Box 2155
St. Petersburg, Florida 33731
Telephone: (727) 755-6950
ebennett@biologicaldiversity.org

*Counsel for Center for Biological Diversity*

## <u>CERTIFICATE OF INTERESTED PERSONS</u><br><u>AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Appellees, FRIENDS OF THE EVERGLADES, INC., a Florida not-for-profit corporation, and CENTER FOR BIOLOGICAL DIVERSITY, a 501(c)(3) nonprofit organization, hereby state the following individuals and entities have an interest in the outcome of this appeal:

1. Ajizian, Christopher, Esq.

2. Bailey, Andrew, Esq.

3. Bennett, Elise Pautler, Esq.

4. Bird, Brenna, Esq.

5. Boies Schiller Flexner LLP

6. Bonzon-Keenan, Geraldine

7. Brabender, Allen M., Esq.

8. Burkhardt, Dominique, Esq.

9. Carpenter, Hayley A., Esq.

10. Bird, Brenna, Esq.

11. Carr, Christopher M., Esq.

12. Center for Biological Diversity

13. Chris Ajizian P.A.

14. Coe, Alisa, Esq.

15. Coffey Burlington P.L.

16. Coleman, Russel, Esq.

17. Commonwealth of Kentucky

18. Costello, David M., Esq.

19. Crockett, Jeffrey B., Esq.

20. Curran, Rachael

21. DeNardi, Betsy, Esq.

22. DeSousa, Jeffrey Paul, Esq.

23. Drummond, Gentner F., Esq.

24. Earthjustice

25. Ezray, Evan M., Esq.

26. Ficarelli, Dante, Esq.

27. Florida Division of Emergency Management

28. Florida Wildlife Federation

29. Forrester, Nathan A., Esq.

30. Friedman, Todd R., Esq.

31. Friends of the Everglades, Inc.

32. Galloni, Tania, Esq.

33. Golembiewski, Kevin A., Esq.

34. Griffin, Tim, Esq.

35. Gustafson, Adam R.F., Esq.

36. Guthrie, Kevin

37. Hiaasen, Scott, Esq.

38. Hilgers, Michael T., Esq.

39. Izaak Walton League of America's Florida Chapter

40. Jackley, Marty, Esq.

41. Kautz, Keith G., Esq.

42. Knudsen, Austin, Esq.

43. Kobach, Kris, Esq.

44. Kula & Associates, P.A.

45. Kula, Elliot B., Esq.

46. Labrador, Raúl, Esq.

47. Lopez, Jaclyn, Esq.

48. Lyons, Todd

49. Marshall, Steve, Esq.

50. Martinez, Hon. Jose E.

51. McCuskey, John B., Esq.

52. Miami-Dade County

53. Miccosukee Tribe of Indians

54. Murray, David M., Esq.

55. Murrill, Liz, Esq.

56. Noem, Kristi

57. O'Byrne, Hayden P., Esq.

58. Panuccio, Jesse Michael, Esq.

59. Paxton, Ken, Esq.

60. People's Economic and Environmental Resiliency Group, Inc.

61. Perez, Monica Rizo, Esq.

62. Piropato, Marissa, Esq.

63. Raurell, Carlos J., Esq.

64. Rokita, Theodore E., Esq.

65. Sierra Club

66. Skrmetti, Jonathan, Esq.

67. State of Alabama

68. State of Alaska

69. State of Arkansas

70. State of Georgia

71. State of Idaho

72. State of Iowa

73. State of Kansas

74. State of Louisiana

75. State of Missouri

76. State of Montana

77. State of Nebraska

78. State of North Dakota

79. State of Ohio

80. State of Oklahoma

81. State of South Carolina

82. State of South Dakota

83. State of Tennessee

84. State of West Virginia

85. State of Wyoming

86. Stetson University, Inc. College of Law's Jacobs Public Interest Law Clinic for Democracy and the Environment

87. Quiñones, Jason A. Reding, Esq.

88. Sanchez, Hon. Eduardo I.

89. Schenck, Robert S., Esq.

90. Schwiep, Paul J., Esq.

91. Singer, Frank

92. Stander, Robert, Esq.

93. Taylor, Treg, Esq.

94. Todd R. Friedman P.A.

95. Torres, Hon. Edwin G.

96. Torstensen, Peter M., Esq.

97. Totoiu, Jason Alexander, Esq.

98. Tropical Audubon Society

99. United States Department of Homeland Security

100. United States Immigration and Customs Enforcement

101. University of Miami School of Law's Environmental Justice Clinic

102. Uthmeier, James, Esq.

103. VoteWater, Inc.

104. Wahl, Christopher J., Esq.

105. Walter, Elaine D., Esq.

106. Williams, Hon. Kathleen M.

107. Wilson, Alan, Esq.

108. Wrigley, Drew H., Esq.

109. Yost, David A., Esq.

## <u>APPELLEES' MOTION FOR LEAVE TO SUPPLEMENT THE RECORD ON APPEAL</u>

Pursuant to Federal Rules of Appellate Procedure 10(e)(2) and 27, Plaintiff-Appellees Friends of the Everglades, Inc., and Center for Biological Diversity ("Friends") hereby respectfully move to supplement the record on appeal with evidence of material facts that were known to, but undisclosed by, Appellants, prior to the preliminary injunction that is the subject of this appeal.

Specifically, Friends request leave to submit three documents provided by Appellant Florida Division of Emergency Management (FDEM), in response to public records requests relating to the detention center at issue in this case: (1) a June 20, 2025, email documenting the state-federal agreement for FDEM to begin detaining noncitizens by relying on INA Section 287(g) federal immigration authority and with the support of federal funding (Exh. 1); (2) an email confirming that FDEM applied for federal funding for the immigration detention center as of August 7, 2025 (Exh. 2); (3) a grant Award Letter reflecting that Florida received directions from the federal government on the expenditure of allocated federal funds starting on August 15, 2025 (Exh. 3).  These documents reflect material facts that occurred prior to the district court's August 21 preliminary injunction, but that Appellants failed to disclose to Friends or the district court during the litigation on Friends' Motion for Preliminary Injunction.  Appellants also failed to disclose this information in their motions to stay the preliminary injunction pending appeal,

which the motions panel granted after relying repeatedly on the assertion that Florida had not yet applied for federal funding and that no funding decision had been made. Even after the motions panel ruled, Appellants failed to correct the misapprehensions despite their duty of candor to the Court. Appellants have now also failed to disclose the above information to the merits panel in their opening briefs.

In the interests of justice, the Court should allow supplementation of the record on appeal to include this information. It confirms the reasonableness of the district court's factual findings that there was a state-federal partnership for FDEM to detain noncitizens with a commitment of federal funding, which affects a central issue in this appeal: whether there was a final, major federal action requiring compliance with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*

## LEGAL STANDARD

Although the Court "rarely supplement[s] the record to include material that was not before the district court," the Court has "the equitable power to do so if it is in the interests of justice." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 n.4 (11th Cir. 2003). *See also Young v. DeVaney ex rel. City of Augusta, Ga.,* 59 F.3d 1160, 1168 (11th Cir.1995). "A primary factor which we consider in deciding a motion to supplement the record is whether acceptance of the proffered material into the record would establish beyond any doubt the proper resolution of the pending

issues." *CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1330 (11th Cir. 2000). Whether the appellate record should be supplemented is made on "a case-by-case basis," and may be allowed in the aid of making an informed decision. *Id.* (citing *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1555 (11th Cir. 1989)).

## BACKGROUND

On September 4, 2025, the motions panel granted Defendant-Appellants' motions to stay the district court's August 21, 2025, preliminary injunction pending appeal and all further proceedings before the district court. ECF No. 42.[1] In their briefing on the merits of the appeal, Appellants have relied heavily on the stay order. *See* ECF No. 82 at 2–4, 15, 23–25, 50–51, 53, 56–58, 66–67; ECF 86 at 1, 11–12, 13, 17, 22, 35, 47.

The motions panel opined that Friends was not likely to succeed on its claim that Florida and Federal Appellants violated NEPA when they failed to study the environmental impacts of a mass immigration detention center they dubbed "Alligator Alcatraz" because, in the panel's view, NEPA does not apply absent a commitment of federal funding beyond the public statements on which the district court relied. ECF No. 42 at 20–21.

---

[1] Citations to "Doc." Refer to docket entries in the district court. Citations to "ECF No." refer to the Circuit Court docket.

On the question of federal funding, the panel majority rejected the district court's reliance on public statements by state and federal officials that the facility would be federally funded, ECF No. 42 at 20, relying instead on Appellants' representations that Florida had not even applied for federal funding and concluding that there was therefore no major federal action under review to trigger NEPA's requirements. *See id.* at 6–7 ("However, Florida has not filed an application for federal funds, and neither DHS nor FEMA has formally 'approved a federal award' providing funds for the construction of the Facility or reimbursing Florida."); *id.* at 18 ("DHS has not received … any applications for funding, let alone any regarding the Facility."); *id.* at 20 ("Without an application, there is simply nothing on which a decision can be made."); *id.* at 23 ("There may come a time when [FDEM] applies for FEMA funding.").

But in fact, on Friday, June 20, 2025, James Percival, DHS General Counsel, "confirm[ed] DHS' interest in working with [Florida] to detain aliens under 287g in facilities provided by Florida." Exh. 1 at 2. DHS committed that if Florida moved forward, DHS would "work out a method of partial reimbursement." David Dewhirst, Chief of Staff for Florida's Attorney General, responded: "Received and confirmed. I've copied [FDEM] Director Guthrie here. Thank you. Executive Director Guthrie, please see the email below from DHS leadership. I know you're eager to immediately get to work." *Id.*

With this federal decision in hand, on Monday, June 23, 2025, FDEM commandeered the Dade-Collier Training and Transition Airport site pursuant to a state declaration of an immigration emergency directing state agencies to enter into any and all agreements with federal agencies necessary to meeting the emergency. ECF No. 83-2 at 1524–35. FDEM then moved swiftly to build the facility and began holding ICE detainees there in early July. Appellants never disclosed this email to the district court, and it became known to Friends only after the preliminary injunction when FDEM produced it in response to a public records request by a state legislator.[2]

Moreover, unbeknownst to Friends or the Court, FDEM had in fact submitted a funding application to FEMA on August 7, 2025, Exh. 2 at 2, which was day two of the preliminary injunction hearing, and received instructions from FEMA on the use of the requested federal funds on or about August 15, 2025, Exh. 3 at 5. These actions occurred well before the district court issued the preliminary injunction on August 21, 2025, Doc. 131, and well before Appellants moved for a stay of the

---

[2] FDEM provided this email to Dr. Anna V. Eskamani, member of the Florida House of Representatives, on August 26, 2025, in response to a public records request. *See* Doc. 148-1.

preliminary injunction and of all further district court proceedings in this Court on August 26, 2025, ECF Nos. 9-1, 20.[3]

Yet at no time did FDEM or the Federal Agencies disclose this information to Friends, the district court, or this Court. Instead, during the hearing on Friends' motion for a preliminary injunction, Appellants relied on a July 2, 2025, declaration by senior FEMA official David Richardson, first submitted with the Federal Defendants' July 3, 2025, Opposition to Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction. Doc. 21-2. That declaration stated that FEMA's Detention Support Grant Program for $600 million had not yet been finalized, that FDEM (the only eligible applicant) had not yet applied for the grant, and that DHS/FEMA had not yet approved the award. Doc. 21-2 at 2 ¶¶ 3–4.

On August 12, 2025, FDEM moved David Richardson's declaration into evidence at the district court as State Defendants' Exhibit 44, five days after FEMA confirmed receipt of Florida's application on August 7, 2025 to the grant program. ECF No. 83-1 at 868–69; Doc. 124 at 1.

On August 26, 2025, FDEM submitted the declaration to *this* Court with its motion to stay the preliminary injunction pending appeal and to stay all further proceedings at the District Court. ECF No. 9-2 at 7, 1475–76. In the motion, Federal

---

[3] Indeed, the application was filed during the course of the district court's hearing on Friends' motion for a preliminary injunction, which began on August 6, 2025, and concluded on August 13, 2025.

Appellants also maintained that no funding request had been made. ECF No. 20 at 12 ("Certainly, after Florida seeks federal funding, then a NEPA analysis may inform that decision. But ***until that funding request is made*** or there is some other need for a federal decision, undertaking a costly and time-consuming NEPA analysis is a wasteful endeavor.") (emphasis added). Federal Appellants further stated that they "fully intend[ed] to comply with NEPA before taking any final agency action to grant federal funding." *Id.* at 14.

In its September 4, 2025, Order, the Court's motions panel explicitly relied on these inaccurate representations and the no-longer-accurate Richardson declaration. *See*, *e.g.*, ECF No. 42 at 6–7 ("However, Florida has not filed an application for federal funds, and neither DHS nor FEMA has formally 'approved a federal award' providing funds for the construction of the Facility or reimbursing Florida.") (citing Declaration of David Richardson, Doc. 21-2 ¶ 4)).

On September 8, 2025, Friends moved the Court to reconsider its Order insofar as it granted FDEM's request to stay all further proceedings before the district court. ECF No. 43. Among other things, Friends argued that "Plaintiff-Appellees should not be delayed … from pursuing discovery on their NEPA claims," given that the district court retains jurisdiction to proceed pending an appeal of a preliminary injunction. *Id.* at 1–3. Friends specifically argued that because the stay ruling "call[ed] into question the *factual* record relied on by the district court"

Friends should be permitted to further develop the record "for ultimate disposition of the case" beyond the preliminary injunction. *Id.* at 6–7 (citing pages of stay ruling addressing federal funding). On September 18, 2025, Appellants opposed Friends' motion to reconsider (ECF Nos. 52, 53), without disclosing the state and federal actions that had taken place before the district court issued its injunction but had not been disclosed.

On October 10, 2025, in response to Friends' request for public records relating to the facility in question, FDEM for the first time produced an email from FEMA confirming that the State's application for federal funding had been received on August 7, 2025. Exh. 2. On October 15, 2025, following a lawsuit filed by Friends in state court to compel FDEM to release records, FDEM produced an "Award Letter" reflecting that FEMA had instructed FDEM on the use of the requested funds on August 15, 2025, and confirming the grant of $608 million dollars to FDEM from the Detention Support Grant Program for a grant period beginning June 1, 2025, with an "effective date" of September 30, 2025. Exh. 3.

In their opening brief, Federal Appellants acknowledged a September 30, 2025, "letter" from the FEMA to FDEM regarding "financial assistance under the Detention Support Grant Program." ECF No. 86 at 9 n.3. But rather than produce the document, they cited a news article, further withholding pertinent information from the Court, while injecting the fact into the appeal. *Id.*

8

Contrary to Federal Appellants' representation that the letter was from a non-party, *id*., the Award Letter clearly shows that the award is from Federal Appellant Department of Homeland Security, Exh. 3 at 2, of which FEMA is a component. The Federal Appellants' claim that the Award Letter is not specific to the facility at issue in this appeal is belied by the fact that Florida produced it to Friends in response to a public records request specific to ***this*** facility.

Also, while the Award Letter contains an "effective date" of September 30, 2025, which is after the district court's injunction, it also repeatedly refers to instructions given to FDEM regarding the use of already-allocated funds as early as August 15, 2025, which was before the district court's injunction. The Award Letter refers to a meeting on August 15, 2025, where FEMA instructed FDEM on its use of already allocated funds pending a revised budget:

> During the meeting held on August 15, 2025, FDEM was informed that its budget will be modified by FEMA since it exceeds the available amount under FY 2025 Detention Support Grant Program (DSGP). FDEM must provide a revised budget that includes a burden rate per detainee/night and a detailed cost breakout to justify the rate. Until further notice, FDEM is prohibited from obligating, expending, or drawing down ***funds allocated under DSGP.*** To release the funding hold, FDEM must submit a revised budget that includes a burden rate and justification. The funding hold will be rescinded upon FEMA and ICE review and approval of the revised detailed cost breakdown and justification.

Exh. 3 at 6 (emphasis added). *See also id.* at 7–14 (providing same admonition as to other components of the application).

The Award Letter confirms that federal funds were already "allocated" specifically for FDEM's detention operations before the district court's preliminary injunction issued, meaning that a federal decision had already been made to provide the detention support grant funding to FDEM, just as the district court found. *Cf.* ECF No. 42 at 19 & n. 6 ("Nor does it matter that FDEM was once the 'only eligible applicant' that could potentially receive funding.").

The Obligating Document included with the Award Letter confirms that federal funding in the full amount of $608,000,000 from the Detention Support Grant Program, for which, again, FDEM was the only eligible applicant, was obligated for a grant period beginning June 1. *See* Exh. 3 at 35.

## ARGUMENT

It is in the interests of justice to allow supplementation of the record on appeal with these documents confirming that: (1) there was a June 20, 2025, state-federal agreement for FDEM to detain noncitizens under INA Section 287(g) federal immigration authority and with the support of federal funding; (2) FDEM applied for that federal funding on August 7; and (3) FDEM was allocated federal funding by August 15 at the latest, as reflected in the grant Award Letter, for a grant period beginning June 1, all before the district court's preliminary injunction.

These documents, produced by FDEM, would aid beyond any doubt in the proper resolution of the question of whether the district court erred in finding that a commitment of federal funding occurred, and in turn, major federal action, a central issue in dispute in the underlying injunction proceeding and thus this appeal. *See CSX Transp., Inc.*, 235 F.3d at 1330.

Furthermore, a party has a continuing duty of candor that includes "reaffirming all contentions in papers filed before the court and informing the court of any changes in circumstances that would render a contention meritless." *Attwood v. Singletary,* 105 F.3d 610, 612 (11th Cir. 1997). The continuing duty of candor requires a party to disclose "any development which may conceivably affect the outcome of litigation." *Byrne v. Nezhat*, 261 F.3d 1075, 1117 n.83 (11th Cir. 2001) (quoting *United States v. Shaffer Equip. Co.,* 11 F.3d 450, 457 (4th Cir. 1993)); *Bd. of License Comm'rs of Town of Tiverton v. Pastore*, 469 U.S. 238, 240 (1985). While the duty does not impose an obligation to amend filings that were "reasonably interposed" at the time of filing, a party cannot continue to rely on those filings when their factual assertions no longer hold. *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Associated Contractors, Inc.*, 877 F.2d 938, 943 (11th Cir. 1989) (plaintiff was not required to amend complaint once there was no longer a basis for a certain factual allegation but could not continue to rely on that allegation).

11

Leaving aside the failure to disclose this information below, Appellants' submissions to this Court have continued to deny any prior commitment to federally fund the facility and have continued to rely on the Richardson declaration, long after its assertions no longer held true. Specifically, FDEM submitted the declaration with its August 26, 2025, motion to stay the preliminary injunction pending appeal and to stay all further proceedings at the District Court. ECF No. 9-2 at 7, 1475–76. The Federal Defendants also maintained that no funding request had been made, ECF No. 20 at 12, and asserted that they would comply with NEPA ***before*** taking any action to grant a funding request, *id.* at 14. These assertions were inaccurate.

In light of Appellants' failure to disclose pertinent material information that if disclosed would have been part of the record, Friends respectfully request that, in the interests of justice, the Court supplement the record on appeal with the June 20, 2025, email string among Appellants (Exh. 1); the August 7, 2025, email from FEMA to FDEM confirming receipt of Florida's grant application (Exh. 2) and the Award Letter (Exh. 3), which further support affirming the district court's findings below because they were not clearly erroneous.

Respectfully submitted,

EARTHJUSTICE
4500 Biscayne Boulevard, Suite 201
Miami, Florida  33137
Telephone:  (305) 440-5432

By:_____s/___Tania Galloni_____
    Tania Galloni, Fla. Bar No. 619221
    tgalloni@earthjustice.org
    Dominique Burkhardt, Fla. Bar No.
    100309
    dburkhardt@earthjustice.org

*Counsel for Appellee Friends of the
Everglades*

COFFEY BURLINGTON, P.L.
2601 South Bayshore Drive
Penthouse One
Miami, Florida  33133
Telephone:  (305) 858-2900

By:_____s/___Paul J. Schwiep_____
    Paul J. Schwiep, Fla. Bar No.
    823244
    PSchwiep@CoffeyBurlington.com
    Scott Hiaasen, Fla. Bar No. 103318
    SHiaasen@CoffeyBurlington.com
    Jeffrey B. Crockett, Fla. Bar No.
    347401
    YVB@CoffeyBurlington.com
    LPerez@CoffeyBurlington.com
    service@CoffeyBurlington.com

*Counsel for Plaintiffs-Appellees*

CENTER FOR BIOLOGICAL
DIVERSITY
Post Office Box 2155
St. Petersburg, Florida  33731
Telephone:  (727) 775-6950

By:_____s/___Elise Pautler Bennett_____
    Elise Pautler Bennett, Fla. Bar No.
    106573
    ebennett@biologicaldiversity.org

*Counsel for Appellee Center for
Biological Diversity*

13

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This document complies with the type-volume limits of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 2,881 words.

2.    This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Paul J. Schwiep*
Paul J. Schwiep

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 7, 2025, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

*/s/ Paul J. Schwiep*
Paul J. Schwiep

# EXHIBIT 1

Case 1:25-cv-22896-KMW   Document 148-1   Entered on FLSD Docket 08/29/2025   Page 1 of 2
USCA11 Case: 25-12873   Document: 9F   Date Filed: 01/07/2026   Page: 25 of 65

**1**

## DECLARATION OF DR. ANNA V. ESKAMANI

1.     My name is Dr. Anna V. Eskamani, and I make this declaration on personal knowledge.

2.     I serve as a member of the Florida House of Representatives, representing State House District 42, which is in Orange County, Florida.

3.     I served a request for public records on the Florida Division of Emergency Management (the "Division") pursuant to Florida's Public Records Act, and in response, on Tuesday, August 26, 2025, I received a June 20, 2025 email string among the General Counsel for DHS, James Percival, and officials with the Florida Attorney Generals' office and the Division. Attached to this declaration as exhibit A is a true and accurate copy of the email string produced by the Division in response to my public records request.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 28, 2025.

Dr. Anna V. Eskamani

Exhibit 1

7/27/25, 5:31 PM                                                                Mail - Kevin Guthrie - Outlook

**2**

Outlook

---

## Re: 287g Facilities in Florida

**From** David Dewhirst <David.Dewhirst@myfloridalegal.com>

**Date** Fri 6/20/2025 7:53 PM

**To** PERCIVAL, JAMES <JAMES.PERCIVAL@hq.dhs.gov>; Kevin Guthrie <Kevin.Guthrie@em.myflorida.com>

**Cc** EDGAR, TROY <S2TDE@hq.dhs.gov>; BARROW, CLARK <CLARK.BARROW@hq.dhs.gov>; Sheahan, Madison <Madison.Sheahan@ice.dhs.gov>; Guy, Joseph <Joseph.Guy@hq.dhs.gov>

You don't often get email from david.dewhirst@myfloridalegal.com. Learn why this is important

**CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Received and confirmed. I've copied Florida DEM Director Guthrie here.  Thank you.

Executive Director Guthrie, please see the email below from DHS leadership. I know you're eager to immediately get to work.

——

David Dewhirst
*Chief of Staff*
Florida Attorney General James Uthmeier

Get Outlook for iOS

---

**From:** PERCIVAL, JAMES <JAMES.PERCIVAL@hq.dhs.gov>
**Sent:** Friday, June 20, 2025 7:46:56 PM
**To:** David Dewhirst <David.Dewhirst@myfloridalegal.com>
**Cc:** EDGAR, TROY <S2TDE@hq.dhs.gov>; BARROW, CLARK <CLARK.BARROW@hq.dhs.gov>; Sheahan, Madison <Madison.Sheahan@ice.dhs.gov>; Guy, Joseph <Joseph.Guy@hq.dhs.gov>
**Subject:** 287g Facilities in Florida

Dave,

Good seeing you today.

As discussed with Attorney General Uthmeier, this email confirms DHS's interest in working with you to detain aliens under 287g in facilities provided by Florida. If you go forward, we will work out a method of partial reimbursement.

Jimmy

<span style="color:red">Exhibit A to Exhibit 1
(Declaration of Hon Dr Anna V
Eskamnai)</span>

# EXHIBIT 2

| From: | Kelly Ann Kennedy |
|---|---|
| To: | Paul J. Schwiep |
| Cc: | Stephanie Houp; Scott A. Hiaasen |
| Subject: | [EXTERNAL] Re: Public Records Request |
| Date: | Friday, October 10, 2025 4:15:02 PM |
| Attachments: | image001.png |
| | Outlook-5trtzx0h.png |
| | FW Application submitted Fiscal Year 2025 Detention Support Grant Program grant number EMW-2025-DS-05000.msg |

Good afternoon,

Please see attached.

Sincerely,

**Kelly Ann Kennedy**
*Deputy General Counsel*
Florida Division of Emergency Management
2555 Shumard Oak Blvd., Tallahassee, FL 32399
Cell: 448-229-9328; Office: 850-815-4442
KellyAnn.Kennedy@em.myflorida.com

 **Most written communications to or from state employees are public records obtainable by the public upon request. Emails sent to me at this email address may be considered public and will only be withheld from disclosure if deemed confidential pursuant to the laws of the State of Florida.**

---

**From:** Paul J. Schwiep <pschwiep@coffeyburlington.com>
**Sent:** Wednesday, October 8, 2025 11:38 AM
**To:** Kelly Ann Kennedy <KellyAnn.Kennedy@em.myflorida.com>
**Cc:** Stephanie Houp <Stephanie.Houp@em.myflorida.com>; Scott A. Hiaasen <shiaasen@coffeyburlington.com>
**Subject:** RE: Public Records Request

> **CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Ms. Kennedy: We requested the grant application and related documents expressly on September 11, 2025. In response, you said: "I am forwarding this to our public records unit to search again according to these terms. We will provide any other responsive records that are identified during the search." On September 13, 2025 we provided by business days' notice under Chapter 119. It's been nearly one month and

| | |
|---|---|
| **From:** | Jeremy Smith <Jeremy.Smith@em.myflorida.com> |
| **Sent:** | Thursday, August 7, 2025 7:10 PM |
| **To:** | Brittany Adams; Chanda Jenkins; Amy Garmon; Terence Blakely; Richard Gage |
| **Subject:** | FW: Application submitted:  Fiscal Year 2025 Detention Support Grant Program grant number EMW-2025-DS-05000 |



### Jeremy W. Smith | Bureau Chief

Bureau of Financial Management
Florida Division of Emergency Management
2555 Shumard Oak Blvd, Tallahassee, FL 32399-2100
Email: Jeremy.Smith@em.myflorida.com
Office: (850) 815-4601 Mobile: (850) 273-1273
www.floridadisaster.org

Under Florida law, correspondence with the Florida Division of Emergency Management concerning agency business that is neither confidential nor exempt pursuant to Florida Statutes is a public record and will be made available to the public upon request.

**From:** FEMA GO
**Sent:** Thursday, August 7, 2025 7:05 PM
**To:** Susanne McDaniel
**Cc:** Jeremy Smith ; Jessica Blake ; Susanne McDaniel ; Chanda Jenkins ; Susan Harris-Council ; Toni Milazzo
**Subject:** Application submitted: Fiscal Year 2025 Detention Support Grant Program grant number EMW-2025-DS-05000

> **CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Your grant application for EMW-2025-DS-05000 has been submitted on 08/07/2025 at 07:05 PM Eastern time for review and consideration. Please use the FEMA GO system at https://go.fema.gov to access your grants, check on statuses, and review any outstanding actions.

# EXHIBIT 3

| | |
|---|---|
| **From:** | Stephanie Houp |
| **To:** | Paul J. Schwiep |
| **Cc:** | Kelly Ann Kennedy |
| **Subject:** | [EXTERNAL] Public Records Request |
| **Date:** | Wednesday, October 15, 2025 2:40:48 PM |
| **Attachments:** | EMW-2025-DS-05000 - Award Package.pdf |

Per your request. Sending a meeting invite shortly. Thank you.

**Stephanie Houp, Esq.**
***Deputy Executive Director & General Counsel***
Florida Division of Emergency Management
Work Cell: (850) 815-5762
Personal Cell: (727) 685-9520
Stephanie.Houp@em.myflorida.com

 **Most written communications to or from state employees are public records obtainable by the public upon request.  Emails sent to me at this email address may be considered public and will only be withheld from disclosure if deemed confidential pursuant to the laws of the State of Florida.**

Under Florida law, correspondence with the Florida Division of Emergency Management concerning agency business that is neither confidential nor exempt pursuant to Florida Statutes is a public record and will be made available to the public upon request.

# Award Letter

U.S. Department of Homeland Security
Washington, D.C. 20472

Effective date: 09/30/2025

FEMA

Susanne McDaniel
STATE OF FLORIDA DIVISION OF EMERGENCY MANAGEMENT
2555 SHUMARD OAK BLVD
TALLAHASSEE, FL 32399

EMW-2025-DS-05000

Dear Susanne McDaniel,

Congratulations on behalf of the Department of Homeland Security, your application submitted for the Fiscal Year 2025 Detention Support Grant Program, has been approved in the amount of $608,400,000.00 in Federal funding. This award of federal assistance is executed as a Grant.

Before you request and receive any of the Federal funds awarded to you, you must establish acceptance of the award through the FEMA Grants Outcomes (FEMA GO) system. By accepting this award, you acknowledge that the terms of the following documents are incorporated into the terms of your award:

- Award Summary - included in this document
- Agreement Articles - included in this document
- Obligating Document - included in this document
- Record of Environmental Consideration - incorporated by reference
- Fiscal Year 2025 Detention Support Grant Program Guidance

Please make sure you read, understand, and maintain a copy of these documents in your official file for this award.

Sincerely,

Stacey Street
Deputy Assistant Administrator
Grant Programs Directorate

# Award Summary

**Program:** Fiscal Year 2025 Detention Support Grant Program
**Recipient:** STATE OF FLORIDA DIVISION OF EMERGENCY MANAGEMENT
**UEI-EFT:** N6KVCUU7LC61
**Award number:** EMW-2025-DS-05000

## Summary description of award

The Fiscal Year 2025 Detention Support Grant Program will provide financial assistance to the non-federal entity to relieve overcrowding in United States Customs and Border Protection's short-term holding facilities, further the Department's immigration enforcement plans, and complement Immigration and Custom Enforcement's operational priorities.

## Construction budget summary table

The amount of the construction budget is detailed in the attached Obligating Document for Award.

The following are the budgeted estimates for Cost classification within this award

4

| Cost classification | Total cost |
|---|---|
| Administrative and legal expenses | $0.00 |
| Land, structures, rights-of-way, appraisals, etc. | $0.00 |
| Relocation expenses and payments | $0.00 |
| Architectural and engineering fees | $0.00 |
| Other architectural and engineering fees | $0.00 |
| Project inspection fees | $0.00 |
| Site work | $0.00 |
| Demolition and removal | $0.00 |
| Construction | $0.00 |
| Equipment | $0.00 |
| Miscellaneous | $0.00 |
| **SUBTOTAL** | $0.00 |
| Contingencies | $0.00 |
| **SUBTOTAL** | $0.00 |
| Project (program) income | $0.00 |
| **TOTAL PROJECT COSTS** | $0.00 |

## Amount awarded table

The amount of the award is detailed in the attached Obligating Document for Award.

The following are the budgeted estimates for object classes for this award (including Federal share plus your cost share, if applicable):

| Object Class | Total |
|---|---|
| Personnel | $0.00 |
| Fringe benefits | $0.00 |
| Travel | $0.00 |
| Equipment | $0.00 |
| Supplies | $0.00 |
| Contractual | $0.00 |
| Construction | $0.00 |
| Other | $608,400,000.00 |
| Indirect charges | $0.00 |
| Federal | $608,400,000.00 |
| Non-federal | $0.00 |
| Total | $608,400,000.00 |
| Program Income | $0.00 |

## Approved scope of work

After review of your application, FEMA has approved the below scope of work. Justifications are provided for any differences between the scope of work in the original application and the approved scope of work under this award. You must submit scope or budget revision requests for FEMA's prior approval, via an amendment request, as appropriate per 2 C.F.R. § 200.308 and the FY2025 DSGP Guidance.

**Changes to program income:**

Below are the approved changes to program income. Justifications are provided for the differences in the original application and the approved funding under this award.

| **Program Income** |
| --- |
| $0.00 |
| CHANGE FROM APPLICATION<br>**Program income** changed from **$0.00 to $0.00** |
| JUSTIFICATION<br>**N/A** |

**Approved request details:**

## Project

| **Other** |
| --- |

DESCRIPTION

Revised budget pending from Florida Division of Emergency Management (FDEM). During the meeting held on August 15, 2025, FDEM was informed that its budget will be modified by FEMA since it exceeds the available amount under FY 2025 Detention Support Grant Program (DSGP). FDEM must provide a revised budget that includes a burden rate per detainee/night and a detailed cost breakout to justify the rate. Until further notice, FDEM is prohibited from obligating, expending, or drawing down funds allocated under DSGP. To release the funding hold, FDEM must submit a revised budget that includes a burden rate and justification. The funding hold will be rescinded upon FEMA and ICE review and approval of the revised detailed cost breakdown and justification.

|  | QUANTITY | UNIT PRICE | TOTAL | BUDGET CLASS |
| --- | --- | --- | --- | --- |
| Cost 1 | 1 | $608,400,000.00 | $608,400,000.00 | Other |

CHANGE FROM APPLICATION

**Item** from **Contractual** to **Other**
**Description changed**
**Budget class** from **Contractual** to **Other**
**Quantity** from **16** to **1**
**Unit price** from **$39,129,406.00** to **$608,400,000.00**

JUSTIFICATION

On 8/15/25, FDEM was informed that its budget will be modified by FEMA as it exceeds the amount available under FY 2025 Detention Support Grant Program (DSGP). Funds will be on hold until a revised budget is submitted by FDEM and approved by FEMA and ICE.

## Project

### Contractual

DESCRIPTION

Revised budget pending from Florida Division of Emergency Management (FDEM). During the meeting held on August 15, 2025, FDEM was informed that its budget will be modified by FEMA since it exceeds the available amount under FY 2025 Detention Support Grant Program (DSGP). FDEM must provide a revised budget that includes a burden rate per detainee/night and a detailed cost breakout to justify the rate. Until further notice, FDEM is prohibited from obligating, expending, or drawing down funds allocated under DSGP. To release the funding hold, FDEM must submit a revised budget that includes a burden rate and justification. The funding hold will be rescinded upon FEMA and ICE review and approval of the revised detailed cost breakdown and justification.

| | QUANTITY | UNIT PRICE | TOTAL | BUDGET CLASS |
|---|---|---|---|---|
| Cost 1 | 1 | $0.00 | $0.00 | Contractual |

CHANGE FROM APPLICATION

**Description changed**
**Quantity** from **16** to **1**
**Unit price** from **$24,261,236.00** to **$0.00**

JUSTIFICATION
On 8/15/25, FDEM was informed that its budget will be modified by FEMA as it exceeds the amount available under FY 2025 Detention Support Grant Program (DSGP). Funds will be on hold until a revised budget is submitted by FDEM and approved by FEMA and ICE.

## Project

## Contractual

DESCRIPTION

Revised budget pending from Florida Division of Emergency Management (FDEM). During the meeting held on August 15, 2025, FDEM was informed that its budget will be modified by FEMA since it exceeds the available amount under FY 2025 Detention Support Grant Program (DSGP). FDEM must provide a revised budget that includes a burden rate per detainee/night and a detailed cost breakout to justify the rate. Until further notice, FDEM is prohibited from obligating, expending, or drawing down funds allocated under DSGP. To release the funding hold, FDEM must submit a revised budget that includes a burden rate and justification. The funding hold will be rescinded upon FEMA and ICE review and approval of the revised detailed cost breakdown and justification.

|  | QUANTITY | UNIT PRICE | TOTAL | BUDGET CLASS |
|---|---|---|---|---|
| Cost 1 | 1 | $0.00 | $0.00 | Contractual |

CHANGE FROM APPLICATION
**Description changed**
**Quantity** from **16** to **1**
**Unit price** from **$5,589,727.00** to **$0.00**

JUSTIFICATION
On 8/15/25, FDEM was informed that its budget will be modified by FEMA as it exceeds the amount available under FY 2025 Detention Support Grant Program (DSGP). Funds will be on hold until a revised budget is submitted by FDEM and approved by FEMA and ICE.

## Project

## Contractual

DESCRIPTION

Revised budget pending from Florida Division of Emergency Management (FDEM). During the meeting held on August 15, 2025, FDEM was informed that its budget will be modified by FEMA since it exceeds the available amount under FY 2025 Detention Support Grant Program (DSGP). FDEM must provide a revised budget that includes a burden rate per detainee/night and a detailed cost breakout to justify the rate. Until further notice, FDEM is prohibited from obligating, expending, or drawing down funds allocated under DSGP. To release the funding hold, FDEM must submit a revised budget that includes a burden rate and justification. The funding hold will be rescinded upon FEMA and ICE review and approval of the revised detailed cost breakdown and justification.

|  | QUANTITY | UNIT PRICE | TOTAL | BUDGET CLASS |
|---|---|---|---|---|
| Cost 1 | 1 | $0.00 | $0.00 | Contractual |

CHANGE FROM APPLICATION

**Description changed**
**Quantity** from **16** to **1**
**Unit price** from **$8,974,907.00** to **$0.00**

JUSTIFICATION
On 8/15/25, FDEM was informed that its budget will be modified by FEMA as it exceeds the amount available under FY 2025 Detention Support Grant Program (DSGP). Funds will be on hold until a revised budget is submitted by FDEM and approved by FEMA and ICE.

## Project

## Contractual

DESCRIPTION

Revised budget pending from Florida Division of Emergency Management (FDEM). During the meeting held on August 15, 2025, FDEM was informed that its budget will be modified by FEMA since it exceeds the available amount under FY 2025 Detention Support Grant Program (DSGP). FDEM must provide a revised budget that includes a burden rate per detainee/night and a detailed cost breakout to justify the rate. Until further notice, FDEM is prohibited from obligating, expending, or drawing down funds allocated under DSGP. To release the funding hold, FDEM must submit a revised budget that includes a burden rate and justification. The funding hold will be rescinded upon FEMA and ICE review and approval of the revised detailed cost breakdown and justification.

|        | QUANTITY | UNIT PRICE | TOTAL  | BUDGET CLASS |
|--------|----------|------------|--------|--------------|
| Cost 1 | 1        | $0.00      | $0.00  | Contractual  |

CHANGE FROM APPLICATION

**Description changed**
**Quantity** from **16** to **1**
**Unit price** from **$3,519,566.00** to **$0.00**

JUSTIFICATION
On 8/15/25, FDEM was informed that its budget will be modified by FEMA as it exceeds the amount available under FY 2025 Detention Support Grant Program (DSGP). Funds will be on hold until a revised budget is submitted by FDEM and approved by FEMA and ICE.

## Project

**11**

## Contractual

DESCRIPTION

Revised budget pending from Florida Division of Emergency Management (FDEM). During the meeting held on August 15, 2025, FDEM was informed that its budget will be modified by FEMA since it exceeds the available amount under FY 2025 Detention Support Grant Program (DSGP). FDEM must provide a revised budget that includes a burden rate per detainee/night and a detailed cost breakout to justify the rate. Until further notice, FDEM is prohibited from obligating, expending, or drawing down funds allocated under DSGP. To release the funding hold, FDEM must submit a revised budget that includes a burden rate and justification. The funding hold will be rescinded upon FEMA and ICE review and approval of the revised detailed cost breakdown and justification.

|        | QUANTITY | UNIT PRICE | TOTAL  | BUDGET CLASS |
|--------|----------|------------|--------|--------------|
| Cost 1 | 1        | $0.00      | $0.00  | Contractual  |

CHANGE FROM APPLICATION

**Description changed**
**Quantity** from **16** to **1**
**Unit price** from **$4,370,075.00** to **$0.00**

JUSTIFICATION
On 8/15/25, FDEM was informed that its budget will be modified by FEMA as it exceeds the amount available under FY 2025 Detention Support Grant Program (DSGP). Funds will be on hold until a revised budget is submitted by FDEM and approved by FEMA and ICE.

## Project

## Contractual

DESCRIPTION

Revised budget pending from Florida Division of Emergency Management (FDEM). During the meeting held on August 15, 2025, FDEM was informed that its budget will be modified by FEMA since it exceeds the available amount under FY 2025 Detention Support Grant Program (DSGP). FDEM must provide a revised budget that includes a burden rate per detainee/night and a detailed cost breakout to justify the rate. Until further notice, FDEM is prohibited from obligating, expending, or drawing down funds allocated under DSGP. To release the funding hold, FDEM must submit a revised budget that includes a burden rate and justification. The funding hold will be rescinded upon FEMA and ICE review and approval of the revised detailed cost breakdown and justification.

|  | QUANTITY | UNIT PRICE | TOTAL | BUDGET CLASS |
|---|---|---|---|---|
| Cost 1 | 1 | $0.00 | $0.00 | Contractual |

CHANGE FROM APPLICATION

**Description changed**
**Quantity** from **16** to **1**
**Unit price** from **$1,474,240.00** to **$0.00**

JUSTIFICATION
On 8/15/25, FDEM was informed that its budget will be modified by FEMA as it exceeds the amount available under FY 2025 Detention Support Grant Program (DSGP). Funds will be on hold until a revised budget is submitted by FDEM and approved by FEMA and ICE.

## Project

## Contractual

DESCRIPTION

Revised budget pending from Florida Division of Emergency Management (FDEM). During the meeting held on August 15, 2025, FDEM was informed that its budget will be modified by FEMA since it exceeds the available amount under FY 2025 Detention Support Grant Program (DSGP). FDEM must provide a revised budget that includes a burden rate per detainee/night and a detailed cost breakout to justify the rate. Until further notice, FDEM is prohibited from obligating, expending, or drawing down funds allocated under DSGP. To release the funding hold, FDEM must submit a revised budget that includes a burden rate and justification. The funding hold will be rescinded upon FEMA and ICE review and approval of the revised detailed cost breakdown and justification.

|        | QUANTITY | UNIT PRICE | TOTAL  | BUDGET CLASS |
|--------|----------|------------|--------|--------------|
| Cost 1 | 1        | $0.00      | $0.00  | Contractual  |

CHANGE FROM APPLICATION

**Description changed**
**Quantity** from **16** to **1**
**Unit price** from **$2,136,534.00** to **$0.00**

JUSTIFICATION
On 8/15/25, FDEM was informed that its budget will be modified by FEMA as it exceeds the amount available under FY 2025 Detention Support Grant Program (DSGP). Funds will be on hold until a revised budget is submitted by FDEM and approved by FEMA and ICE.

## Management and/or Administration costs

## Other

DESCRIPTION

Revised budget pending from Florida Division of Emergency Management (FDEM). During the meeting held on August 15, 2025, FDEM was informed that its budget will be modified by FEMA since it exceeds the available amount under FY 2025 Detention Support Grant Program (DSGP). FDEM must provide a revised budget that includes a burden rate per detainee/night and a detailed cost breakout to justify the rate. Until further notice, FDEM is prohibited from obligating, expending, or drawing down funds allocated under DSGP. To release the funding hold, FDEM must submit a revised budget that includes a burden rate and justification. The funding hold will be rescinded upon FEMA and ICE review and approval of the revised detailed cost breakdown and justification.

|        | QUANTITY | UNIT PRICE | TOTAL  | BUDGET CLASS |
|--------|----------|------------|--------|--------------|
| Cost 1 | 1        | $0.00      | $0.00  | Other        |

CHANGE FROM APPLICATION
**Description changed**
**Unit price** from **$60,860,089.60** to **$0.00**

JUSTIFICATION
On 8/15/25, FDEM was informed that its budget will be modified by FEMA as it exceeds the amount available under FY 2025 Detention Support Grant Program (DSGP). Funds will be on hold until a revised budget is submitted by FDEM and approved by FEMA and ICE.

Of the total Federal funds, $608400000.00 has been placed on hold. See the following terms in the Agreement Articles for more details:

| Article number | Title | Payment hold |
|----------------|-------|--------------|
| Article 55 | Funding Hold: Environmental Planning and Historic Preservation (EHP) Compliance | $608400000.00 |

# Agreement Articles

**Program:** Fiscal Year 2025 Detention Support Grant Program
**Recipient:** STATE OF FLORIDA DIVISION OF EMERGENCY MANAGEMENT
**UEI-EFT:** N6KVCUU7LC61
**Award number:** EMW-2025-DS-05000

# Table of contents

| | |
|---|---|
| Article 1 | **Assurance, Administrative Requirements, Cost Principles, Representations, and Certifications** |
| Article 2 | **General Acknowledgements and Assurances** |
| Article 3 | **Acknowledgement of Federal Funding from DHS** |
| Article 4 | **Activities Conducted Abroad** |
| Article 5 | **Age Discrimination Act of 1975** |
| Article 6 | **Americans with Disabilities Act of 1990** |
| Article 7 | **Best Practices for Collection and Use of Personally Identifiable Information** |
| Article 8 | **CHIPS and Science Act of 2022, Public Law 117-167 CHIPS** |
| Article 9 | **Civil Rights Act of 1964 – Title VI** |
| Article 10 | **Civil Rights Act of 1968** |
| Article 11 | **Communication and Cooperation with the Department of Homeland Security and Immigration Officials** |
| Article 12 | **Copyright** |
| Article 13 | **Debarment and Suspension** |
| Article 14 | **Drug-Free Workplace Regulations** |
| Article 15 | **Duplicative Costs** |
| Article 16 | **Education Amendments of 1972 (Equal Opportunity in Education Act) – Title IX** |
| Article 17 | **Energy Policy and Conservation Act** |
| Article 18 | **Equal Treatment of Faith-Based Organizations** |
| Article 19 | **Anti-Discrimination** |
| Article 20 | **False Claims Act and Program Fraud Civil Remedies** |
| Article 21 | **Federal Debt Status** |
| Article 22 | **Federal Leadership on Reducing Text Messaging while Driving** |
| Article 23 | **Fly America Act of 1974** |
| Article 24 | **Hotel and Motel Fire Safety Act of 1990** |
| Article 25 | **John S. McCain National Defense Authorization Act of Fiscal Year 2019** |
| Article 26 | **Limited English Proficiency (Civil Rights Act of 1964, Title VI)** |
| Article 27 | **Lobbying Prohibitions** |
| Article 28 | **National Environmental Policy Act** |

| Article 29 | National Security Presidential Memorandum-33 (NSPM-33) and provisions of the CHIPS and Science Act of 2022, Pub. L. 117-167, Section 10254 |
| Article 30 | Non-Supplanting Requirement |
| Article 31 | Notice of Funding Opportunity Requirements |
| Article 32 | Patents and Intellectual Property Rights |
| Article 33 | Presidential Executive Orders |
| Article 34 | Procurement of Recovered Materials |
| Article 35 | Rehabilitation Act of 1973 |
| Article 36 | Reporting Recipient Integrity and Performance Matters |
| Article 37 | Reporting Subawards and Executive Compensation |
| Article 38 | Required Use of American Iron, Steel, Manufactured Products, and Construction Materials |
| Article 39 | SAFECOM |
| Article 40 | Subrecipient Monitoring and Management |
| Article 41 | System for Award Management and Unique Entity Identifier Requirements |
| Article 42 | Termination of a Federal Award |
| Article 43 | Terrorist Financing |
| Article 44 | Trafficking Victims Protection Act of 2000(TVPA) |
| Article 45 | Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT) Act of 2001, Pub. L. 107-56 |
| Article 46 | Use of DHS Seal, Logo and Flags |
| Article 47 | Whistleblower Protection Act |
| Article 48 | Environmental Planning and Historic Preservation (EHP) Review |
| Article 49 | Applicability of DHS Standard Terms and Conditions to Tribal Nations |
| Article 50 | Acceptance of Post Award Changes |
| Article 51 | Disposition of Equipment Acquired Under the Federal Award |
| Article 52 | Prior Approval for Modification of Approved Budget |
| Article 53 | Indirect Cost Rate |
| Article 54 | Build America, Buy America Act (BABAA) Required Contract Provision & Self-Certification |
| Article 55 | Funding Hold: Environmental Planning and Historic Preservation (EHP) Compliance |
| Article 56 | Funding Hold: Detailed Cost Breakdown & Justification Required |

Article 57    Compliance with Federal Immigration Law

Article 58    Non-Applicability of Specific Terms and Agreement Articles

Article 59    Impact of San Francisco v. Trump Preliminary Injunction

Article 60    Impact of State of Illinois v. FEMA Injunction

Article 61    Non-Applicability of Specific Agreement Articles

| Article 1 | **Assurance, Administrative Requirements, Cost Principles, Representations, and Certifications**<br>I. Recipients must complete either the Office of Management and Budget (OMB) Standard Form 424B Assurances – Non- Construction Programs, or OMB Standard Form 424D Assurances – Construction Programs, as applicable. Certain assurances in these documents may not be applicable to your program and the DHS financial assistance office (DHS FAO) may require applicants to certify additional assurances. Applicants are required to fill out the assurances, as instructed. |
|---|---|
| Article 2 | **General Acknowledgements and Assurances**<br>Recipients are required to follow the applicable provisions of the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards in effect as of the federal award date and located in Title 2, Code of Federal Regulations, Part 200 and adopted by DHS at 2 C.F.R. § 3002.10. All recipients and subrecipients must acknowledge and agree to provide DHS access to records, accounts, documents, information, facilities, and staff pursuant to 2 C.F.R. § 200.337. I. Recipients must cooperate with any DHS compliance reviews or compliance investigations. II. Recipients must give DHS access to examine and copy records, accounts, and other documents and sources of information related to the federal award and permit access to facilities and personnel. III. Recipients must submit timely, complete, and accurate reports to the appropriate DHS officials and maintain appropriate backup documentation to support the reports. IV. Recipients must comply with all other special reporting, data collection, and evaluation requirements required by law, federal regulation, Notice of Funding Opportunity, federal award specific terms and conditions, and/or DHS Component program guidance. Organization costs related to data and evaluation are allowable. The definition of data and evaluation costs is in 2 C.F.R. § 200.455(c), the full text of which is incorporated by reference. V. Recipients must complete DHS Form 3095 within 60 days of receipt of the Notice of Award for the first award under which this term applies. For further instructions and to access the form, please visit: https://www.dhs.gov/civil-rightsresources-recipients-dhs-financial-assistance. |
| Article 3 | **Acknowledgement of Federal Funding from DHS**<br>Recipients must acknowledge their use of federal award funding when issuing statements, press releases, requests for proposal, bid invitations, and other documents describing projects or programs funded in whole or in part with federal award funds. |
| Article 4 | **Activities Conducted Abroad**<br>Recipients must coordinate with appropriate government authorities when performing project activities outside the United States obtain all appropriate licenses, permits, or approvals. |
| Article 5 | **Age Discrimination Act of 1975**<br>Recipients must comply with the requirements of the Age Discrimination Act of 1975, Pub. L. No. 94-135 (codified as amended at Title 42, U.S. Code § 6101 et seq.), which prohibits discrimination on the basis of age in any program or activity receiving federal financial assistance. |

| Article 6 | **Americans with Disabilities Act of 1990** |
| --- | --- |
| | Recipients must comply with the requirements of Titles I, II, and III of the Americans with Disabilities Act, Pub. L. No. 101-336 (1990) (codified as amended at 42 U.S.C. §§ 12101– 12213), which prohibits recipients from discriminating on the basis of disability in the operation of public entities, public and private transportation systems, places of public accommodation, and certain testing entities. |

| Article 7 | **Best Practices for Collection and Use of Personally Identifiable Information** |
| --- | --- |
| | (1) Recipients who collect personally identifiable information (PII) as part of carrying out the scope of work under a federal award are required to have a publicly available privacy policy that describes standards on the usage and maintenance of the PII they collect. (2) Definition. DHS defines "PII" as any information that permits the identity of an individual to be directly or indirectly inferred, including any information that is linked or linkable to that individual. Recipients may also find the DHS Privacy Impact Assessments: Privacy Guidance and Privacy Template as useful resources respectively. |

| Article 8 | **CHIPS and Science Act of 2022, Public Law 117-167 CHIPS** |
| --- | --- |
| | (1) Recipients of DHS research and development (R&D) awards must report to the DHS Component research program office any finding or determination of sex based and sexual harassment and/or an administrative or disciplinary action taken against principal investigators or co-investigators to be completed by an authorized organizational representative (AOR) at the recipient institution. (2) Notification. An AOR must disclose the following information to agencies within 10 days of the date/the finding is made, or 10 days from when a recipient imposes an administrative action on the reported individual, whichever is sooner. Reports should include: (a) Award number, (b) Name of PI or Co-PI being reported, (c) Awardee name, (d) Awardee address, (e) AOR name, title, phone, and email address, (f) Indication of the report type: (i) Finding or determination has been made that the reported individual violated awardee policies or codes of conduct, statutes, or regulations related to sexual harassment, sexual assault, or other forms of harassment, including the date that the finding was made. (ii) Imposition of an administrative or disciplinary action by the recipient on the reporting individual related to a finding/determination or an investigation of an alleged violation of recipient policy or codes of conduct, statutes, or regulations, or other forms of harassment. (iii) The date and nature of the administrative/disciplinary action, including a basic explanation or description of the event, which should not disclose personally identifiable information regarding any complaints or individuals involved. Any description provided must be consistent with the Family Educational Rights in Privacy Act. (3) Definitions. (a) An "authorized organizational representative (AOR)" is an administrative official who, on behalf of the proposing institution, is empowered to make certifications and representations and can commit the institution to the conduct of a project that an agency is being asked to support as well as adhere to various agency policies and award requirements. (b) "Principal investigators and co-principal investigators" are award personnel supported by a grant, cooperative agreement, or contract under Federal law. (c) A "reported individual" refers to recipient personnel who have been reported to a federal agency for potential sexual harassment violations. (d) "Sex based harassment" means a form of sex discrimination and includes harassment based on sex, sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity. (e) "Sexual harassment" means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when this conduct explicitly or implicitly affects an individual's employment, unreasonably interferes with an individual's work performance, or creates an intimidating, hostile, or offensive work environment, whether such activity is carried out by a supervisor or by a co-worker, volunteer, or contractor. |

| Article 9 | Civil Rights Act of 1964 – Title VI |
|---|---|
| | Recipients must comply with the requirements of Title VI of the Civil Rights Act of 1964, Pub. L. No. 88-352 (codified as amended at 42 U.S.C. § 2000d et seq.), which provides that no person in the United States will, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. DHS implementing regulations for the Act are found at 6 C.F.R. Part 21. Recipients of a federal award from the Federal Emergency Management Agency (FEMA) must also comply with FEMA's implementing regulations at 44 C.F.R. Part 7. |

| Article 10 | Civil Rights Act of 1968 |
|---|---|
| | Recipients must comply with Title VIII of the Civil Rights Act of 1968, Pub. L. No. 90284 (codified as amended at 42 U.S.C. § 3601 et seq.) which prohibits recipients from discriminating in the sale, rental, financing, and advertising of dwellings, or in the provision of services in connection. therewith, on the basis of race, color, national origin, religion, disability, familial status, and sex, as implemented by the U.S. Department of Housing and Urban Development at 24 C.F.R. Part 100. The prohibition on disability discrimination includes the requirement that new multifamily housing with four or more dwelling units— i.e., the public and common use areas and individual apartment units (all units in buildings with elevators and ground-floor units in buildings without elevators)—be designed and constructed with certain accessible features. (See 24 C.F.R. Part 100, Subpart D.) |

| Article 11 | **Communication and Cooperation with the Department of Homeland Security and Immigration Officials** |
|---|---|
| | (1) All recipients and other recipients of funds under this award must agree that they will comply with the following requirements related to coordination and cooperation with the Department of Homeland Security and immigration officials: (a) They must comply with the requirements of 8 U.S.C. §§ 1373 and 1644. These statutes prohibit restrictions on information sharing by state and local government entities with DHS regarding the citizenship or immigration status, lawful or unlawful, of any individual. Additionally, 8 U.S.C. § 1373 prohibits any person or agency from prohibiting, or in any way restricting, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status of any individual: 1) sending such information to, or requesting or receiving such information from, Federal immigration officials; 2) maintaining such information; or 3) exchanging such information with any other Federal, State, or local government entity; (b) They must comply with other relevant laws related to immigration, including prohibitions on encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv), prohibitions on transporting or moving illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(ii), prohibitions on harboring, concealing, or shielding from detection illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(iii), and any applicable conspiracy, aiding or abetting, or attempt liability regarding these statutes; (c) That they will honor requests for cooperation, such as participation in joint operations, sharing of information, or requests for short term detention of an alien pursuant to a valid detainer. A jurisdiction does not fail to comply with this requirement merely because it lacks the necessary resources to assist in a particular instance; (d) That they will provide access to detainees, such as when an immigration officer seeks to interview a person who might be a removable alien; and (e) That they will not leak or otherwise publicize the existence of an immigration enforcement operation. (2) The recipient must certify under penalty of perjury pursuant to 28 U.S.C. § 1746 and using a form that is acceptable to DHS, that it will comply with the requirements of this term. Additionally, the recipient agrees that it will require any subrecipients or contractors to certify in the same manner that they will comply with this term prior to providing them with any funding under this award. (3) The recipient agrees that compliance with this term is material to the Government's decision to make or continue with this award and that the Department of homeland Security may terminate this grant, or take any other allowable enforcement action, if the recipient fails to comply with this term. |
| **Article 12** | **Copyright** |
| | Recipients must affix the applicable copyright notices of 17 U.S.C. §§ 401 or 402 to any work first produced under federal awards and also include an acknowledgement that the work was produced under a federal award (including the federal award number and federal awarding agency). As detailed in 2 C.F.R. § 200.315, a federal awarding agency reserves a royalty-free, nonexclusive, and irrevocable right to reproduce, publish, or otherwise use the work for federal purposes and to authorize others to do so. |
| **Article 13** | **Debarment and Suspension** |
| | Recipients must comply with the non-procurement debarment and suspension regulations implementing Executive Orders 12549 and 12689 set forth at 2 C.F.R. Part 180 as implemented by DHS at 2 C.F.R. Part 3000. These regulations prohibit recipients from entering into covered transactions (such as subawards and contracts) with certain parties that are debarred, suspended, or otherwise excluded from or ineligible for participation in federal assistance programs or activities. |

| Article 14 | **Drug-Free Workplace Regulations** |
| | Recipients must comply with drug-free workplace requirements in Subpart B (or Subpart C, if the recipient is an individual) of 2 C.F.R. Part 3001, which adopts the Government-wide implementation (2 C.F.R. Part 182) of the Drug-Free Workplace Act of 1988 (41 U.S.C. §§ 8101-8106). |

| Article 15 | **Duplicative Costs** |
| | Recipients are prohibited from charging any cost to this federal award that will be included as a cost or used to meet cost sharing requirements of any other federal award in either the current or a prior budget period. See 2 C.F.R. § 200.403(f). However, recipients may shift costs that are allowable under two or more federal awards where otherwise permitted by federal statutes, regulations, or the federal award terms and conditions. |

| Article 16 | **Education Amendments of 1972 (Equal Opportunity in Education Act) – Title IX** |
| | Recipients must comply with the requirements of Title IX of the Education Amendments of 1972, Pub. L. No. 92-318 (codified as amended at 20 U.S.C. § 1681 et seq.), which provide that no person in the United States will, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving federal financial assistance. DHS implementing regulations are codified at 6 C.F.R. Part 17. Recipients of a federal award from the Federal Emergency Management Agency (FEMA) must also comply with FEMA's implementing regulations at 44 C.F.R. Part 19. |

| Article 17 | **Energy Policy and Conservation Act** |
| | Recipients must comply with the requirements of the Energy Policy and Conservation Act, Pub. L. No. 94-163 (1975) (codified as amended at 42 U.S.C. § 6201 et seq.), which contain policies relating to energy efficiency that are defined in the state energy conservation plan issued in compliance with this Act. |

| Article 18 | **Equal Treatment of Faith-Based Organizations** |
| | It is DHS policy to ensure the equal treatment of faith-based organizations in social service programs administered or supported by DHS or its component agencies, enabling those organizations to participate in providing important social services to beneficiaries. Recipients must comply with the equal treatment policies and requirements contained in 6 C.F.R. Part 19 and other applicable statutes, regulations, and guidance governing the participations of faith-based organizations in individual DHS programs. |

| Article 19 | **Anti-Discrimination** |
|---|---|
| | Recipients must comply with all applicable Federal anti-discrimination laws material to the government's payment decisions for purposes of 31 U.S.C. § 372(b)(4). (1) Definitions. As used in this clause – (a) DEI means "diversity, equity, and inclusion." (b) DEIA means "diversity, equity, inclusion, and accessibility." (c) Discriminatory equity ideology has the meaning set forth in Section 2(b) of Executive Order 14190 of January 29, 2025. (d) Federal anti-discrimination laws mean Federal civil rights law that protect individual Americans from discrimination on the basis of race, color, sex, religion, and national origin. (e) Illegal immigrant means any alien, as defined in 8 U.S.C. § 1101(a)(3), who has no lawful immigration status in the United States.(2) Grant award certification. (a) By accepting the grant award, recipients are certifying that: (i) They do not, and will not during the term of this financial assistance award, operate any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws; and (ii) They do not engage in and will not during the term of this award engage in, a discriminatory prohibited boycott. (iii) They do not, and will not during the term of this award, operate any program that benefits illegal immigrants or incentivizes illegal immigration. (3) DHS reserves the right to suspend payments in whole or in part and/or terminate financial assistance awards if the Secretary of Homeland Security or her designee determines that the recipient has violated any provision of subsection (2). (4) Upon suspension or termination under subsection (3), all funds received by the recipient shall be deemed to be in excess of the amount that the recipient is determined to be entitled to under the Federal award for purposes of 2 C.F.R. § 200.346. As such, all amounts received will constitute a debt to the Federal Government that may be pursued to the maximum extent permitted by law. |
| Article 20 | **False Claims Act and Program Fraud Civil Remedies** |
| | Recipients must comply with the requirements of the False Claims Act, 31 U.S.C. §§ 3729- 3733, which prohibit the submission of false or fraudulent claims for payment to the Federal Government. (See 31 U.S.C. §§ 3801-3812, which details the administrative remedies for false claims and statements made.) |
| Article 21 | **Federal Debt Status** |
| | All recipients are required to be non-delinquent in their repayment of any federal debt. Examples of relevant debt include delinquent payroll and other taxes, audit disallowances, and benefit overpayments. See OMB Circular A-129. |
| Article 22 | **Federal Leadership on Reducing Text Messaging while Driving** |
| | Recipients are encouraged to adopt and enforce policies that ban text messaging while driving recipient-owned, recipient-rented, or privately owned vehicles when on official government business or when performing any work for or on behalf of the Federal Government. Recipients are also encouraged to conduct the initiatives of the type described in Section 3(a) of Executive Order 13513. |
| Article 23 | **Fly America Act of 1974** |
| | Recipients must comply with Preference for U.S. Flag Air Carriers (a list of certified air carriers can be found at: Certificated Air Carriers List | US Department of Transportation, https://www.transportation.gov/policy/aviation-policy/certificated-aircarriers-list)for international air transportation of people and property to the extent that such service is available, in accordance with the International Air Transportation Fair Competitive Practices Act of 1974, 49 U.S.C. § 40118, and the interpretative guidelines issued by the Comptroller General of the United States in the March 31, 1981, amendment to Comptroller General Decision B-138942. |

| Article 24 | **Hotel and Motel Fire Safety Act of 1990**<br>Recipients must ensure that all conference, meeting, convention, or training space funded entirely or in part by federal award funds complies with the fire prevention and control guidelines of Section 6 of the Hotel and Motel Fire Safety Act of 1990, 15 U.S.C. § 2225a. |
|---|---|
| Article 25 | **John S. McCain National Defense Authorization Act of Fiscal Year 2019**<br>Recipients, subrecipients, and their contractors and subcontractors are subject to the prohibitions described in section 889 of the John S. McCain National Defense Authorization Act for Fiscal Year 2019, Pub. L. No. 115-232 (2018) and 2 C.F.R. §§ 200.216, 200.327, 200.471, and Appendix II to 2 C.F.R. Part 200. The statute – as it applies to DHS recipients, subrecipients, and their contractors and subcontractors – prohibits obligating or expending federal award funds on certain telecommunications and video surveillance products and contracting with certain entities for national security reasons. |
| Article 26 | **Limited English Proficiency (Civil Rights Act of 1964, Title VI)**<br>Recipients must comply with Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.) prohibition against discrimination on the basis of national origin, which requires that recipients of federal financial assistance take reasonable steps to provide meaningful access to persons with limited English proficiency (LEP) to their programs and services. For additional assistance and information regarding language access obligations, please refer to the DHS Recipient Guidance: https://www.dhs.gov/guidance-published-help-department-supported-organizationsprovide-meaningful-access-people-limited and additional resources on http://www.lep.gov. |
| Article 27 | **Lobbying Prohibitions**<br>Recipients must comply with 31 U.S.C. § 1352 and 6 C.F.R. Part 9, which provide that none of the funds provided under a federal award may be expended by the recipient to pay any person to influence, or attempt to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any federal action related to a federal award or contract, including any extension, continuation, renewal, amendment, or modification. Per 6 C.F.R. Part 9, recipients must file a lobbying certification form as described in Appendix A to 6 C.F.R. Part 9 or available on Grants.gov as the Grants.gov Lobbying Form and file a lobbying disclosure form as described in Appendix B to 6 C.F.R. Part 9 or available on Grants.gov as the Disclosure of Lobbying Activities (SF-LLL). |
| Article 28 | **National Environmental Policy Act**<br>Recipients must comply with the requirements of the National Environmental Policy Act of 1969, Pub. L. No. 91-190 (1970) (codified as amended at 42 U.S.C. § 4321 et seq.) (NEPA) and the Council on Environmental Quality (CEQ) Regulations for Implementing the Procedural Provisions of NEPA, which require recipients to use all practicable means within their authority, and consistent with other essential considerations of national policy, to create and maintain conditions under which people and nature can exist in productive harmony and fulfill the social, economic, and other needs of present and future generations of Americans. |

| Article 29 | **National Security Presidential Memorandum-33 (NSPM-33) and provisions of the CHIPS and Science Act of 2022, Pub. L. 117-167, Section 10254**<br>(1) Recipient research institutions ("covered institutions") must comply with the requirements in NSPM-33 and provisions of Pub. L.117-167, Section 10254 (codified at 42 U.S.C. § 18951) certifying that the institution has established and operates a research security program that includes elements relating to: (a) cybersecurity; (b) foreign travel security; (c) research security training; and (d) export control training, as appropriate. (2) Definition. "Covered institutions" means recipient research institutions receiving federal Research and Development (R&D) science and engineering support "in excess of $50 million per year." |
|---|---|
| Article 30 | **Non-Supplanting Requirement**<br>Recipients of federal awards under programs that prohibit supplanting by law must ensure that federal funds supplement but do not supplant non-federal funds that, in the absence of such federal funds, would otherwise have been made available for the same purpose. |
| Article 31 | **Notice of Funding Opportunity Requirements**<br>All the instructions, guidance, limitations, scope of work, and other conditions set forth in the Notice of Funding Opportunity (NOFO) for this federal award are incorporated by reference. All recipients must comply with any such requirements set forth in the NOFO. If a condition of the NOFO is inconsistent with these terms and conditions and any such terms of the federal award, the condition in the NOFO shall be invalid to the extent of the inconsistency. The remainder of that condition and all other conditions set forth in the NOFO shall remain in effect. |
| Article 32 | **Patents and Intellectual Property Rights**<br>Recipients are subject to the Bayh-Dole Act, 35 U.S.C. § 200 et seq. and applicable regulations governing inventions and patents, including the regulations issued by the Department of Commerce at 37 C.F.R. Part 401 (Rights to Inventions Made by Nonprofit Organizations and Small Business Firms under Government Awards, Contracts, and Cooperative Agreements) and the standard patent rights clause set forth at 37 C.F.R. § 401.14. |
| Article 33 | **Presidential Executive Orders**<br>Recipients must comply with the requirements of Presidential Executive Orders related to grants (also known as federal assistance and financial assistance), the full text of which are incorporated by reference. |
| Article 34 | **Procurement of Recovered Materials**<br>States, political subdivisions of states, and their contractors must comply with Section 6002 of the Solid Waste Disposal Act, Pub. L. No. 89-272 (1965) (codified as amended by the Resource Conservation and Recovery Act at 42 U.S.C. § 6962) and 2 C.F.R. § 200.323. The requirements of Section 6002 include procuring only items designated in guidelines of the Environmental Protection Agency (EPA) at 40 C.F.R. Part 247 that contain the highest percentage of recovered materials practicable, consistent with maintaining a satisfactory level of competition. |

| | |
|---|---|
| **Article 35** | **Rehabilitation Act of 1973**<br>Recipients must comply with the requirements of Section 504 of the Rehabilitation Act of 1973, Pub. L. No. 93-112 (codified as amended at 29 U.S.C. § 794), which provides that no otherwise qualified handicapped individuals in the United States will, solely by reason of the handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. |
| **Article 36** | **Reporting Recipient Integrity and Performance Matters**<br>If the total value of any currently active grants, cooperative agreements, and procurement contracts from all federal awarding agencies exceeds $10,000,000 for any period of time during the period of performance of the federal award, then the recipient must comply with the requirements set forth in the government-wide federal award term and condition for Recipient Integrity and Performance Matters is in 2 C.F.R. Part 200, Appendix XII, the full text of which is incorporated by reference. |
| **Article 37** | **Reporting Subawards and Executive Compensation**<br>For federal awards that total or exceed $30,000, recipients are required to comply with the requirements set forth in the government-wide federal award term and condition on Reporting Subawards and Executive Compensation set forth at 2 C.F.R. Part 170, Appendix A, the full text of which is incorporated by reference. |

| Article 38 | **Required Use of American Iron, Steel, Manufactured Products, and Construction Materials** |
|---|---|

(1) Recipients of a federal award from a financial assistance program that provides funding for infrastructure are hereby notified that none of the funds provided under this federal award may be used for a project for infrastructure unless: (a) all iron and steel used in the project are produced in the United States—this means all manufacturing processes, from the initial melting stage through the application of coatings, occurred in the United States; (b) all manufactured products used in the project are produced in the United States—this means the manufactured product was manufactured in the United States; and the cost of the components of the manufactured product that are mined, produced, or manufactured in the United States is greater than 55 percent of the total cost of all components of the manufactured product, unless another standard for determining the minimum amount of domestic content of the manufactured product has been established under applicable law or regulation; and (c) all construction materials are manufactured in the United States—this means that all manufacturing processes for the construction material occurred in the United States. (2) The Buy America preference only applies to articles, materials, and supplies that are consumed in, incorporated into, or affixed to an infrastructure project. As such, it does not apply to tools, equipment, and supplies, such as temporary scaffolding, brought to the construction site and removed at or before the completion of the infrastructure project. Nor does a Buy America preference apply to equipment and furnishings, such as movable chairs, desks, and portable computer equipment, that are used at or within the finished infrastructure project but are not an integral part of the structure or permanently affixed to the infrastructure project. (3) Waivers When necessary, recipients may apply for, and the agency may grant, a waiver from these requirements. The agency should notify the recipient for information on the process for requesting a waiver from these requirements. (a) When the Federal agency has determined that one of the following exceptions applies, the federal awarding official may waive the application of the domestic content procurement preference in any case in which the agency determines that: (i) applying the domestic content procurement preference would be inconsistent with the public interest; (ii) the types of iron, steel, manufactured products, or construction materials are not produced in the United States in sufficient and reasonably available quantities or of a satisfactory quality; or (iii) the inclusion of iron, steel, manufactured products, or construction materials produced in the United States will increase the cost of the overall project by more than 25 percent. (b) A request to waive the application of the domestic content procurement preference must be in writing. The agency will provide instructions on the format, contents, and supporting materials required for any waiver request. Waiver requests are subject to public comment periods of no less than 15 days and must be reviewed by the Made in America Office. (c) There may be instances where a federal award qualifies, in whole or in part, for an existing waiver described at "Buy America" Preference in FEMA Financial Assistance Programs for Infrastructure | FEMA.gov. (4) Definitions. The definitions applicable to this term are set forth at 2 C.F.R. § 184.3, the full text of which is incorporated by reference.

| Article 39 | **SAFECOM** |
|---|---|

Recipients receiving federal awards made under programs that provide emergency communication equipment and its related activities must comply with the SAFECOM Guidance for Emergency Communication Grants, including provisions on technical standards that ensure and enhance interoperable communications. The SAFECOM Guidance is updated annually and can be found at Funding and Sustainment | CISA.

| Article 40 | **Subrecipient Monitoring and Management** |
|---|---|

Pass-through entities must comply with the requirements for subrecipient monitoring and management as set forth in 2 C.F.R. §§ 200.331-333.

| **Article 41** | **System for Award Management and Unique Entity Identifier Requirements**<br>Recipients are required to comply with the requirements set forth in the governmentwide federal award term and condition regarding the System for Award Management and Unique Entity Identifier Requirements in 2 C.F.R. Part 25, Appendix A, the full text of which is incorporated reference. |
|---|---|
| **Article 42** | **Termination of a Federal Award**<br>(1) By DHS. DHS may terminate a federal award, in whole or in part, for the following reasons: (a) If the recipient fails to comply with the terms and conditions of the federal award; (b) With the consent of the recipient, in which case the parties must agree upon the termination conditions, including the effective date, and in the case of partial termination, the portion to be terminated; or (c) Pursuant to the terms and conditions of the federal award, including, to the extent authorized by law, if the federal award no longer effectuates the program goals or agency priorities. (3) By the Recipient. The recipient may terminate the federal award, in whole or in part, by sending written notification to DHS stating the reasons for such termination, the effective date, and in the case of partial termination, the portion to be terminated. However, if DHS determines that the remaining portion of the federal award will not accomplish the purposes for which the federal award was made, DHS may terminate the federal award in its entirety. (4) Notice. Either party will provide written notice of intent to terminate for any reason to the other party no less than 30 calendar days prior to the effective date of the termination. (5) Compliance with Closeout Requirements for Terminated Awards. The recipient must continue to comply with closeout requirements in 2 C.F.R. §§ 200.344200.345 after an award is terminated. |
| **Article 43** | **Terrorist Financing**<br>Recipients must comply with Executive Order 13224 and applicable statutory prohibitions on transactions with, and the provisions of resources and support to, individuals and organizations associated with terrorism. Recipients are legally responsible for ensuring compliance with the Executive Order and laws. |
| **Article 44** | **Trafficking Victims Protection Act of 2000(TVPA)**<br>Recipients must comply with the requirements of the government-wide federal award term and condition which implements Trafficking Victims Protection Act of 2000, Pub. L. No. 106-386, § 106 (codified as amended at 22 U.S.C. § 7104). The federal award term and condition is in 2 C.F.R. § 175.105, the full text of which is incorporated by reference. |
| **Article 45** | **Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT) Act of 2001, Pub. L. 107-56**<br>Recipients must comply with the requirements of Pub. L. 107-56, Section 817 of the USA PATRIOT Act, which amends 18 U.S.C. §§ 175–175c. |
| **Article 46** | **Use of DHS Seal, Logo and Flags**<br>Recipients must obtain written permission from DHS prior to using the DHS seals, logos, crests, or reproductions of flags, or likenesses of DHS agency officials. This includes use of DHS component (e.g., FEMA, CISA, etc.) seals, logos, crests, or reproductions of flags, or likenesses of component officials. |

| Article 47 | **Whistleblower Protection Act** |
| --- | --- |
| | Recipients must comply with the statutory requirements for whistleblower protections in 10 U.S.C § 470141 U.S.C. § 4712. |

| Article 48 | **Environmental Planning and Historic Preservation (EHP) Review** |
| --- | --- |
| | DHS/FEMA funded activities that could have an impact on the environment are subject to the FEMA EHP review process. This review does not address all federal, state, and local requirements. Acceptance of federal funding requires the recipient to comply with all federal, state, and local laws. DHS/FEMA is required to consider the potential impacts to natural and cultural resources of all projects funded by DHS/FEMA grant funds, through its EHP review process, as mandated by: the National Environmental Policy Act; Endangered Species Act; National Historic Preservation Act of 1966, as amended; Clean Water Act; Clean Air Act; National Flood Insurance Program regulations; and any other applicable laws, regulations and executive orders. General guidance for FEMA's EHP process is available on the DHS/FEMA Website. Specific applicant guidance on how to submit information for EHP review depends on the individual grant program. Applicants should contact their grant Program Officer to be put into contact with EHP staff responsible for assisting their specific grant program. The FEMA EHP review process must be completed before funds are released to carry out the proposed project, otherwise, DHS/FEMA may not be able to fund the project due to noncompliance with EHP laws, executive orders, regulations, and policies. DHS/FEMA may also need to perform a project closeout review to ensure the applicant complied with all required EHP conditions identified in the initial review. If ground disturbing activities occur during construction, the applicant will monitor the ground disturbance, and if any potential archaeological resources are discovered, the applicant will immediately cease work in that area and notify the pass-through entity, if applicable, and DHS/FEMA. EO 11988, Floodplain Management, and EO 11990, Protection of Wetlands, require that all federal actions in or affecting the floodplain or wetlands be reviewed for opportunities to relocate, and be evaluated for social, economic, historical, environmental, legal, and safety considerations. FEMA's regulations at 44 C.F.R. Part 9 implement the EOs and require an eight-step review process if a proposed action is in a floodplain or wetland or has the potential to affect or be affected by a floodplain or wetland. The regulation also requires that the federal agency provide public notice of the proposed action at the earliest possible time to provide the opportunity for public involvement in the decision-making process (44 C.F.R. § 9.8). Where there is no opportunity to relocate the federal action, FEMA is required to undertake a detailed review to determine what measures can be taken to minimize future damages to the floodplain or wetland. |

| Article 49 | **Applicability of DHS Standard Terms and Conditions to Tribal Nations** |
| --- | --- |
| | The DHS Standard Terms and Conditions are a restatement of general requirements imposed upon recipients and flow down to sub-recipients as a matter of law, regulation, or executive order. If the requirement does not apply to Tribal Nations, or there is a federal law or regulation exempting its application to Tribal Nations, then the acceptance by Tribal Nations, or acquiescence to DHS Standard Terms and Conditions does not change or alter its inapplicability to a Tribal Nation. The execution of grant documents is not intended to change, alter, amend, or impose additional liability or responsibility upon the Tribal Nations where it does not already exist. |

| Article 50 | **Acceptance of Post Award Changes**<br>In the event FEMA determines that an error in the award package has been made, or if an administrative change must be made to the award package, recipients will be notified of the change in writing. Once the notification has been made, any subsequent requests for funds will indicate recipient acceptance of the changes to the award. Please email FEMA Grant Management Operations at: ASK-GMD@fema.dhs.gov for any questions. |
|---|---|
| Article 51 | **Disposition of Equipment Acquired Under the Federal Award**<br>When original or replacement equipment acquired under this award is no longer needed for the original project or program or for other activities currently or previously supported by a federal awarding agency, the non-state recipient or subrecipient (including subrecipients of a State or Tribal Nation), must request instructions from FEMA to make proper disposition of the equipment pursuant to 2 C.F.R. section 200.313(e). State recipients must follow the disposition requirements in accordance with State laws and procedures. 2 C.F.R. section 200.313(b). Tribal Nations must follow the disposition requirements in accordance with Tribal laws and procedures noted in 2 C.F.R. section 200.313(b); and if such laws and procedures do not exist, then Tribal Nations must follow the disposition instructions in 2 C.F.R. section 200.313(e). |
| Article 52 | **Prior Approval for Modification of Approved Budget**<br>Before making any change to the FEMA approved budget for this award, a written request must be submitted and approved by FEMA as required by 2 C.F.R. section 200.308. For purposes of non-construction projects, FEMA is utilizing its discretion to impose an additional restriction under 2 C.F.R. section 200.308(i) regarding the transfer of funds among direct cost categories, programs, functions, or activities. For awards with an approved budget where the federal share is greater than the simplified acquisition threshold (currently \$250,000) and where the cumulative amount of such transfers exceeds or is expected to exceed ten percent (10%) of the total budget FEMA last approved, transferring funds among direct cost categories, programs, functions, or activities is unallowable without prior written approval from FEMA. For purposes of awards that support both construction and non-construction work, 2 C.F.R. section 200.308((f)(9) requires the recipient to obtain prior written approval from FEMA before making any fund or budget transfers between the two types of work. Any deviations from a FEMA approved budget must be reported in the first Federal Financial Report (SF-425) that is submitted following any budget deviation, regardless of whether the budget deviation requires prior written approval. |
| Article 53 | **Indirect Cost Rate**<br>2 C.F.R. section 200.211(b)(16) requires the terms of the award to include the indirect cost rate for the federal award. If applicable, the indirect cost rate for the award is stated in the budget documents or other materials approved by FEMA and included in the award file. |

| **Article 54** | **Build America, Buy America Act (BABAA) Required Contract Provision & Self-Certification** |
|---|---|
| | In addition to the DHS Standard Terms & Conditions regarding Required Use of American Iron, Steel, Manufactured Products, and Construction Materials, recipients and subrecipients of FEMA financial assistance for programs that are subject to BABAA must include a Buy America preference contract provision as noted in 2 C.F.R. section 184.4 and a self-certification as required by the FEMA Buy America Preference in FEMA Financial Assistance Programs for Infrastructure (FEMA Interim Policy #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). This requirement applies to all subawards, contracts, and purchase orders for work performed, or products supplied under the FEMA award subject to BABAA. |

| **Article 55** | **Funding Hold: Environmental Planning and Historic Preservation (EHP) Compliance** |
|---|---|
| | This award includes work that requires an Environmental Planning and Historic Preservation (EHP) compliance review. A funding hold is placed on the following investments/projects, and the recipient is prohibited from obligating, expending, or drawing down funds under this award in the amount of $608,400,000 in support of the following investments/projects, with a limited exception for any approved costs associated with the preparation, conduct, and completion of required EHP reviews. Please refer to the applicable FY 2025 DSGP Guidance for further information on EHP requirements and other applicable program guidance, including Environmental & Historic Preservation Guidance for FEMA Grant Applications (FEMA.gov). [Activity/Project: Per Diem] To release this hold, the recipient is required to obtain the required FEMA EHP compliance approval for this project pursuant to the FY 2025 DSGP Guidance. Failure to comply with this condition may jeopardize your ability to access and expend federal funds for the investments/projects listed above. Please contact your FEMA GPD Headquarters DSGP Program Analyst to receive specific guidance regarding EHP compliance. If you have questions about this funding hold or believe it was placed in error, please contact the FEMA GPD Headquarters DSGP Program Office at FEMA.dsgp@fema.dhs.gov. |

| **Article 56** | **Funding Hold: Detailed Cost Breakdown & Justification Required** |
|---|---|
| | FEMA has placed a funding hold on this award, and $608,400,000 is on hold in the FEMA financial systems. The STATE OF FLORIDA DIVISION OF EMERGENCY MANAGEMENT is prohibited from obligating, expending, or drawing down the federal funds associated with the following projects/investments. [Activity/Project: Per Diem] To release the funding hold, the recipient must provide a detailed cost breakdown and justification for the projects/investments listed above. FEMA will rescind the funding hold upon its review and approval of the detailed cost breakdown and justification. If you believe this funding hold was placed in error, please contact the relevant Program Analyst or Grants Management Specialist. |

**Article 57**    **Compliance with Federal Immigration Law**

Prohibition. a. The state, territorial, or local government recipient is prohibited from being designated by the Department of Homeland Security or Department of Justice as a sanctuary jurisdiction. If the Department of Homeland Security or Department of Justice designates the state, territory, or local government as a sanctuary jurisdiction after the Department of Homeland Security has made the grant award, the state, territorial, or local government recipient is prohibited from making any financial obligations under the grant award on or after the date of designation until the Department of Homeland Security or Department of Justice removes that designation. The Department of Homeland Security will suspend the grant award and not make payments to the state, local, or territorial recipient on or after the date of designation until the Department of Homeland Security or Department of Justice removes that designation. b. The state, local, or territorial recipient is prohibited from making subawards to a state, local, or territorial government that the Department of Homeland Security or Department of Justice has designated as sanctuary jurisdiction. If the Department of Homeland Security or Department of Justice designates a state, local, or territorial government as a sanctuary jurisdiction after the recipient makes a subaward, the recipient must suspend the subaward, the recipient must not make any additional payments to the subrecipient, and the subrecipient is prohibited from making any financial obligations under the subaward on and after the date of designation until the Department of Homeland Security or Department of Justice removes that designation. c. The Department of Homeland Security designates a state, territory, or local government as a sanctuary jurisdiction if it fails to comply with that requirements set forth in paragraphs 2.a.i to v of this term and condition. 2. Certification. a. The state, territorial or local recipient and subrecipients must certify under penalty of perjury pursuant to 28 U.S.C. § 1746, and using a form that is acceptable to the Department of Homeland Security, that they will comply with the following requirements related to coordination and cooperation with the Department of Homeland Security and immigration officials: i. They will comply with the requirements of 8 U.S.C. §§ 1373 and 1644. These statutes prohibit restrictions on information sharing by state and local government entities with the Department of Homeland Security regarding the citizenship or immigration status, lawful or unlawful, of any individual. Additionally, 8 U.S.C. § 1373 prohibits any person or agency from prohibiting, or in any way restricting, a Federal, state, or local government entity from doing any of the following with respect to information regarding the immigration status of any individual: (1) sending such information to, or requesting or receiving such information from, Federal immigration officials; (2) maintaining such information; or (3) exchanging such information with any other Federal, state, or local government entity. ii. They will comply with other relevant laws related to immigration, including prohibitions on encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv), prohibitions on transporting or moving illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(ii), prohibitions on harboring, concealing, or shielding from detection illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(iii), and any applicable conspiracy, aiding or abetting, or attempt liability regarding these statutes. iii. They will honor requests for cooperation, such as participating in joint operations, sharing of information, or requests for short term detention of an alien pursuant to a valid detainer. A jurisdiction does not fail to comply with this requirement merely because it lacks the necessary resources to assist in a particular instance. iv. They will provide access to detainees, such as when an immigration officer seeks to interview a person who might be a removable alien. v. They will not leak or otherwise publicize the existence of an immigration enforcement operation. b. The state or territorial recipient must require a state, territorial, or local government subrecipient to make the certification above before providing them with any funding under the subaward. 3. Materiality and Remedies for Noncompliance. This term and condition is material to the Department of Homeland Security's decision to continue with this grant award and the Department of Homeland Security may take any remedy for noncompliance, including termination, if the state or territorial recipient or a local government subrecipient fails to comply with this term and condition.

| | |
|---|---|
| **Article 58** | **Non-Applicability of Specific Terms and Agreement Articles**<br>Notwithstanding their inclusion in this award package, the following terms and Agreement Articles do not apply to this grant award: (1) paragraph C.IX (Communication and Cooperation with the Department of Homeland Security and Immigration Officials) of the DHS Standard Terms and Conditions and the Agreement Article titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" in this award package; (2) paragraph C.XVII(2)(a)(iii) (Anti-Discrimination Grant Award Certification regarding immigration) of the DHS Standard Terms and Conditions and paragraph (2)(a)(iii) of the Agreement Article titled "Anti-Discrimination" in this award package. |
| **Article 59** | **Impact of San Francisco v. Trump Preliminary Injunction**<br>Pursuant to the preliminary injunction order issued on August 22, 2025, in City and County of San Francisco, et al. v. Trump, et al., No. 3:25-cv-01350 (N.D. Cal.), the following terms and conditions do not apply to awards or subawards issued to any of the plaintiffs subject to the preliminary injunction order while the order remains in effect: (1) paragraph C.IX (Communication and Cooperation with the Department of Homeland Security and Immigration Officials) of the DHS Standard Terms and Conditions and the Agreement Article titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" in this award package; (2) paragraph C.XVII(2)(a)(iii) (Anti-Discrimination Grant Award Certification regarding immigration) of the DHS Standard Terms and Conditions and paragraph (2)(a)(iii) of the Agreement Article titled "Anti-Discrimination" in this award package; and (3) the "Compliance with Federal Immigration Law" Agreement Article. If the preliminary injunction is stayed, vacated, or extinguished, the "Compliance with Federal Immigration Law" Agreement Article will immediately become effective. |
| **Article 60** | **Impact of State of Illinois v. FEMA Injunction**<br>Pursuant to the memorandum and order issued on September 24, 2025, in State of Illinois, et al. v. Federal Emergency Management Agency, et. al, No. 25-206 (D. R.I.), the following terms and conditions do not apply to awards or subawards issued to any of the plaintiffs subject to the injunction order while the order remains in effect: (1) paragraph C.IX (Communication and Cooperation with the Department of Homeland Security and Immigration Officials) of the DHS Standard Terms and Conditions and the Agreement Article titled "Communication and Cooperation with the Department of Homeland Security and Immigration Officials" in this award package; (2) paragraph C.XVII(2)(a)(iii) (Anti-Discrimination Grant Award Certification regarding immigration) of the DHS Standard Terms and Conditions and paragraph (2)(a)(iii) of the Agreement Article titled "Anti-Discrimination" in this award package; and (3) the "Compliance with Federal Immigration Law" Agreement Article. If the injunction is stayed, vacated, or extinguished, the "Compliance with Federal Immigration Law" Agreement Article will immediately become effective. |
| **Article 61** | **Non-Applicability of Specific Agreement Articles**<br>Notwithstanding its inclusion in this award package, the following Agreement Article does not apply to this grant award: 1. Termination of a Federal Award. This provision is consistent with any terms of the Fiscal Year 2025 Detention Support Grant Program Guidance that state Paragraph C.XL (Termination of a Federal Award) of the FY 2025 DHS Standard Terms and Conditions does not apply to this award. Refer to the Fiscal Year 2025 Detention Support Grant Program Guidance for the terms governing award termination. |

# Obligating document

| 1. Agreement No. EMW-2025-DS-05000 | 2. Amendment No. N/A | 3. Recipient No. 800749868 | 4. Type of Action AWARD | 5. Control No. WX04601N2025T |
|---|---|---|---|---|

| 6. Recipient Name and Address | | 7. Issuing FEMA Office and Address | 8. Payment Office and Address |
|---|---|---|---|
| STATE OF FLORIDA DIVISION OF EMERGENCY MANAGEMENT 2555 SHUMARD OAK BLVD TALLAHASSEE, FL 32399 | | Grant Programs Directorate 500 C Street, S.W. Washington DC, 20528-7000 1-866-927-5646 | FEMA, Financial Services Branch 500 C Street, S.W., Room 723 Washington DC, 20742 |

| 9. Name of Recipient Project Officer Susanne McDaniel | 9a. Phone No. 8505913842 | 10. Name of FEMA Project Coordinator Detention Support Grant Program Grant Program | 10a. Phone No. 1-877-585-3242 |
|---|---|---|---|

| 11. Effective Date of This Action 09/30/2025 | 12. Method of Payment OTHER - FEMA GO | 13. Assistance Arrangement COST REIMBURSEMENT | 14. Performance Period 06/01/2025 to 07/31/2027 **Budget Period** 06/01/2025 to 07/31/2027 |
|---|---|---|---|

**15. Description of Action a. (Indicate funding data for awards or financial changes)**

| Program Name Abbreviation | Assistance Listing No. | Accounting Data (ACCS Code) | Prior Total Award | Amount Awarded This Action + or (-) | Current Total Award | Cumulative Non-Federal Commitment |
|---|---|---|---|---|---|---|
| DSGP | 97.158 | 2025-FA-PA12 - P410-xxxx-4101-D | $0.00 | $608,400,000.00 | $608,400,000.00 | See Totals |
| | | Totals | $0.00 | $608,400,000.00 | $608,400,000.00 | $0.00 |

**b. To describe changes other than funding data or financial changes, attach schedule and check here:**
N/A

~~16.FOR NON-DISASTER PROGRAMS: RECIPIENT IS REQUIRED TO SIGN AND RETURN THREE (3) COPIES OF THIS DOCUMENT TO FEMA (See Block 7 for address)~~
This field is not applicable for digitally signed grant agreements

| 17. RECIPIENT SIGNATORY OFFICIAL (Name and Title) | DATE |
|---|---|
| 18. FEMA SIGNATORY OFFICIAL (Name and Title) Stacey Street, Deputy Assistant Administrator Grant Programs Directorate | DATE 09/30/2025 |