No. 25-12873

———————————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

———————————————

FRIENDS OF THE EVERGLADES and CENTER FOR BIOLOGICAL
DIVERSITY,
*Plaintiffs/Appellees*,

v.

KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,
*Defendants/Appellants*.

———————————————

Appeal from the United States District Court for the Southern District of Florida
No. 1:25-cv-22896 (Hon. Kathleen M. Williams)

———————————————

**RESPONSE OF FEDERAL APPELLANTS TO APPELLEES' MOTION FOR
LEAVE TO SUPPLEMENT THE RECORD ON APPEAL AND COUNTER-
MOTION FOR LEAVE TO SUPPLEMENT THE RECORD ON APPEAL**

———————————————

Plaintiffs-Appellees' motion for leave to supplement the record on appeal should be denied because the documents are immaterial, post-date the district court's preliminary injunction, or both. Moreover, Plaintiffs mischaracterize the documents, as they do not demonstrate that the federal defendants have taken any final agency action under the Administrative Procedure Act (APA) or a "major Federal action" under the National Environmental Policy Act (NEPA) to fund the South Florida Soft-Sided Facility South ("the facility"). If anything, the documents show that the

1

process is ongoing, with no final decision, and that, contrary to an assumption of the district court, a future decision is not planned to reimburse the State for facility construction or modification.

Plaintiffs ask the Court to supplement the record with three documents: (1) a June 20, 2025, email exchange between James Percival of the Department of Homeland Security and David Dewhirst from Florida (Pls. Exh. 1); (2) an email dated August 7, 2025, noting that a grant application for financial assistance under the Detention Support Grant Program (DSGP) has been submitted (Pls. Exh. 2); and (3) a September 30, 2025, letter from the Federal Emergency Management Agency (FEMA) approving the Florida Division of Emergency Management (FDEM)'s eligibility for financial assistance under the DSGP (Pls. Exh. 3).

As explained below, these documents are immaterial to the issues before this Court. They accordingly should not be included in the record on appeal.

If the Court supplements the record on appeal with these extra-record documents (which it should not), the federal defendants, alternatively, move to supplement the record with additional documents providing context and background for the extra-record documents that Plaintiffs seek leave to put before the Court.

## I.    The extra-record documents are immaterial to the issues.

This Court "rarely supplement[s] the record to include material that was not before the district court," *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 n.4 (11th Cir. 2003), and it should not do so here. A primary factor in deciding a motion to supplement is "whether acceptance of the proffered material into the record would establish beyond any doubt the proper resolution of the pending issues." *CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1330 (11th Cir. 2000). The extra-record documents that Plaintiffs seek to introduce were not introduced below for good reasons—they are immaterial to the issues, post-date the district court's order, or both. Correspondently, they do not "establish beyond any doubt the proper resolution of the pending issues." *Id.* Likewise, because the documents are immaterial, they do not implicate the duty of candor.

The two foremost issues before the court of appeals are whether Plaintiffs challenge (1) "final agency action" under the APA, (2) or "major Federal action" under NEPA. These documents do not assist in the resolution of either issue, let alone provide certainty as to the proper resolution of *any* issue on appeal.

*First*, the email exchange between Mr. Percival and Mr. Dewhirst does not provide any new or relevant information. Pls. Exh. 1. The emails note that the Department of Homeland Security has interest in working with Florida under Section 287(g) of the Immigration and Nationality Act and that the parties "will

3

work out a method of partial reimbursement." *Id.* at 2. Because the federal defendants have acknowledged that Florida is operating under 287(g) agreements, the exchange does not add anything new to the record. *See* U.S. Opening Brief at 7 ("State officials are detaining illegal aliens at the facility 'under the authority delegated pursuant to section 287(g) of the Immigration and Nationality Act (INA), at 8 U.S.C. § 1357(g).' App.1494."). And, as the federal defendants have explained, the decisions to enter 287(g) agreements are not major federal actions or reviewable under the APA. *See* U.S. Opening Brief at 28-30.

The federal defendants have also never denied that federal funding is a possibility. *See* U.S. Opening Brief at 26. As the federal defendants repeatedly have explained, the *possibility* of federal funding is insufficient to establish final agency action under the APA or a "major Federal action" under NEPA. *Id.* (citing *United States v. S. Fla. Water Mgmt. Dist.*, 28 F.3d 1563, 1573 (11th Cir. 1994), and *Atlanta Coal. on Transp. Crisis, Inc. v. Atlanta Reg'l Comm'n*, 599 F.2d 1333, 1347 (5th Cir. 1979)). The email exchange thus offers nothing new, and it does not establish the existence of any final agency or major *federal* action.

*Second*, the same is true of the email acknowledging receipt of the state's application for federal funding. Pls. Exh. 2. Again, the federal defendants have never denied that federal funding is a possibility. *See* U.S. Opening Brief at 26. Nor did the federal defendants suggest that the federal government has not received an

4

application from Florida. Plaintiffs' contrary suggestion misleadingly takes one of the federal defendants' arguments in the stay motion out of context. In the context of a hypothetical addressing how the district court's injunction intrudes on agency decision-making and violates *Seven County*, the federal defendants referred to a potential state funding application as one event in a series of prerequisite events necessary before a hypothetical funding proposal would become reviewable. *See* U.S. Motion to Stay, ECF 20 at 12.[1]

Regardless, the submission of a state application is not a material fact—it does not establish that the federal defendants have taken a final agency or major *federal* action. At most, the submission of a *state* application triggers a federal administrative process that may eventually lead to final agency or major federal action. Before finalizing such a process, the federal defendants fully intend to comply with NEPA and all other laws, as the federal defendants previously have represented. *See* U.S. Motion to Stay, ECF 20 at 14. Indeed, as noted in Section II, the federal defendants conducted analyses under NEPA, the Endangered Species

---

[1] Plaintiffs obscure the timeline here to suggest that federal defendants misrepresented the status of the application before the district court or this Court. Florida had not submitted an application when the federal defendants made their district court filings. Florida then submitted the application, and the federal defendants' stay motion and opening brief accordingly did not state that Florida had not filed an application. In any event, the submission of a state application is immaterial for the reasons stated herein.

Act, and other laws before issuing the September 30 letter. And, as noted in Section II, the federal defendants fully intend to comply with NEPA and other laws before taking any final agency or major federal action to approve funding for this facility, which the September 30 letter did not do.

Moreover, if anything, the filing of Florida's application and the ongoing process it triggered supports the federal defendants' arguments. It shows that no final agency or major federal action regarding funding had been made before the district court entered the preliminary injunction—the federal defendants' review process was not complete, so there was no federal action "mark[ing] the 'consummation' of the agency's decisionmaking process." *Bennett v. Spear*, 520 U.S. 154, 178 (1997). It therefore indicates that, if anything, the district court exceeded its jurisdiction and proper role under the APA and NEPA. *See* U.S. Opening Brief at 27 (citing *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1104 (9th Cir. 2007) ("if the claimants sue before the agency has made a final decision to disburse the funds, the [NEPA] suit will be dismissed for lack of subject matter jurisdiction")).

Ultimately, the submission of the *state* application is not a fact material to an issue on appeal warranting admission of this extra-record document.

*Finally*, the September 30 letter from FEMA similarly does not establish the existence of a final agency or major federal action being taken before the district court issued its injunction on August 21. To make the timing work, Plaintiffs use a

sleight of hand, claiming that the September 30 letter refers to a meeting on August 15 where FEMA informed FDEM that its application request exceeded the amount of the proposed grant to be obligated. Pls. Exh. 3 at 6. It is unclear, however, how this sleight of hand assists their cause.

As the September 30 letter indicates, the fact that FDEM's application exceeded the proposed grant amount to be obligated *prevented* FEMA from taking final agency or major federal action. Notably, FEMA informed FDEM that until the state agency provides "a revised budget that includes a burden rate per detainee/night and a detailed cost breakout to justify the rate . . . FDEM is *prohibited* from obligating, expending, or drawing down funds allocated under DSGP." Pl. Exh. 3 at 6 (emphasis added).

Plaintiffs highlight the "funds allocated" language (Mt. 9-10), equating funds being allocated by Congress with final agency or major federal action having been taken by FEMA to grant funds to Florida for this facility. But that view has been soundly rejected. *See* U.S. Opening Brief at 26 (citing *Rattlesnake Coal.*, 509 F.3d at 1103). Even where Congress has earmarked or allocated funds for a specific purpose, there is no final agency action on a NEPA claim until the agency decides to disburse funds. *Id.*

Plaintiffs' position is also inconsistent with the September 30 letter itself. That document is not specific to the facility at issue here or to any facility, Pls. Exh. 3 at

3, and the document clarifies that any final decision to disburse funds is conditioned on, among other factors, ensuring appropriate environmental review. *Id.* at 25 (Art. 28), 29 (Art. 42,) 30 (Art. 48), 32 (Art. 55). Thus, the September 30 letter demonstrates that the federal defendants' decision-making process to reimburse Florida for some portion of the facility's operations is and was fluid and ongoing. Neither that letter nor some implication that Plaintiffs draw from its summary of the August 15 meeting establish that the federal defendants had taken a final agency or major federal action to grant funding before August 21, when the district court entered its preliminary injunction.

In sum, none of the extra-record documents is material, let alone conclusive, to the proper resolution of the issues before this Court. The motion to supplement the record on appeal therefore should be denied.

## II. Alternatively, the Court should further expand the record on appeal with additional documents to provide context and background.

The Court should deny the motion to supplement outright. But if the Court supplements the record on appeal, it should consider additional documents that are incorporated into the terms of the September 30 letter:

- Record of Environmental Consideration (U.S. Exh. 1), which included a National Environmental Policy Act (NEPA) review (U.S. Exh. 1 at 1-2) and an informal consultation under the Endangered Species Act with the U.S. Fish and Wildlife Service for the September 30 letter, *see* FEMA letter to U.S. Fish

8

& Wildlife Service (U.S. Exh. 2) and U.S. Fish & Wildlife Service
Concurrence Letter (U.S. Exh. 3).

- Fiscal Year 2025 Detention Support Grant Program Guidance (U.S. Exh. 4).

These documents further prove that, even as of September 30 (and certainly
not by August 21), the federal defendants had not made a final decision to reimburse
costs for this or any other facility. As these documents clarify, the September 30
letter is a programmatic document that is not specific to any facility. *See* U.S. Exh.
1 at 1 ("Program eligible activities under this award are not limited or specific, to
any particular location or facility within the State of Florida, including the temporary
soft-sided facility in Collier County know as 'Alligator Alcatraz.'"); *see also* U.S.
Exh. 2; U.S. Exh, 3 at 1. Moreover, for any facility that eventually may request
funds, the "award of funds comes with strict financial holds that prevent the recipient
from obligating, expending, or drawing down funds under the award without further
FEMA approval." U.S. Exh. 1 at 1. Any funds are on "hold" pending FEMA review
of additional application information and environmental compliance. *Id.*; U.S. Exh.
3 (referring to the state's application as "incomplete"). Ultimately, "FEMA may,
upon further review, disallow requested costs." U.S. Exh. 1 at 1. Thus, as these
documents show, several more steps are necessary before the federal defendants take
any final agency or major federal action to grant funding for this or any other facility.

Furthermore, these documents show that many assumptions underlying the district court's analysis were faulty, as those assumptions were untimely formed before any federal action was proposed. For instance, the district court focused heavily on construction when granting the preliminary injunction. Appx.1404-10, 1414, 1426-29, 1435. But the Program Guidance Document makes clear that "[i]n the event that the recipient applies for the grant to request reimbursement for costs for modifications at the South Florida Soft Sided Facility, commonly referred to as 'Alligator Alcatraz,' then those costs will not be reimbursed." U.S. Exh. 4 at 7, 10; *see also id*. at 9 ("Grant funds may NOT be used for the following purposes . . . Costs for constructing new, permanent buildings or temporary facilities."). The absence of reimbursement for construction at the facility dramatically impacts the scope of any NEPA analysis. *See* U.S. Opening Brief at 32-33 (citing *Protect Our Parks, Inc. v. Buttigieg*, 39 F.4th 389, 399-400 (7th Cir. 2022)). These documents thus put teeth into the federal defendants' arguments that the district court hijacked the scope and timing of the NEPA analysis, contrary to the Supreme Court's admonition in *Seven County*. *See* U.S. Opening Brief at 2, 30-33.

While the federal defendants consider these documents, along with those Plaintiffs seek to introduce on appeal for the first time, to be irrelevant to this preliminary injunction appeal because they are preliminary, not specific to the detention facility at issue, and/or were issued after the district court's order, the

10

documents support the federal defendants' position that the process is ongoing and there is no final agency action or major federal action before the Court. If the Court grants Plaintiffs' motion to supplement the record (which it should not), it should include these additional documents as necessary context.

## CONCLUSION

For the foregoing reasons, the motion to supplement the record on appeal should be denied. Alternatively, if this Court grants the motion, it should also supplement the record with the documents submitted by the federal defendants in this response and counter motion to provide context and background.

Respectfully submitted,

/s/ *Allen M. Brabender*
ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

ROBERT STANDER
*Deputy Assistant Attorney General*

MARISSA A. PIROPATO
HAYLEY A. CARPENTER
ALLEN M. BRABENDER
*Attorneys*
U.S. Department of Justice
Environment and Natural Resources Division
Post Office Box 7415
Washington, D.C. 20044
(202) 532-3281
allen.brabender@usdoj.gov

January 20, 2026
DJ # 90-1-4-17960

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing notice complies with the type-volume limitation provided by Fed. R. App. P. 27(d). This notice contains 2,373 words, as recorded by the word count of the Microsoft Word word processing system used to prepare the brief.

Exhibit 1

# Record of Environmental Consideration

See FEMA Directive 108-1 and FEMA Instruction 108-1-1.

**Project Name/Number:** Award of Detention Support Grant Program Funds to the State of Florida

**Project Location:** Statewide

**Project Description:**

The Detention Support Grant Program (DSGP) will provide financial assistance through a U.S. Department of Homeland Security (DHS)/Federal Emergency Management Agency (FEMA, or the Agency) grant to a non-federal entity to support detaining illegal aliens in a detention environment and related activities until transfer to U.S. Immigration and Customs Enforcement (ICE), in support of relieving overcrowding in short-term holding facilities of the U.S. Customs and Border Protection (CBP). This grant is administered by FEMA's Grant Programs Directorate (GPD). FEMA through the DGSP will be providing funds to the State of Florida and eligible subapplicants to undertake or be reimbursed for program eligible activities. Program eligible activities under this award are not limited or specific, to any particular location or facility within the State of Florida, including the temporary soft-sided holding facility in Collier County known as "Alligator Alcatraz."

The scope of this project is the initial award and obligation of funds from FEMA to the State of Florida. This award of funds comes with strict financial holds that prevent the recipient from obligating, expending, or drawing down funds under the award without further FEMA approval. This award process refers to a practice where FEMA awards a grant and obligates federal grant funds to the grantee, but puts a "hold" on use of those funds pending FEMA review of additional application information and/or for environmental planning and historic preservation (EHP) compliance (including compliance with NEPA and Section 7 of the Endangered Species Act). The financial hold requires the applicant/subapplicant recipient to submit its final application(s) and scope of work to FEMA for review, including required EHP review. When GPD applies such a hold, the condition states that the recipient is prohibited from obligating, expending, or drawing down funds under the award until FEMA completes its final review. FEMA may, upon this future review, disallow requested costs.

# National Environmental Policy Act (NEPA) Determination

- [ ] Statutorily excluded from NEPA review. **(Review Concluded)**
- [x] Categorical Exclusion -   **N1**   [x] No Extraordinary Circumstances exist.
    - Are project conditions required?   [ ] YES (see section V)   [x] NO   **(Review Concluded)**
    - [ ] Extraordinary Circumstances exist (See Section IV).
        - [ ] Extraordinary Circumstances mitigated. (See Section IV comments)
        - Are project conditions required?   [ ] YES (see section V) [x] NO   **(Review Concluded)**
    - [ ] Environmental Assessment required. See FONSI for determination, conditions and approval.
- [ ] Environmental Assessment required. See FONSI for determination, conditions and approval.

---

*Comments:*
**N1 Administrative Actions Associated with Grants Management.** This categorical exclusion (CE) applies to <u>actions related to grant administration performed at</u> any stage during the grants lifecycle, such as the development and issuance of grant guidance; announcements of availability of funds; project reviews for program eligibility; provision of technical assistance; conducting inspections, financial audits, and monitoring activities; development of information technology systems for grants management; grant close-out activities; and actions taken in situations where a grantee or subgrantee is

**Disaster/Emergency/Program/Project Title:** Award of Detention Support Grant Program Funds to the State of Florida
**Grantee/Recipient:** State of Florida Division of Emergency Management

USCA11 Case: 25-12873    Document: 104    Date Filed: 01/20/2026    Page: 15 of 58

in non-conformance with grant program requirements, such as disallowances, recoupment of funds, and debarment. The grant administration functions undertaken by the Agency thus are covered by this CE.

This action is only the administrative obligation of programmatic Detention Support Grant Program funds. FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have potential to impact EHP resources.

## Reviewer and Approvals

FEMA Environmental Reviewer
Name:  Portia Ross


Signature/Date_____        _____


FEMA Historic Preservation Reviewer
Name:  Portia Ross


Signature/Date_____        _____

FEMA Environmental Officer Reviewer or delegated approving official
Name: Portia Ross


Signature/Date_____        _


# I.    Compliance Review for Environmental Laws (other than NEPA)


## A. National Historic Preservation Act
☒ Not type of activity with potential to affect historic properties. **(Review Concluded)**
☐ Applicable executed Programmatic Agreement. Activity meets Programmatic Allowance (enter date and # in comments). . .
      ☐ Activity meets Programmatic Allowance # _____
      Are project conditions required?  ☐ YES (see section V)  ☐ NO **(Review Concluded)**
☐ Applicable executed Programmatic Agreement (enter date in comments) **(Review Concluded)**
☐ Standard Section 106 Review

      **HISTORIC BUILDINGS AND STRUCTURES**
☐ No properties in the project area are 50 years or older or listed on the National Register **(Review Concluded)**
☐ Building or structure 50 years or older or listed on the National Register in the project area and activity not exempt from review.
      ☐ Determination of No Historic Properties Affected  (FEMA finding/SHPO/THPO concurrence on file)
      Are project conditions required?      ☐ YES (see section V)  ☐ NO  **(Review Concluded)**
      ☐ Determination of Historic Properties Affected (FEMA finding/SHPO/THPO concurrence on file)
            ☐ Property a National Historic Landmark and National Park Service was provided early notification during the consultation process. If not, explain in comments
            ☐ No Adverse Effect Determination (FEMA finding/SHPO/THPO concurrence on file).
            Are project conditions required?    ☐ YES (see section V)  ☐ NO  **(Review Concluded)**
            ☐ Adverse Effect Determination (FEMA finding/SHPO/THPO concurrence on file)
               ☐ Resolution of Adverse Effect completed. (MOA on file)
               Are project conditions required ☐ YES (see section V)  ☐ NO  **(Review Concluded)**

**Disaster/Emergency/Program/Project Title:** Award of Detention Support Grant Program Funds to the State of Florida
**Grantee/Recipient:** State of Florida Division of Emergency Management

USCATT Case: 25-12873     Document: 104     Date Filed: 01/20/2026     Page: 16 of 58

### ARCHEOLOGICAL RESOURCES

☐ Project affects only previously disturbed ground. **(Review Concluded)**
☐ Project affects undisturbed ground.
    ☐ Project area has no potential for presence of archeological resources.
        ☐ Determination of no historic properties affected (FEMA finding/SHPO/THPO concurrence or consultation on file). **(Review Concluded)**
    ☐ Project area has potential for presence of archeological resources.
        ☐ Determination of no historic properties affected (FEMA finding/SHPO/THPO concurrence on file).
        Are project conditions required? ☐ YES (see section V) ☐ NO **(Review Concluded)**
        ☐ Determination of historic properties affected.
            ☐ NR eligible resources not present (FEMA finding/SHPO/THPO concurrence on file).
            Are project conditions required ☐YES (see section V) ☐ NO **(Review Concluded)**
            ☐ NR eligible resources present in project area. (FEMA finding/SHPO/THPO concurrence on file)
                ☐ No Adverse Effect Determination. (FEMA finding/ SHPO/THPO concurrence on file)
                Are project conditions required? ☐ YES (see section V) ☐ NO **(Review Concluded)**
                ☐ Adverse Effect Determination. (FEMA finding/SHPO/THPO concurrence on file)
                    ☐ Resolution of Adverse Effect completed. (MOA on file)
                    Are project conditions required? ☐ YES (see section V) ☐ NO
                    **(Review Concluded)**

> *Comments:* This action is only the administrative obligation of programmatic Detention Support Grant Program funds. FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have potential to impact EHP resources.

## B. Endangered Species Act

☐ No listed species and/or designated critical habitat present in areas affected directly or indirectly by the federal action. **(Review Concluded)**
☒ Listed species and/or designated critical habitat present in areas affected directly or indirectly by the federal action.
    ☒ No effect to species or designated critical habitat. (See comments for justification) **(Review Concluded)**
    ☐ May affect, but not likely to adversely affect species or designated critical habitat. (FEMA determination/USFWS/NMFS concurrence on file) **(Review Concluded)**
    ☐ Likely to adversely affect species or designated critical habitat.
        ☐ Formal consultation concluded. (Biological Assessment and Biological Opinion on file)
        Are project conditions required? ☐ YES (see section V) ☐ NO **(Review Concluded)**

> *Comments:* FEMA has determined that this award is purely administrative and will result in no effect to ESA-listed species or critical habitats. However, in an abundance of caution, FEMA sought and obtained concurrence from the Fish and Wildlife Service that the action is not likely to adversely affect ESA-listed species or critical habitats. The applicant will not be able to draw down the funds until FEMA reviews and approves the application including FEMA EHP review (and ESA section 7 consultation, as appropriate). In the event a submitted cost does not comply with EHP requirements, FEMA will disallow the cost.
> *Correspondence/Consultation/References:*
> *Conditions:* Project conditions are listed in Section V.

## C. Coastal Barrier Resources Act

☒ Project is not on or connected to a Coastal Barriers Resource System Unit or Otherwise Protected Area. **(Review Concluded)**
☐ Project is on or connected to CBRA Unit or Otherwise Protected Area.
    ☐ Proposed action an exception under Section 3505.a.6? **(Review Concluded)**
    ☐ Proposed action not excepted under Section 3505.a.6.
    Are project conditions required? ☐ YES (see section V) ☐ NO **(Review Concluded)**

> *Comments:* This action is only the administrative obligation of programmatic Detention Support Grant Program funds. FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have potential to impact EHP resources.
> *Correspondence/Consultation/References:*
> *Conditions:*

**Disaster/Emergency/Program/Project Title:** Award of Detention Support Grant Program Funds to the State of Florida
**Grantee/Recipient:** State of Florida Division of Emergency Management
USCA11 Case: 25-12873    Document: 104    Date Filed: 01/20/2026    Page: 17 of 58

## D. Clean Water Act

☒ Project would not affect any water of the U.S. **(Review Concluded)**
☐ Project would affect waters, including wetlands, of the U.S.
    ☐ Project exempted as in kind replacement or other exemption. **(Review Concluded)**
    ☐ Project requires Section 404/401/or Section 9/10 (Rivers and Harbors Act) permit, including qualification
    under Nationwide Permits.
    Are project conditions required? ☐ YES (see section V) ☐ NO **(Review Concluded)**

*Comments:* This action is only the administrative obligation of programmatic Detention Support Grant Program funds.
FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have
potential to impact EHP resources.
*Correspondence/Consultation/References:*
*Conditions:*

## E. Coastal Zone Management Act

☒ Project is not located in a coastal zone area and does not affect a coastal zone area. **(Review concluded)**
☐ Project is located in a coastal zone area and/or affects a coastal zone:
    ☐ State administering agency does not require consistency review. **(Review Concluded)**.
    ☐ State administering agency requires consistency review.
    Are project conditions required? ☐ YES (see section V) ☐ NO **(Review Concluded)**

*Comments:* This action is only the administrative obligation of programmatic Detention Support Grant Program funds.
FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have
potential to impact EHP resources.
*Correspondence/Consultation/References:*
*Conditions:*

## F. Fish and Wildlife Coordination Act

☒ Not applicable for financial assistance. **(Review Concluded)**

*Comments:* This action is only the administrative obligation of programmatic Detention Support Grant Program funds.
FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have
potential to impact EHP resources.
*Correspondence/Consultation/References:*
*Conditions:*

## G. Clean Air Act

☒ Project will not result in permanent air emissions. **(Review Concluded)**
☐ Project is located in an attainment area. **(Review Concluded)**
☐ Project is located in a non-attainment area.
    ☐ Coordination required with applicable state administering agency.
    Are project conditions required? ☐ YES (see section V) ☐ NO **(Review Concluded)**

*Comments:* This action is only the administrative obligation of programmatic Detention Support Grant Program funds.
FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have
potential to impact EHP resources.
*Correspondence/Consultation/References:*
*Conditions:*

## H. Farmlands Protection Policy Act

☒ Project does not affect prime or unique farmland. **(Review Concluded)**
☐ Project causes unnecessary or irreversible conversion of prime or unique farmland.
    ☐ Coordination with Natural Resource Conservation Commission required.
      ☐ Farmland Conversion Impact Rating, Form AD-1006, completed.
    Are project conditions required? ☐ YES (see section V) ☐ NO **(Review Concluded)**

**Disaster/Emergency/Program/Project Title:** Award of Detention Support Grant Program Funds to the State of Florida
**Grantee/Recipient:** State of Florida Division of Emergency Management

USCA11 Case: 25-12873    Document: 104    Date Filed: 01/20/2026    Page: 18 of 58

*Comments:* This action is only the administrative obligation of programmatic Detention Support Grant Program funds. FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have potential to impact EHP resources.
*Correspondence/Consultation/References:*
*Conditions:*

## I. Migratory Bird Treaty Act

☐ Project not located within a flyway zone.  **(Review Concluded)**
☒ Project located within a flyway zone.
    ☒ Project does not have potential to take migratory birds.  **(Review Concluded)**
    ☐ Project has potential to take migratory birds.
        ☐ Contact made with USFWS
        Are project conditions required?  ☐ YES (see section V)  ☐ NO  **(Review Concluded)**

*Comments:* This action is only the administrative obligation of programmatic Detention Support Grant Program funds. FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have potential to impact EHP resources.
*Correspondence/Consultation/References:*
*Conditions:*

## J. Magnuson-Stevens Fishery Conservation and Management Act

☒ Project not located in or near Essential Fish Habitat.  **(Review Concluded)**
☐ Project located in or near Essential Fish Habitat.
    ☐ Project does not adversely affect Essential Fish Habitat.  **(Review Concluded)**
    ☐ Project adversely affects Essential Fish Habitat. (FEMA determination/USFWS/NMFS concurrence on file)
        ☐ NOAA Fisheries provided no recommendation(s).  **(Review Concluded).**
        ☐ NOAA Fisheries provided recommendation(s).
            ☐ Written reply to NOAA Fisheries recommendations completed.
            Are project conditions required?  ☐ YES (see section V)  ☐ NO  **(Review Concluded)**

*Comments:* This action is only the administrative obligation of programmatic Detention Support Grant Program funds. FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have potential to impact EHP resources.
*Correspondence/Consultation/References:*
*Conditions:*

## K. Wild and Scenic Rivers Act

☒ Project is not along and does not affect Wild and Scenic River. - **(Review Concluded)**
☐ Project is along or affects Wild and Scenic River.
    ☐ Project adversely affects WSR as determined by NPS/USFS.  **FEMA cannot fund the action**.
    (NPS/USFS/USFWS/BLM consultation attached.)
    ☐ Project does not adversely affect WSR.  (NPS/USFS/USFWS/BLM consultation attached.)
    Are project conditions required?  ☐ YES (see section V)  ☐ NO  **(Review Concluded)**

*Comments:* This action is only the administrative obligation of programmatic Detention Support Grant Program funds. FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have potential to impact EHP resources.
*Correspondence/Consultation/References:*
*Conditions:*

## L. Other Relevant Laws and Environmental Regulations

Identify relevant law or regulations, resolution and any consultation/references such as EO 13112 Invasive Species, RCRA or State Soil & Water Conservation Laws and include any conditions by law/EO **N/A**

## II. Compliance Review for Executive Orders

5

**Disaster/Emergency/Program/Project Title:** Award of Detention Support Grant Program Funds to the State of Florida
**Grantee/Recipient:** State of Florida Division of Emergency Management

USCA11 Case: 25-12873    Document: 104    Date Filed: 01/20/2026    Page: 19 of 58

# A. E.O. 11988 - Floodplains

☐ Outside Floodplain and No Effect on Floodplains/Flood levels. **(Review Concluded)**
☒ Located in Floodplain or Effects on Floodplains/Flood levels.
    ☒ No adverse effect on floodplain ad not adversely affected by the floodplain. **(Review Concluded)**
    ☐ Beneficial Effect on Floodplain Occupancy/Values. **(Review Concluded)**
    ☐ Possible adverse effects associated with investment in floodplain, occupancy or modification of floodplain environment.
        ☐ 8 Step Process Complete - documentation attached. **(Review Concluded)**

| |
|---|
| *Comments:* This action is only the administrative obligation of programmatic Detention Support Grant Program funds. FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have potential to impact EHP resources. <br> *Correspondence/Consultation/References:* <br> *Conditions:* |

# B. E.O. 11990 - Wetlands

☒ No Effects on Wetlands and Project Outside Wetlands. **(Review Concluded)**
☐ Located in Wetlands or effects on Wetlands.
    ☐ Beneficial Effect on Wetland. **(Review Concluded)**
    ☐ Possible adverse effect associated with constructing in or near wetland.
        ☐ Review completed as part of floodplain review.
        ☐ 8 Step Process Complete – documentation attached. **(Review Concluded)**

| |
|---|
| *Comments:* This action is only the administrative obligation of programmatic Detention Support Grant Program funds. FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have potential to impact EHP resources. <br> *Correspondence/Consultation/References:* <br> *Conditions:* |

# III. Other Environmental Issues

**Identify other potential environmental concerns in the comment box not clearly falling under a law or executive order (see environmental concerns scoping checklist for guidance).**

| |
|---|
| *Comments:* **N/A** <br> *Correspondence/Consultation/References:* <br> *Conditions:* |

# IV. Extraordinary Circumstances

**Based on the review of compliance with other environmental laws and Executive Orders, and in consideration of other environmental factors, review the project for extraordinary circumstances.**

* A "Yes" under any circumstance may require an Environmental Assessment (EA) with the exception of (ii) which should be applied in conjunction with controversy on an environmental issue. If the circumstance can be mitigated, please explain in comments. If no, leave blank.

☐    (i) A potentially significant effect on public health or safety;
☐    (ii) A potentially significant effect on species or habitats protected by the ESA, Marine Mammal Protection

6

**Disaster/Emergency/Program/Project Title:** Award of Detention Support Grant Program Funds to the State of Florida
**Grantee/Recipient:** State of Florida Division of Emergency Management
USCA11 Case: 25-12873    Document: 104    Date Filed: 01/20/2026    Page: 20 of 58

Act, Migratory Bird Treaty Act, Magnuson-Stevens Fishery Conservation and Management Act, or other law protecting a species or habitat;

☐ (iii) A potentially significant effect on historic properties (e.g., districts, sites, buildings, structures, or objects) that are listed in or eligible for listing in the National Register of Historic Places, affects traditional cultural properties or sacred sites, or leads to the loss or destruction of a significant scientific, cultural, or historical resource;

☐ (iv) A potentially significant effect on an environmentally sensitive area;

☐ (v) A potential or threatened violation of a Federal, State, or local law or requirement imposed to protect the environment. Some examples of other requirements to consider are: a local noise control ordinance; the requirement to conform to an applicable State Implementation Plan for air quality standards; Federal, Tribal, State, or local requirements to control hazardous or toxic substances; and environmental permits;

☐ (vi) An effect on the quality of the human environment that is likely to be highly controversial in terms of scientific validity, likely to be highly uncertain, or likely to involve unique or unknown environmental risks. This also includes effects that may result from the use of new technology or unproven technology. Controversy over, including public opposition to, a proposed action absent any demonstrable potential for significant environmental impacts does not itself constitute an extraordinary circumstance;

☐ (vii) Extent to which a precedent is established for future actions with significant effects;

☐ (viii) Significantly greater scope or size than normally experienced for this particular category of action;

☐ (ix) Potential for significant degradation of already existing poor environmental conditions. Also, initiation of a potentially significant environmental degrading influence, activity, or effect in areas not already significantly modified from their natural condition;

☐ (x) Whether the action is related to other actions with individually insignificant, but cumulatively significant impacts.

---

*Comments:* Project does not trigger any Extraordinary Circumstances

**Disaster/Emergency/Program/Project Title:** Award of Detention Support Grant Program Funds to the State of Florida
**Grantee/Recipient:** State of Florida Division of Emergency Management

USCATT Case: 25-12873    Document: 104    Date Filed: 01/20/2026    Page: 21 of 58

# V. Environmental Review Project Conditions

General comments:  **N/A**

Project Special Conditions:

**N/A**

Standard Conditions:

1. Any change to the approved scope of work will require re-evaluation for compliance with NEPA and other Laws and Executive Orders.
2. This review does not address all federal, state and local requirements. Acceptance of federal funding requires recipient to comply with all federal, state and local laws. Failure to obtain all appropriate federal, state and local environmental permits and clearances may jeopardize federal funding.
3. If ground disturbing activities occur during construction, applicant will monitor ground disturbance and if any potential archeological resources are discovered, will immediately cease construction in that area and notify the State and FEMA.

Monitoring Requirements:  **None**

Exhibit 2



U.S. Department of Homeland Security
Washington, DC  20472

September 30, 2025

Mr. Larry Williams
State Program Supervisor
Florida Ecological Services Office

Dear Mr. Williams:

## Executive Summary

FEMA is evaluating an application for funding through its Detention Support Grant Program (DSGP). The scope of this project is the initial award and administrative obligation of funds from FEMA to the State of Florida.  This award of funds comes with strict financial holds that prevent the applicant/subapplicant from obligating, expending, or drawing down funds under the award without FEMA approval. The financial hold will allow the applicant/subapplicant to submit their final application and scope of work to FEMA for review to ensure the proposed actions are compliant with program eligibility requirements and ensure the proposed activity undergoes a full environmental planning and historic preservation (EHP) review. The subsequent EHP review(s) will result in project specific EHP compliance determinations as well as applicable consultation and project conditions. Given these considerations, FEMA has determined that this award is purely administrative and will result in no effect to listed species or their habitats. However, in an abundance of caution, FEMA is seeking concurrence that the action is not likely to adversely affect listed species or their habitats.

## Background

The Detention Support Grant Program (DSGP) will provide financial assistance through a U.S. Department of Homeland Security (DHS)/Federal Emergency Management Agency (FEMA) grant to a non-federal entity to support detaining illegal aliens in a detention environment and related activities until transfer to U.S. Immigration and Customs Enforcement (ICE), in support of relieving overcrowding in short-term holding facilities of the U.S. Customs and Border Protection (CBP). This grant is administered by FEMA's Grant Programs Directorate (GPD).

## FEMA Process

FEMA reviews all application information and implements reviews for compliance with applicable laws, such as environmental planning and historic preservation requirements prior to

making the decision to award and obligate grant funds. Once an award is made, funds are immediately available for disbursement to the grantee, in accordance with the terms and conditions of the grant award. For certain grants, including DSGP, FEMA implements the award process with a hold.

This award process refers to a practice where FEMA awards a grant and obligates federal grant funds to the grantee but puts a "hold" on use of those funds pending FEMA review of additional application information and/or for EHP compliance, which includes compliance with section 7 of the Endangered Species Act. When GPD applies a hold for EHP, the condition states that the recipient is prohibited from obligating, expending, or drawing down funds under the award until FEMA completes its final review.

The Grant Programs Directorate (GPD) uses an award process with a hold that conditions disbursement on both FEMA completion of the EHP process and the grantee's provision of further project and budget details for FEMA review.

**Endangered Species Act Requirements**

Section 7 of the Endangered Species Act ("ESA"; 16 U.S.C. § 1536) requires federal agencies to ensure that actions they undertake, authorize, or fund are not likely to jeopardize threatened or endangered species (i.e., listed species) or adversely modify designated critical habitat for listed species. If the proposed action may affect any listed species or critical habitat, then the agency must begin a formal consultation, unless the agency determines, with written concurrence of the Service, that the action is not likely to adversely affect listed species or critical habitat. *See* 50 C.F.R. § 402.14. If the agency determines that the proposed action will not affect any listed species or critical habitat, no further action is needed. Effects of the action are all consequences to listed species or critical habitat that are caused by the proposed action, including the consequences of other activities that are caused by the proposed action. A consequence is caused by the proposed action if it would not occur but for the proposed action and it is reasonably certain to occur.

**Proposed Action**

Per the grant process outlined above, FEMA intends to award DSGP funds to the State of Florida with a full hold in place. The applicant will not be able to draw down the funds until further review is completed, including FEMA EHP review (and ESA section 7 consultation, as appropriate). In the event a submitted cost does not comply with EHP requirements, FEMA will disallow the cost. Further, FEMA maintains discretion to rescind the award if the grant conditions are not met. The action at issue here, awarding the funds, is purely administrative.

As described in detail in the attachments, FEMA has determined that our decision to award the funds to the State of Florida, including placing a hold on the disbursement of funds until after EHP review has concluded, will result in no effect to the listed species or their critical habitat.

When FEMA receives the final application and begins its EHP review of the application, FEMA will ensure compliance with all environmental laws and regulations. This includes consulting with the U.S. Fish and Wildlife Service (USFWS) pursuant to section 7 of the ESA, as appropriate.

**<u>Concurrence</u>**

As stated above, out of an abundance of caution, FEMA is seeking USFWS' concurrence that the proposed action is not likely to adversely affect any ESA-listed species or critical habitat.

Sincerely,

PORTIA M ROSS
Digitally signed by PORTIA M ROSS
Date: 2025.09.30 17:25:55 -04'00'

Portia M. Ross
FEMA Environmental Officer
Office of Environmental Planning and
Historic Preservation

Exhibit 3




# United States Department of the Interior

### FISH AND WILDLIFE SERVICE
### Florida Ecological Services Field Office

September 30, 2025

Ms. Portia M. Ross
FEMA Environmental Officer
Office of Environmental Planning and Historic Preservation
U.S. Department of Homeland Security
Washington DC 20472

Service Consultation Code:  2025-0157096
Date Received:  September 26, 2025
Project:  DSGP
Applicant:  State of Florida

Dear Ms. Ross:


The U.S. Fish and Wildlife Service (Service) has reviewed the Federal Emergency Management Agency's (FEMA) request to initiate informal consultation dated September 30, 2025, regarding FEMA's consideration of an application for funding through the Detention Support Grant Program (DSGP). More specifically, the proposed action is FEMA's discrete action of the initial award and administrative obligation of funds from FEMA to the State of Florida under the DSGP. FEMA determined the proposed action is purely administrative and will result in no effect to any Endangered Species Act (ESA)-listed species or critical habitats. However, out of an abundance of caution, FEMA is also requesting concurrence from the Service that the proposed action is not likely to affect ESA-listed species or their critical habitats. For the reasons noted below, the Service concurs that the action is not likely to adversely affect any ESA-listed species or designated critical habitats, as described in the ESA's implementing regulations at 50 C.F.R. § 402.

In determining whether the action "may affect" ESA-listed species or designated critical habitats, our analysis focuses on the general environmental changes to the landscape, if any, that would occur from the proposed action. Using the two-part causation test for determining "effects of the action," (*see* 50 CFR 402.02) we first evaluate, as a preliminary matter, whether information provided by FEMA indicates that general environmental changes would not occur but for the proposed action, and these changes are reasonably certain to occur.

At the time of this consultation, FEMA does not have a complete application from the State of Florida. It is awaiting a revised application, which will include specifics (such as the nature, duration and location of the activities to be funded by the DGSP grant) on how the awarded funds would be used, should FEMA elect to disburse them. Importantly, the proposed action only includes the initial award and administrative obligation of funds from FEMA to the State of Florida. No funds will be distributed until FEMA receives a revised application and completes appropriate environmental compliance, including that required under section 7 of the ESA.

7915 BAYMEADOWS WAY, #200
JACKSONVILLE, FL 32256
(352) 448-9151

1601 BALBOA AVENUE
PANAMA CITY, FL 32405
(352) 448-9151

777 37TH ST SUITE D-101
VERO BEACH, FL 32960
(352) 448-9151

Further, since the proposed action only includes the initial award and administrative obligation of funds from FEMA to the State of Florida (but not disbursement of funds), the proposed action would not result in any general environmental changes on the landscape that meet the two-part causation test (i.e., the "but/for" and "reasonably certain to occur" standards) for determining "effects of the action." As such, no effects have been identified and, by extension, the proposed action is not likely to adversely affect any ESA-listed species or critical habitats. Again, we understand that once FEMA has a complete application from the State of Florida that provides the necessary details of the request for funding, FEMA's decision to disburse funds will be subject to ESA compliance before that funding is disbursed. Further, FEMA maintains discretion to rescind the award if the grant conditions are not met. For these reasons, we concur that FEMA's action is not likely to adversely affect any ESA-listed species or their critical habitats. We appreciate the coordination at this early stage.

This letter fulfills the requirements of section 7 of the Act. Pursuant to 50 CFR 402.16(a), reinitiation of consultation is required and shall be requested by the Federal agency, where discretionary Federal involvement or control over the action has been retained or is authorized by law and:
   (1) If the amount or extent of taking specified in the incidental take statement is exceeded;
   (2) If new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered;
   (3) If the identified action is subsequently modified in a manner that causes an effect to the listed species or critical habitat that was not considered in the biological opinion or written concurrence; or
   (4) If a new species is listed or critical habitat designated that may be affected by the identified action.

Thank you for your cooperation in the effort to protect fish and wildlife resources. If you have any questions regarding this project, please contact me at Jose_Rivera@fws.gov.


Sincerely yours,



Jose Rivera
Manager, Division of Environmental Review
Florida Ecological Services Office



cc: electronic only

2

Exhibit 4



U.S. Department of Homeland Security
Washington, DC  20472

# The Department of Homeland Security

# Fiscal Year 2025 Detention Support Grant Program Guidance

**Assistance Listing Number**: 97.158

# Contents

Program Summary ........................................................................................................... 4
A.    Summary Description of Program ............................................................................ 4
B.    Goals and Objectives ............................................................................................... 4
C.    Program Rationale .................................................................................................... 4
D.    Period of Performance ............................................................................................. 4
E.    Budget ....................................................................................................................... 5
F.    FY 2025 Detention Support Grant Program Specific Terms and Conditions ........ 5
Appendix A: Required Services and Other Allowable Activities ................................. 6
A.    Required Detention and Related Services ................................................................ 6
B.    Allowable Costs ....................................................................................................... 7
C.    Addition of Required Services ................................................................................. 7
Appendix B – FY 2025 Detention Support Grant (DSGP) Guidance ........................... 9
A.    Performance Measures and Targets ......................................................................... 9
B.    Program-Specific Unallowable Costs ...................................................................... 9
C.    General Funding Requirements ............................................................................. 10
D.    Cost Sharing ........................................................................................................... 10
E.    Pre-Award Costs ..................................................................................................... 10
F.    Beneficiaries and Participants ............................................................................... 11
G.    Budget Period ......................................................................................................... 11
H.    Prohibition on Covered Equipment or Services .................................................... 11
I.    Required Documentation ....................................................................................... 11
J.    Program-Specific Required Documents and Information ...................................... 11
Agreement Articles ....................................................................................................... 12
A.    Agency Contact ...................................................................................................... 12
B.    Requirement Description and State Single Point of Contact ................................. 12
C.    Financial Integrity Criteria .................................................................................... 13
D.    Supplemental Financial Integrity Criteria and Review ........................................ 13
E.    Notice of Award ..................................................................................................... 13
F.    Pass-Through Requirements ................................................................................... 14
G.    Note Regarding Pre-Award Costs ......................................................................... 14
H.    Obligation of Funds ............................................................................................... 14
I.    Notification to Unsuccessful Applicants ............................................................... 14
J.    Administrative and National Policy Requirements ............................................... 14
K.    DHS Standard Terms and Conditions ................................................................... 15
L.    Financial Reporting Requirements ........................................................................ 15
M.   Programmatic Performance Reporting Requirements ........................................... 15
N.    Closeout Reporting Requirements ......................................................................... 16
O.    Disclosing Information per 2 C.F.R. § 180.335 .................................................... 17
P.    Reporting of Matters Related to Recipient Integrity and Performance ................. 17
Q.    Single Audit Report ............................................................................................... 18
R.    Monitoring and Oversight ...................................................................................... 18
S.    Program Evaluation ................................................................................................ 18
T.    Termination ............................................................................................................ 19
U.    Best Practices ......................................................................................................... 21
V.    Payment Information .............................................................................................. 21

W.  Period of Performance Extension ........................................................... 23
X.  Other Information .................................................................................. 24
    Procurement Integrity ...................................................................... 24
    Important ......................................................................................... 25

**Program Summary**

**A.  Summary Description of Program**

The Detention Support Grant Program (DSGP) will provide financial assistance through a U.S. Department of Homeland Security (DHS)/Federal Emergency Management Agency (FEMA) grant to a non-federal entity to support detaining illegal aliens in a detention environment and related activities until transfer to U.S. Immigration and Customs Enforcement (ICE), in support of relieving overcrowding in short-term holding facilities of the U.S. Customs and Border Protection (CBP).

**B.  Goals and Objectives**

The program goal is to support detention activities carried out by non-federal entities pursuant to an Immigration and Nationality Act Section 287(g) agreement and increase the detention capacity of states and local governments. The program will further the Department of Homeland Security's immigration enforcement plans and complement ICE's operational priorities.

The objectives are:
1.  Relieve the overcrowding in short-term holding facilities of CBP.
2.  Increase the number of detained illegal aliens.
3.  Decrease the expense and burden borne by non-federal entities in detaining illegal aliens.

**C.  Program Rationale**

DSGP, announced in July 2025, supports Executive Order 14165, "Securing Our Borders," issued on January 20, 2025, which outlines the policy framework for redirecting resources toward immigration enforcement priorities. It is essential that state and local law enforcement agencies are partners in safeguarding national security and public safety. Under Executive Order 14159 "Protecting the American People Against Invasion," the United States prioritizes enforcing immigration laws against all inadmissible and removable aliens—particularly those posing threats to safety or security of the American people. This includes the efficient execution of these laws through lawful incentives and enhanced detention capabilities at the State and local levels.

Aligned with these Executive Orders and the January 20, 2025 proclamation "Declaring a National Emergency at the Southern Border" the DSGP supports border security measures by alleviating strained resources in the immigration system through the funding of existing detention facilitates. At the direction of DHS, FEMA and ICE redesigned the Shelter and Services Program (SSP) into DSGP to provide federal financial assistance through grants for sheltering illegal aliens in a detention environment until transfer to ICE, alleviating overcrowding in CBP short-term holding facilities. This initiative supports DHS's immigration enforcement plans and complements ICE operational priorities.

**D.  Period of Performance**

The period of performance for a grant award is June 1, 2025, through July 31, 2027.

**E. <u>Budget</u>**

The budget for the federal award is as follows:

1. Required Detention and Related Services – The recipient may charge required detention and related services to the federal award at the burdened rate detailed in **Appendix A**.
2. Repairs and Modifications. The recipient may charge facility repair and modification costs as described in **Appendix A**.
3. Additional Costs – Additional allowable costs are only allowed in extraordinary circumstances and under the conditions detailed in **Appendix A**.

**F. <u>FY 2025 Detention Support Grant Program Specific Terms and Conditions</u>**

The federal award will be subject to the terms and conditions outlined in Appendix B - FY 2025 Detention Support Grant Program Guidance, which is incorporated herein by reference. These terms provide detailed requirements and guidance applicable to this specific grant program.

**Appendix A: Required Services and Other Allowable Activities**

**A.  Required Detention and Related Services**

All detention operations requiring federal immigration law enforcement authority must be carried out by a non-federal entity pursuant to an Immigration and Nationality Act Section 287(g) agreement with the U.S. Immigration and Customs Enforcement (ICE). Such detention operations may be conducted by state agencies other than the recipient conducting work under the award and subrecipients under subawards. The recipient will provide the following services in a manner consistent with a 287(g) agreement:

1. Secure Housing. Provide secure housing for detainees in a facility owned or operated by the recipient (Facility).

2. Clothing and Bedding. Provide clean clothing, bedding and personal hygiene items to detainees.

3. Feeding Services. Provide three balanced meals per day for detainees.

4. Medical Care. Provide necessary medical, mental health, and dental care to detainees, including access to examinations, treatments, and medications.

5. Safety and Security. Maintain a secure and orderly environment for both detainees and staff, to include the following:

   i.   Monitoring and securing the facility 24/7;

   ii.  Managing and monitoring access points;

   iii. Developing and implementing an incident response plan; and

   iv.  Conducting routine patrols.

6. Visitation. Allow detainees to receive visits at the facility.

7. Access to Legal Services. Ensure detainees have access to legal services at the facility, including communicating with and receiving visits from legal representatives.

8. Communications. Provide detainees with access to communication methods, such as telephones and mail services.

9. Transportation. Securely transport detainees as required, including transporting detainees to and from the recipient's facility to a DHS detention facility, hearings, points of departure from the United States, and other locations.

10. Recordkeeping. Maintain accurate records concerning the performance of work under the federal award, including the following:
    i.   Detailed records of all detainees, including personal information and dates of detention.

     ii.  Detailed records about significant incidents involving detainees, such as use of force and medical emergencies.

## B. **Allowable Costs**
  1.  <u>Burdened Rate</u>

     i.  The recipient may charge to the federal award the agreed upon burdened rate of <mark>$XXX</mark> per detainee per day.

     ii.  The "burdened rate" includes all direct and indirect costs associated with the provision of all services in paragraph A of this Appendix. This includes, but is not limited to, labor costs, overhead, administrative expenses, materials, supplies, contractual services, and any other costs necessary to carry out the required services.

     iii.  FEMA, in its sole discretion, may adjust the burdened rate upon request of the recipient. Such changes will be considered as within the scope of the federal award.

  2.  <u>Repairs and Modifications</u>

     a.  The recipient may charge reasonable costs for necessary repairs and modifications to existing facilities that enable the purpose of the grant, not to exceed 10% of the total award.

     b.  In the event that the recipient applies for the grant to request reimbursement for costs for modifications at the South Florida Soft Sided Facility, commonly referred to as "Alligator Alcatraz," then those costs will not be reimbursed.

  3.  <u>Additional Costs</u>

     i.  The recipient, in extraordinary circumstances, may submit a written request for approval of additional categories of allowable costs to FEMA in addition to the burdened rate above that details the nature and amount of the costs and the justification for paying such costs in addition to the burdened rate. This could include, for example, extraordinary transportation costs or extraordinary training costs. Such changes will be considered as within the scope of the federal award.

     ii.  The amount of the federal award will not increase if FEMA adds additional categories of allowable costs.

## C. **Addition of Required Services**
  1.  <u>Future Service Requirements</u>. FEMA may add additional required services beyond those detailed in paragraph A as necessary to address evolving needs and circumstances. Such changes will be considered as within the scope of the federal award.

  2.  <u>Increasing Burdened Rate</u>. FEMA, in adding future service requirements, will negotiate with the recipient to determine whether an adjustment to the burdened rate is appropriate.

3. <u>Federal Funding</u>. The amount of the federal award will not increase if FEMA adds required services. The federal funding for DSGP is specially allocated for the performance and budget period from June 1, 2025, through July 31, 2027.

**Appendix B – FY 2025 Detention Support Grant (DSGP) Guidance**

**A.  Performance Measures and Targets**

The recipient is required to collect data to allow FEMA to measure performance of the federal award. To measure performance, FEMA may request information throughout the period of performance. In its final performance report submitted at closeout, the recipient must submit sufficient information to demonstrate it has met the performance goals as stated in its federal award. FEMA will measure the recipient's performance by using the following programmatic metrics.

1. Number of detainees sheltered;

2. Number of detainees transported;

3. Number of detainees provided acute medical care;

4. Number of meals provided to detainees;

5. Number of officials attending approved training necessary for staff to perform detention operations and related activities;

6. Number of additional beds available for operational needs; and

7. Number of employees/contractors carrying out detention operations.

FEMA will calculate and analyze the above metrics through a review of performance progress reports and award monitoring to ensure that the funds are expended for their intended purpose and achieve the stated outcomes in the grant application.

**B.  Program-Specific Unallowable Costs**

This applies to the recipient and subrecipients. Grant funds may NOT be used for the following purposes:

1. Facilities

    a. Shelter and/or space at facilities with existing ICE Intergovernmental Support Agreements (IGSA).

    b. Costs for constructing new, permanent buildings or temporary facilities

2. Transportation

    a. The chartering of aircraft, watercraft or another vehicle not specifically stated in this guidance document.

    b. International transportation of a detainee. Only transportation within the contiguous United States (lower 48 states and Washington, D.C.) is allowable.

    c. Transportation of a detainee from one DHS detention facility to another DHS detention facility's location.

    d. The use of DSGP funds to support foreign travel expenses for the recipient or subrecipient(s) personnel.

    e. Travel and relocation expenses for labor (personal services).

3. Modifications

    a. In the event that the recipient applies for the grant to request reimbursement for costs for modifications at the South Florida Soft Sided Facility, commonly referred to as "Alligator Alcatraz," then those costs will not be reimbursed.

4. Other

    a. The recipient and subrecipients may not use grant funds for the following activities:

        i. Profit/Fee for the recipient and subrecipients.

        ii. Funding for direct reimbursement of proposal development.

        iii. Incentives or gift cards.

        iv. Costs of organized fundraising to raise capital or obtain contributions.

        v. Insurance.

        vi. Contingency Operations.

## C.  **General Funding Requirements**

Costs charged to federal awards (including federal and non-federal cost share funds) must comply with applicable statutes, rules and regulations, policies, Award Summary, and the terms and conditions of the federal award. This includes, among other requirements, that costs must be incurred, and products and services must be delivered within the budget period. 2 C.F.R. § 200.403(h).

The recipient and subrecipients may not use federal funds for the following activities:

1. Matching or cost sharing requirements for other federal grants and cooperative agreements (see 2 C.F.R. § 200.306).

2. Lobbying or other prohibited activities under 18 U.S.C § 1913 or 2 C.F.R. § 200.450.

3. Prosecuting claims against the federal government or any other government entity (see 2 C.F.R. § 200.435).

## D.  **Cost Sharing**

There is no cost share requirement for this award.

## E.  **Pre-Award Costs**

Pre-award costs are costs incurred before the effective date of the federal award. Pre-award costs are allowable if the applicant includes them in the grant application, FEMA approves them when

making the grant award, and the pre-award costs comply with the terms and conditions of the federal award. When requesting pre-award costs in the grant application, the applicant must identify the total amount of pre-award costs requested, explain what the pre-award costs are for, and provide a detailed budget break-out of the pre-award costs.

**F.  Beneficiaries and Participants**

This federal award creates no rights or causes of action for any beneficiary or participant.

**G.  Budget Period**

There will be a single budget period which matches the same start and end dates as the period of performance.

**H.  Prohibition on Covered Equipment or Services**

The recipient, subrecipients, and their contractors or subcontractors must comply with the prohibitions set forth in Section 889 of the John S. McCain National Defense Authorization Act for Fiscal Year 2019, which restrict the purchase of covered telecommunications and surveillance equipment and services. Please see 2 C.F.R. §§ 200.216, 200.327, 200.471, and Appendix II to 2 C.F.R. Part 200, and FEMA Policy #405-143-1 - Prohibitions on Expending FEMA Award Funds for Covered Telecommunications Equipment or Services for more information.

**I.  Required Documentation**

The following forms or information are required to be submitted via FEMA GO. The Standard Forms (SF) are also available at Forms | Grants.gov

1. SF-424, Application for Federal Assistance

2. Grants.gov Lobbying Form, Certification Regarding Lobbying

3. SF-424A, Budget Information (Non-Construction)

   a. For construction under an award, submit SF-424C, Budget information (Construction), in addition to or instead of SF-414A

4. SF-424B, Standard Assurances (Non-Construction)

   a. For construction under an award, submit SF-424D, Standard Assurances (Construction), in addition to or instead of SF-414B

5. SF-LLL, Disclosure of Lobbying Activities

**J.  Program-Specific Required Documents and Information**

Not applicable.

**Agreement Articles**

**Assistance Listing Number**: 97.158 – Detention Support Grant Program

**A.  Agency Contact**
**DSGP Program Office Contact**
FEMA is the programmatic lead for the DSGP. For questions related to project design and other required elements of the program, please contact the DSGP Program Branch at FEMA-DSGP@fema.dhs.gov. Normal hours of operation are Monday through Friday, 9 a.m. - 4:30 p.m. ET.

Guidance documents such as Fact Sheets and Frequently Asked Questions (FAQs) will also be provided to further explain DSGP.

**FEMA Grants News**
This channel provides general information on all FEMA grant programs and maintains a comprehensive database containing key personnel contact information at the federal, state, and local levels. FEMA Grants News Team is reachable at fema-grants-news@fema.dhs.gov OR (800) 368-6498, Monday through Friday, 9 a.m. – 5 p.m. ET.

**Grant Programs Directorate (GPD) Award Administration Division**
GPD's Award Administration Division (AAD) provides support regarding financial matters and budgetary technical assistance. AAD can be contacted at ASK-GMD@fema.dhs.gov.

**Civil Rights**
The FEMA Office of Civil Rights is responsible for ensuring compliance with and enforcement of federal civil rights obligations in connection with programs and services conducted by FEMA. They are reachable at FEMA-CivilRightsOffice@fema.dhs.gov.

**Environmental Planning and Historic Preservation**
The FEMA Office of Environmental Planning and Historic Preservation (OEHP) provides guidance and information about the EHP review process to FEMA programs and recipients and subrecipients. Send any inquiries regarding compliance for FEMA grant projects under the Award Summary to FEMA-OEHP-NOFOQuestions@fema.dhs.gov.

**Payment Information**
FEMA uses the Direct Deposit/Electronic Funds Transfer (DD/EFT) method of payment to recipients. Payment requests are submitted through FEMA GO.

**FEMA GO**
For technical assistance with the FEMA GO system, please contact the FEMA GO Helpdesk at femago@fema.dhs.gov or (877) 585-3242, Monday through Friday, 9 a.m. – 6 p.m. ET.

**B.  Requirement Description and State Single Point of Contact**

An intergovernmental review may be required. Applicants must contact their state's Single Point of Contact (SPOC) to comply with the state's process under Executive Order 12372.

See https://www.archives.gov/federal-register/codification/executive-order/12372.html

## C. __Financial Integrity Criteria__

Before making an award, FEMA is required to review OMB-designated databases for applicants' eligibility and financial integrity information. This is required by the Payment Integrity Information Act of 2019 (Pub. L. No. 116-117, § 2 (2020)), 41 U.S.C. § 2313, and the "Do Not Pay Initiative" (31 U.S.C. 3354). For more details, please see 2 C.F.R. § 200.206.

Thus, the Financial Integrity Criteria may include the following risk-based considerations of the applicant:

1. Financial stability;
2. Quality of management systems and ability to meet management standards;
3. History of performance in managing federal awards;
4. Reports and findings from audits; and
5. Ability to effectively implement statutory, regulatory or other requirements.

## D. __Supplemental Financial Integrity Criteria and Review__

Before making an award expected to exceed the simplified acquisition threshold (currently a total federal share of $250,000) over the period of performance:

1. FEMA is required by 41 U.S.C. § 2313: to review or consider certain information found in SAM.gov. For details, please see 2 C.F.R. § 200.206(a)(2).
2. An applicant may review and comment on any information in the responsibility/qualification records available in SAM.gov.
3. Before making decisions in the risk review required by 2 C.F.R. § 200.206, FEMA will consider any comments by the applicant.

## E. __Notice of Award__

The Authorized Organization Representative (AOR) should carefully read the federal award package before accepting the federal award. The federal award package includes instructions on administering the federal award as well as terms and conditions for the award.

By submitting an application, applicants agree to comply with the prerequisites stated in this document and the material terms and conditions of the federal award, should they receive an award.

FEMA will provide the federal award package to the applicant electronically via FEMA GO. Award packages include an Award Letter, Award Summary, Agreement Articles, Appendix A – Required Services and Other Allowable Activities, Appendix B – FY 2025 Detention Support Grant Program Guidance and Obligating Document. An award package notification email is sent via FEMA GO to the submitting AOR.

The recipient must accept its award no later than 15 days from the award date. The recipient shall notify FEMA of their intent to accept the award and proceed with work via the FEMA GO system.

Funds will remain on hold until the recipient accepts the award via FEMA GO and all other conditions of the award have been satisfied, or until the award is otherwise rescinded. Failure to accept a grant award within the specified timeframe may result in a loss of funds.

**F.  Pass-Through Requirements**
Recipients are not required to pass through funds to eligible subrecipients. However, FEMA supports the pass through of funds to eligible subrecipients.

Subapplicants/subrecipients should not have foreign nationals or noncitizens included. If a subapplicant has foreign nationals, they must be properly vetted and must adhere to all government statues, polices, and procedures including "staff American, stay in America" and security requirements.

Subapplicants/subrecipients must submit short bios and resumes. This should include the type of entity, organizational leadership, and board members along with the both the names and addresses of the individuals. Resumes are subject to approval.

**G.  Note Regarding Pre-Award Costs**
Even if pre-award costs are allowed, beginning performance is at the applicant and/or sub-applicant's own risk.

**H.  Obligation of Funds**
Grant funds are obligated upon the offer of grant award in the FEMA GO system. The recipient must accept its award no later than 15 days from the award date. Accepting the award confirms the obligation. The recipient shall notify FEMA of its intent to accept and proceed with work under the award through the FEMA GO system. Funds will remain on hold until the recipient accepts the award through the FEMA GO system and all other conditions of the award have been satisfied or until the award is otherwise rescinded. Failure to accept a grant award within the specified timeframe may result in a loss of funds. The recipient may request additional time to accept the award if needed.

**I.  Notification to Unsuccessful Applicants**
FEMA and FEMA GO will provide a turndown notification to all applicants who do not receive a FY 2025 DSGP award after September 30, 2025.

**J.  Administrative and National Policy Requirements**
  1. Subrecipient Monitoring and Management

     Pass-through entities must comply with the requirements for subrecipient monitoring and management as set forth in 2 C.F.R. §§ 200.331-333.

**K. DHS Standard Terms and Conditions**

A recipient must comply with the FY 2025 DHS Standard Terms and Conditions, v.3. The DHS Standard Terms and Conditions, v.3 are available DHS Standard Terms and Conditions | Homeland Security. For continuation awards, the terms and conditions for the initial federal award will apply unless otherwise specified in the terms and conditions of the continuation award. The specific version of the DHS Standard Terms and Conditions applicable to the federal award will be in the federal award package.

**L. Financial Reporting Requirements**

Recipients must report obligations and expenditures through a federal financial report. The Federal Financial Report (FFR) form, also known as Standard Form 425 (SF-425), is available online at: SF-425 OMB #4040-0014.

1. Recipients must submit the FFR quarterly throughout the period of performance (POP) as detailed below; including partial calendar quarters, as well as in periods where no grant award activity occurs.

2. The FFR must be submitted through FEMA GO.

| Reporting Period | Report Due Date |
|---|---|
| October 1 – December 31 | January 30 |
| January 1- March 31 | April 30 |
| April 1- June 30 | July 30 |
| July 1-September 30 | October 30 |

FEMA may withhold future federal awards and cash payments if the recipient does not submit timely financial reports, or the financial reports submitted demonstrate lack of progress or provide insufficient detail.

**M. Programmatic Performance Reporting Requirements**

A Performance Report must be submitted quarterly throughout the POP as detailed below, including partial calendar quarters, as well as in periods where no grant award activity occurs, through FEMA GO.

A Performance Report must include:

1. Number of detainees sheltered;

2. Number of detainees transported;

3. Number of detainees provided acute medical care;

4. Number of meals provided to detainees;

5. Number of officials attending approved training necessary for staff to perform detention operations and related activities;

6. Number of additional beds available for operational needs;

7. Number of employees/contractors carrying out detention operations; and

8. Quantitative data for all applicable DSGP performance measures.

The Performance Report must be submitted through FEMA GO.

The following reporting periods and due dates apply for the PPR:

| Reporting Period | Report Due Date |
|---|---|
| October 1 – December 31 | January 30 |
| January 1- March 31 | April 30 |
| April 1- June 30 | July 30 |
| July 1-September 30 | October 30 |

FEMA may withhold future federal awards and payments if the recipient does not submit timely progress reports, or the progress reports submitted demonstrate lack of progress or provide insufficient detail.

## N.  Closeout Reporting Requirements

Within 120 calendar days after the end of the period of performance, or after an amendment has been issued to close out a federal award, the recipient must submit the following:

1. The final request for payment, if applicable.
2. The final FFR (SF-425).
3. The final progress report detailing all accomplishments. The recipient must include with the final progress report an inventory of all construction projects.
4. A qualitative narrative summary of the impact of those accomplishments throughout the period of performance.
5. Other documents required by the award package, terms and conditions of the federal award, or other FEMA component guidance.

After FEMA approves these reports, it will issue a closeout notice. The notice will indicate the period of performance as closed, list any remaining funds to be de-obligated, and address the record maintenance requirement. Unless a longer period applies, such as due to an audit or litigation, for equipment or real property used beyond the period of performance, or due to other circumstances outlined in 2 C.F.R. § 200.334, this maintenance requirement is three years from the date of the final FFR.

Also, pass-through entities are responsible for closing out those subawards as described in 2 C.F.R. § 200.344; subrecipients are still required to submit closeout materials within 90 calendar days of the subaward period of performance end date. When a subrecipient completes all closeout requirements, pass-through entities must promptly complete all closeout actions in time for the recipient to submit all necessary documentation and information to FEMA during the closeout of their prime award. The recipient is responsible for returning any balances of unobligated or unliquidated funds that have been drawn down that are not authorized to be retained per 2 C.F.R. § 200.344(e).

Administrative Closeout

Administrative closeout is a mechanism for FEMA to unilaterally execute closeout of an award. FEMA will use available award information in lieu of final recipient reports, per 2 C.F.R. § 200.344(h)-(i). It is an activity of last resort, and if FEMA administratively closes an award, this may negatively impact a recipient's ability to obtain future funding.

## O.  Disclosing Information per 2 C.F.R. § 180.335
Before entering into a federal award, the applicant must notify FEMA if it knows that the applicant or any of the principals (as defined at 2 C.F.R. § 180.995) for the federal award:
1. Are presently excluded or disqualified;
2. Have been convicted within the preceding three years of any of the offenses listed in § 180.800(a) or had a civil judgment rendered against you for one of those offenses within that time period;
3. Are presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State, or local) with the commission of any of the offenses listed in 2 CFR § 180.800(a); or
4. Have had one or more public transactions (Federal, State, or local) terminated within the preceding three years for cause or default.

This requirement is fully described in 2 C.F.R. §180.335.

Additionally, 2 C.F.R. § 180.350 requires recipients to provide immediate notice to FEMA at any time after entering a federal award if:

1. The recipient learns that either it failed to earlier disclose information as required by 2 C.F.R. § 180.335;
2. Due to changed circumstances, the applicant or any of the principals for the federal award now meet the criteria at 2 C.F.R. § 180.335 listed above.

## P.  Reporting of Matters Related to Recipient Integrity and Performance
Appendix XII to 2 C.F.R. Part 200 states the terms and conditions for recipient integrity and performance matters used for this funding opportunity.

If the total value of all active federal grants, cooperative agreements, and procurement contracts for a recipient exceeds $10,000,000 at any time during the period of performance:

1. The recipient must maintain the currency of information reported in SAM.gov about civil, criminal, or administrative proceedings described in paragraph 2 of Appendix XII;
2. The required reporting frequency is described in paragraph 4 of Appendix XII.

### Q.  Single Audit Report

A recipient expending $1,000,000 or more in federal awards (as defined by 2 C.F.R. § 200.1) during its fiscal year must undergo an audit. This may be either a single audit complying with 2 C.F.R. § 200.514 or a program-specific audit complying with 2 C.F.R. §§ 200.501 and 200.507. Audits must follow 2 C.F.R. Part 200, Subpart F, 2 C.F.R. § 200.501, and the U.S. Government Accountability Office (GAO) Generally Accepted Government Auditing Standards.

### R.  Monitoring and Oversight

Per 2 C.F.R. § 200.337, FEMA and its authorized representatives have the right of access to any records of the recipient or subrecipient pertinent to a federal award to perform audits, site visits, and any other official use. The right also includes timely and reasonable access to the recipient's or subrecipient's personnel for the purpose of interview and discussion related to such documents or the federal award in general.

Pursuant to this right and per 2 C.F.R. § 200.329, FEMA may conduct desk reviews and make site visits to review and evaluate project accomplishments and management control systems as well as provide any required technical assistance. Recipients and subrecipients must respond in a timely and accurate manner to FEMA requests for information relating to a federal award.

Similar monitoring and oversight by relevant FEMA and DHS component offices may occur pursuant to applicable federal civil rights laws.

### S.  Program Evaluation

Title I of the Foundations for Evidence-Based Policymaking Act of 2018, Pub. L. No. 115-435 (2019) (Evidence Act), urges federal agencies to use program evaluation as a critical tool to learn, improve delivery, and elevate program service and delivery across the program lifecycle. Evaluation means "an assessment using systematic data collection and analysis of one or more programs, policies, and organizations intended to assess their effectiveness and efficiency." Evidence Act, § 101 (codified at 5 U.S.C. § 311). OMB A-11, Section 290 (Evaluation and Evidence-Building Activities) further outlines the standards and practices for evaluation activities. Federal agencies are required to specify any requirements for recipient participation in program evaluation activities (2 C.F.R. § 200.301). Program evaluation activities incorporated from the outset in the award package and program design and implementation allow recipients and agencies to meaningfully document and measure progress and achievement towards program goals and objectives, and identify program outcomes and lessons learned, as part of demonstrating recipient performance (2 C.F.R. § 200.301).

As such, recipients and subrecipients are required to participate in a Program Office (PO) or a DHS Component-led evaluation, if selected. This may be carried out by a third-party on behalf of the PO or the DHS Component. Such an evaluation may involve information collections including but not limited to, records of the recipients; surveys, interviews or discussions with individuals who benefit from the federal award, program operating personnel, and award

recipients; and site visits or other observation of recipient activities, as specified in a DHS Component or PO-approved evaluation plan. More details about evaluation requirements may be provided in the federal award, if available at that time, or following the award as evaluation requirements are finalized. Evaluation costs incurred during the period of performance are allowable costs (either as direct or indirect) in accordance with 2 C.F.R. § 200.413.

Recipients and subrecipients are also encouraged, but not required, to participate in any additional evaluations after the period of performance ends, although any costs incurred to participate in such evaluations are not allowable and may not be charged to the federal award.

**T.  Termination**

Paragraph C.XL of the FY 2025 DHS Standard Terms and Conditions, v.3 sets forth a term and condition entitled "Termination of a Federal Award." The termination provision condition listed below applies to the grant award, and the term and condition in Paragraph C.XL of the FY 2025 DHS Standard Terms and Conditions, v.3 does not.

Termination of the Federal Award by FEMA

1. FEMA may terminate the federal award in whole or in part for one of the following reasons identified in 2 C.F.R. § 200.340:
   a. If the recipient or subrecipient fails to comply with the terms and conditions of the federal award.
   b. With the consent of the recipient, in which case FEMA and the recipient must agree upon the termination conditions. These conditions include the effective date and, in the case of partial termination, the portion to be terminated.
   c. If the federal award no longer effectuates the program goals or agency priorities. Under this provision, FEMA may terminate the award for these purposes if any of the following reasons apply:
      i. If FEMA, in its sole discretion, determines that a specific award objective is ineffective at achieving program goals as described in the Award package;
      ii. If FEMA, in its sole discretion, determines that an objective of the award as described in the award package will be ineffective at achieving program goals or agency priorities;
      iii. If FEMA, in its sole discretion, determines that the design of the grant program is flawed relative to program goals or agency priorities;
      iv. If FEMA, in its sole discretion, determines that the grant program is not aligned to either the DHS Strategic Plan, the FEMA Strategic Plan, or successor policies or documents;
      v. If FEMA, in its sole discretion, changes or re-evaluates the goals or priorities of the grant program and determines that the award will be ineffective at achieving the updated program goals or agency priorities; or
      vi. For other reasons based on program goals or agency priorities described in the termination notice provided to the recipient pursuant to 2 C.F.R. § 200.341.

    d.  If the awardee falls out of compliance with the agency's statutory or regulatory authority, award terms and conditions, or other applicable laws.

Termination of a Subaward by the Pass-Through Entity
1. The pass-through entity may terminate a subaward in whole or in part for one of the following reasons identified in 2 C.F.R. § 200.340:
   a. If the subrecipient fails to comply with the terms and conditions of the federal award.
   b. With the consent of the subrecipient, in which case the pass-through entity and the subrecipient must agree upon the termination conditions. These conditions include the effective date and, in the case of partial termination, the portion to be terminated.
   c. If the pass-through entity's award has been terminated, the pass-through recipient will terminate its subawards.

Termination by the Recipient or Subrecipient
1. The recipient or subrecipient may terminate the federal award in whole or in part for the following reason identified in 2 C.F.R. § 200.340: Upon sending FEMA or pass-through entity a written notification of the reasons for such termination, the effective date, and, in the case of partial termination, the portion to be terminated. However, if FEMA or pass-through entity determines that the remaining portion of the federal award will not accomplish the purposes for which the federal award was made, FEMA or pass-through entity may terminate the federal award in its entirety.

Impacts of Termination
1. When FEMA terminates the federal award prior to the end of the period of performance due to the recipient's material failure to comply with the terms and conditions of the federal award, FEMA will report the termination in SAM.gov in the manner described at 2 C.F.R. § 200.340(c).
2. When the federal award is terminated in part or its entirety, FEMA or pass-through entity and recipient or subrecipient remain responsible for compliance with the requirements in 2 C.F.R. §§ 200.344 and 200.345.

Notification Requirements
1. FEMA or the pass-through entity must provide written notice of the termination in a manner consistent with 2 C.F.R. § 200.341. The federal award will be terminated on the date of the notification unless stated otherwise in the notification.

Opportunities to Object and Appeals
1. Where applicable, when FEMA terminates the federal award, the written notification of termination will provide the opportunity and describe the process to object and provide information challenging the action, pursuant to 2 C.F.R. § 200.342.

Effects of Suspension and Termination

1. The allowability of costs to the recipient or subrecipient resulting from financial obligations incurred by the recipient or subrecipient during a suspension or after the termination of a federal award are subject to 2 C.F.R. § 200.343.

## U. Best Practices

While not a requirement in the DHS Standard Terms and Conditions, as a best practice: Entities receiving funds through this program should ensure that cybersecurity is integrated into the design, development, operation and maintenance of investments that impact information technology (IT) and/or operational technology (OT) systems. Additionally, "The recipient and subrecipient must take reasonable cybersecurity and other measures to safeguard information including protected personally identifiable information (PII) and other types of information." 2 C.F.R. § 200.303(e).

## V. Payment Information

Recipients will submit payment requests in FEMA GO for FY25 awards under this program.

**Instructions to Grant Recipients Pursuing Payments**

FEMA reviews all grant payments and obligations to ensure allowability in accordance with 2 C.F.R. § 200.305. These measures ensure funds are disbursed appropriately while continuing to support and prioritize communities who rely on FEMA for assistance. Once a recipient submits a payment request, FEMA will review the request. If FEMA approves a payment, recipients will be notified by FEMA GO and the payment will be delivered pursuant to the recipient's SAM.gov financial information. If FEMA disapproves a payment, FEMA will inform the recipient.

**Processing and Payment Timeline** FEMA must comply with regulations governing payments to grant recipients. See 2 C.F.R. § 200.305. For grant recipients other than States, 2 C.F.R. § 200.305(b)(3) stipulates that FEMA is to make payments on a reimbursement basis within 30 days after receipt of the payment request, unless FEMA reasonably believes the request to be improper. For state recipients, 2 C.F.R. § 200.305(a) instructs that federal grant payments are governed by Treasury-State Cash Management Improvement Act (CMIA) agreements ("Treasury-State agreement") and default procedures codified at 31 C.F.R. part 205 and Treasury Financial Manual (TFM) 4A-2000, "Overall Disbursing Rules for All Federal Agencies." See 2 C.F.R. § 200.305(a).

Treasury-State agreements generally apply to "major federal assistance programs" that are governed by 31 C.F.R. part 205, subpart A and are identified in the Treasury-State agreement. 31 C.F.R. §§ 205.2, 205.6. Where a federal assistance (grant) program is not governed by subpart A, payment and funds transfers from FEMA to the state are subject to 31 C.F.R. part 205, subpart B. Subpart B requires FEMA to "limit a funds transfer to a state to the minimum amounts needed by the state and must time the disbursement to be in accord with the actual, immediate cash requirements of the state in carrying out a federal assistance program or project. The timing and amount of funds transfers must be as close as is administratively feasible to a state's actual cash outlay for direct program costs and the proportionate share of any allowable indirect costs." 31 C.F.R. § 205.33(a). Nearly all FEMA grants are not "major federal assistance programs." As a

result, payments to states for those grants are subject to the "default" rules of 31 C.F.R. part 205, subpart B.

If additional information is needed, a request for information will be issued by FEMA to the recipient; recipients are strongly encouraged to respond to any additional FEMA request for information inquiries within three business days. If an adequate response is not received, the request may be denied, and the entity may need to submit a new reimbursement request; this will re-start the 30-day timeline.

**Submission Process**
All non-disaster grant program reimbursement requests must be reviewed and approved by FEMA prior to drawdowns.

For all non-disaster reimbursement requests (regardless of system), please ensure submittal of the following information:

1. Grant ID / Award Number
2. Total amount requested for drawdown
3. Purpose of drawdown and timeframe covered (must be within the award performance period)
4. Subrecipient Funding Details (if applicable).
- Is funding provided directly or indirectly to a subrecipient?
  - If **no,** include statement "This grant funding is not being directed to a subrecipient."
- If **yes**, provide the following details:
  - The name, mission statement, and purpose of each subrecipient receiving funds, along with the amount allocated and the specific role or activity being reimbursed.
  - Whether the subrecipient's work or mission involves supporting aliens, regardless of whether FEMA funds support such activities.
  - Whether the payment request includes an activity involving support to aliens.
  - Whether the subrecipient has any diversity, equity and inclusion practices.
5. Supporting documentation is required to demonstrate that expenses are allowable, allocable, reasonable and necessary under 2 C.F.R. Part 200 and in compliance with the grant's Award package, award terms, and applicable federal regulations. As a prerequisite of DSGP approval for reimbursement payment requests, the recipient shall have an active SAM.gov registration.


In accordance with U.S. Department of Treasury regulations at 31 C.F.R. Part 205, if applicable, the recipient shall maintain procedures to minimize the time elapsing between the transfer of funds and the disbursement of said funds.

The recipient must use the DSGP Payment Submission form for all payment requests and must submit the following information at time of payment request:

a. If the drawdown request includes money for a subrecipient, specify the subrecipient and allowable activities the funding covers.
b. Provide as part of the DSGP Payment Submission form a list of detainees serviced along with their First and Last Name, Alien Number (A#), Date of Arrival, and Date

of Departure. To calculate the total amount expended per detainee multiply the number of nights by the burdened rate of $XXX. To calculate the total reimbursable amount, multiply the total number of detainees by the total number of nights detainees were serviced by the burdened rate of $XXX.

c. The recipient must ensure that full names and accurate dates of service are provided.

The recipient should keep detailed records of all transactions involving the grant. FEMA may at any time request copies of any relevant documentation and records. See, 2 C.F.R. §§ 200.318(i), 200.334, 200.337.

## W. **Period of Performance Extension**

Extensions to the period of performance (POP) for this program may be permitted only with prior written approval from FEMA. The recipient must request an extension prior to the expiration of the POP. Extensions to the POP identified in the award will only be considered through formal, written requests to the recipient's FEMA Program Analyst or other relevant FEMA position and must contain specific and compelling justifications as to why an extension is required. The recipient is advised to coordinate with the FEMA Program Analyst or other relevant FEMA position as needed when preparing an extension request.

All extension requests must address the following:
1. The grant program, fiscal year, and award number;
2. Reason for the delay –including details of the legal, policy or operational challenges that prevent the final outlay of awarded funds by the deadline;
3. Current status of the activity(ies);
4. Approved POP termination date and new project completion date;
5. Amount of funds drawn down to date;
6. Remaining available funds, both federal and, if applicable, non-federal;
7. Budget outlining how remaining federal and, if applicable, non-federal funds will be expended;
8. Plan for completion, including milestones and timeframes for achieving each milestone and the position or person responsible for implementing the plan for completion; and
9. Certification that the activity(ies) will be completed within the extended POP without any modification to the original statement of work and as approved by FEMA.

Extension requests will be granted only due to compelling legal, policy or operational challenges. Extension requests will only be considered for the following reasons
1. Contractual commitments by the recipient or subrecipient with vendors prevent completion of the project, including delivery of equipment or services, within the existing POP;
2. The project must undergo a complex environmental review that cannot be completed within the existing POP;
3. Projects are long-term by design, and therefore acceleration would compromise core programmatic goals; or
4. Where other special or extenuating circumstances exist.

The recipient should submit all proposed extension requests to FEMA for review and approval at least 120 days prior to the end of the POP to allow sufficient processing time.. Extensions are typically granted for no more than six months.

## X.  <u>Other Information</u>
**Environmental Planning and Historic Preservation (EHP) Compliance**
FEMA is required to consider effects of its actions on the environment and historic properties to ensure that activities, grants and programs funded by FEMA, comply with federal EHP laws, Executive Orders, regulations and policies.

Recipients and subrecipients proposing projects with the potential to impact the environment or cultural resources, such as the modification or renovation of existing buildings, structures and facilities, and/or new construction and/or replacement of buildings, structures and facilities, must participate in the FEMA EHP review process. This includes conducting early engagement to help identify EHP resources, such as threatened or endangered species, historic properties, or communities with environmental concerns; submitting a detailed project description with supporting documentation to determine whether the proposed project has the potential to impact EHP resources; and, identifying mitigation measures and/or alternative courses of action that may lessen impacts to those resources.

FEMA is sometimes required to consult with other regulatory agencies and the public in order to complete the review process. Federal law requires EHP review to be completed before federal funds are released to carry out proposed projects. FEMA may not be able to fund projects that are not in compliance with applicable EHP laws, Executive Orders, regulations, and policies. FEMA may recommend mitigation measures and/or alternative courses of action to lessen impacts to EHP resources and bring the project into EHP compliance.

EHP guidance is found at Environmental Planning and Historic Preservation. The site contains links to documents identifying agency EHP responsibilities and program requirements, such as implementation of the National Environmental Policy Act and other EHP laws, regulations and Executive Orders. DHS and FEMA EHP policy is also found in the EHP Directive & Instruction.

All FEMA actions, including grants, must comply with National Flood Insurance Program (NFIP) criteria or any more restrictive federal, state or local floodplain management standards or building code (44 C.F.R. § 9.11(d)(6)). For actions located within or that may affect a floodplain or wetland, the following alternatives must be considered: a) no action; b) alternative locations; and c) alternative actions, including alternative actions that use natural features or nature-based solutions. Where possible, natural features and nature-based solutions maybe used. If not practicable as an alternative on their own, natural features and nature-based solutions may be incorporated into actions as minimization measures.

The GPD EHP screening form is located at
https://www.fema.gov/sites/default/files/documents/fema_ehp-screening_form_ff-207-fy-21-100_3-31-2026.pdf

**Procurement Integrity**

When purchasing under a FEMA award, recipients and subrecipients must comply with the federal procurement standards in 2 C.F.R. §§ 200.317-200.327. To assist with determining whether an action is a procurement or instead a subaward, please consult 2 C.F.R. § 200.331. For detailed guidance on the federal procurement standards, recipients and subrecipients should refer to various materials issued by FEMA's Procurement Disaster Assistance Team (PDAT), Additional resources, including an upcoming trainings schedule can be found on the PDAT Website: https://www.fema.gov/grants/procurement.

Under 2 C.F.R. § 200.317 when procuring property and services under a federal award, states (including territories) and Indian Tribes must follow the same policies and procedures they use for procurements from their non-federal funds. Additionally, states and Tribal Nations must now follow 2 CFR §200.322, regarding domestic preferences for procurements and 2 CFR§ 200.327 regarding required contract provisions. States, but not Indian Tribal Nations, must also follow 2 C.F.R. § 200.323 regarding procurement of recovered materials.

Local government and nonprofit recipients or subrecipients must have and use their own documented procurement procedures that reflect applicable state, local, tribal and territorial (SLTT) laws and regulations, provided that the procurements conform to applicable federal law and the standards identified in 2 C.F.R. Part 200.

**Important Changes to Procurement Standards in 2 C.F.R. Part 200**
On April 22, 2024, OMB updated various parts of Title 2 of the Code of Federal Regulations, among them the procurement standards. These revisions apply to all FEMA awards with a federal award date or disaster declaration date on or after October 1, 2024, unless specified otherwise. The changes include updates to the federal procurement standards, which govern how FEMA award recipients and subrecipients must purchase under a FEMA award.

More information on OMB's revisions to the federal procurement standards can be found in Purchasing Under a FEMA Award: 2024 OMB Revisions Fact Sheet.

**Competition and Conflicts of Interest**
2 CFR §200.319(b), applicable to local government and nonprofit recipients or subrecipients, requires that contractors that develop or draft specifications, requirements statements of work, or invitations for bids or requests for proposals must be excluded from competing for such procurements. FEMA considers these actions to be an organizational conflict of interest and interprets this restriction as applying to contractors that help a recipient or subrecipient develop its grant application, project plans or project budget. This prohibition also applies to the use of former employees to manage the grant or carry out a contract when those former employees worked on such activities while they were employees of the recipient or subrecipient.

Under this prohibition, unless the recipient or subrecipient solicits for and awards a contract covering both development <u>and</u> execution of specifications (or similar elements as described above), and this contract was procured in compliance with 2 C.F.R. §§ 200.317-200.327, federal funds cannot be used to pay a contractor to carry out the work if that contractor also worked on the development of those specifications. This rule applies to all contracts funded with federal grant funds, including pre-award costs, such as grant writer fees, as well as post- award costs, such as grant management fees.

In addition to organizational conflicts of interest, situations considered to be restrictive of competition include, but are not limited to:

1. Placing unreasonable requirements on firms for them to qualify to do business;
2. Requiring unnecessary experience and excessive bonding;
3. Noncompetitive pricing practices between firms or between affiliated companies;
4. Noncompetitive contracts to consultants that are on retainer contracts;
5. Specifying only a "brand name" product instead of allowing "an equal" product to be offered and describing the performance or other relevant requirements of the procurement; and
6. Any arbitrary action in the procurement process.

Under 2 C.F.R§ 200.318(c)(1) , local government and nonprofit recipients or subrecipients are required to maintain written standards of conduct covering conflicts of interest and governing the actions of their employees engaged in the selection, award and administration of contracts. **No employee, officer or agent may participate in the selection, award or administration of a contract supported by a federal award if he or she has a real or apparent conflict of interest. Such conflicts of interest would arise when the employee, officer or agent, any member of his or her immediate family, his or her partner, or an organization that employs or is about to employ any of the parties indicated herein, has a financial or other interest in or a tangible personal benefit from a firm considered for a contract. The officers, employees and agents of the recipient or subrecipient may neither solicit nor accept gratuities, favors or anything of monetary value from contractors or parties to subcontracts. However, the recipient or subrecipient may set standards for situations in which the financial interest is not substantial, or the gift is an unsolicited item of nominal value. The recipient's or subrecipient's standards of conduct must provide for disciplinary actions to be applied for violations of such standards by officers, employees or agents.**

Under 2 C.F.R. 200.318(c)(2), if the local government and nonprofit recipient or subrecipient has a parent, affiliate or subsidiary organization that is not a SLTT government, the recipient or subrecipient must also maintain written standards of conduct covering organizational conflicts of interest. Organizational conflict of interest means that because of a relationship with a parent company, affiliate, or subsidiary organization, the recipient or subrecipient is unable or appears to be unable to be impartial in conducting a procurement action involving a related organization. The recipient or subrecipient must disclose in writing any potential conflicts of interest to FEMA or the pass-through entity in accordance with applicable FEMA policy.

**Supply Schedules and Purchasing Programs**
Generally, a recipient or subrecipient may seek to procure goods or services from a federal supply schedule, state supply schedule, or group purchasing agreement.

Information about General Services Administration (GSA) programs for states, Tribal Nations, and local governments, and their instrumentalities, can be found at Purchasing Resources and Support for State and Local Governments.pdf

Help for state, local, and tribal governments to make multiple award schedule (MAS) buys | GSA and https://www.gsa.gov/buying-selling/purchasing- programs/gsa-schedules/schedule-buyers/state-and-local-governments.

**Procurement Documentation**

Per 2 C.F.R.§ 200.318(i), local government and nonprofit recipients or subrecipients are required to maintain and retain records sufficient to detail the history of procurement covering at least the rationale for the procurement method, selection of contract type, contractor selection or rejection, and the basis for the contract price. States and Indian Tribes are reminded that in order for any cost to be allowable, it must be adequately documented per 2 CFR §200.403(g).
Examples of the types of documents that would cover this information include but are not limited to:

1. Solicitation documentation, such as requests for quotes, invitations for bids, or requests for proposals;
2. Responses to solicitations, such as quotes, bids or proposals;
3. Pre-solicitation independent cost estimates and post-solicitation cost/price analyses on file for review by federal personnel, if applicable;
4. Contract documents and amendments, including required contract provisions; and
5. Other documents required by federal regulations applicable at the time a grant is awarded to a recipient.

**Financial Assistance Programs for Infrastructure**
**Build America, Buy America Act**

Recipients and subrecipients must comply with FEMA's implementation requirements of the Build America, Buy America Act (BABAA), which was enacted as part of the Infrastructure Investment and Jobs Act §§ 70901-70927, Pub. L. No. 117-58 (2021); and Executive Order 14005, Ensuring the Future is Made in All of America by All of America's Workers. See also 2 C.F.R. Part 184, Buy America Preferences for Infrastructure Projects and Office of Management and Budget (OMB), Memorandum M-24-02, Implementation Guidance on Application of Buy America Preference in Federal Financial Assistance Programs for Infrastructure.

None of the funds provided under this program may be used for a project for infrastructure unless the iron and steel, manufactured products, and construction materials used in that infrastructure are produced in the United States.

The Buy America preference only applies to articles, materials and supplies that are consumed in, incorporated into, or affixed to an infrastructure project. As such, it does not apply to tools, equipment and supplies, such as temporary scaffolding, brought to the construction site and removed at or before the completion of the infrastructure project. Nor does a Buy America preference apply to equipment and furnishings, such as movable chairs, desks, and portable computer equipment, that are used at or within the finished infrastructure project but are not an integral part of the structure or permanently affixed to the infrastructure project.

To see whether a particular FEMA federal financial assistance program is considered an infrastructure program and thus required to implement FEMA's Build America, Buy America

requirements, please see Programs and Definitions: Build America, Buy America Act | FEMA.gov

Waivers

When necessary, recipients (and subrecipients through their pass-through entity) may apply for, and FEMA may grant, a waiver from these requirements.

A waiver of the domestic content procurement preference may be granted by the agency awarding official if FEMA determines that:

1. Applying the domestic content procurement preference would be inconsistent with the public interest; or
2. The types of iron, steel, manufactured products, or construction materials are not produced in the United States in sufficient and reasonably available quantities or of a satisfactory quality; or
3. The inclusion of iron, steel, manufactured products, or construction materials produced in the United States will increase the cost of the overall project by more than 25%.

The process for requesting a waiver from the Buy America preference requirements can be found on FEMA's website at "Buy America" Preference in FEMA Financial Assistance Programs for Infrastructure | FEMA.gov.

Definitions

For definitions of the key terms of the Build America, Buy America Act, please visit Programs and Definitions: Build America, Buy America Act | FEMA.gov.

**Mandatory Disclosures**

The non-federal entity or applicant for a federal award must disclose, in a timely manner, in writing to the federal awarding agency or pass-through entity all violations of federal criminal law involving fraud, bribery or gratuity violations potentially affecting the federal award, 2 C.F.R. § 200.113.

**Adaptive Support**

Pursuant to Section 504, of the Rehabilitation Act of 1973 , recipients of FEMA financial assistance must ensure that their programs and activities do not discriminate against qualified individuals with disabilities.

**Record Retention**

Record Retention Period

1. Financial records, supporting documents, statistical records, and all other non-federal entity records pertinent to a federal award generally must be maintained for at least three years from the date the final FFR is submitted. *See* 2 C.F.R. §200.334. Further, if the recipient does not submit a final FFR and the award is administratively closed, FEMA uses the date of administrative closeout as the start of the general record retention period.
2. The record retention period **may be longer than three years or have a different start date** in certain cases.

Types of Records to Retain

1. FEMA requires that the recipient and subrecipients maintain the following documentation for federally funded purchases:
   a. Specifications;
   b. Solicitations;
   c. Competitive quotes or proposals;
   d. Basis for selection decisions;
   e. Purchase orders;
   f. Contracts;
   g. Invoices; and
   h. Canceled checks.

**Actions to Address Noncompliance**

Non-federal entities receiving financial assistance funding from FEMA are required to comply with requirements in the terms and conditions of their awards or subawards, including the terms set forth in applicable federal statutes, regulations, Award Summaries, and policies. Throughout the award lifecycle or even after an award has been closed, FEMA or the pass-through entity may discover potential or actual noncompliance on the part of a recipient or subrecipient.

In the case of any potential or actual noncompliance, FEMA may place special conditions on an award per 2 C.F.R.§ 200.208 and 2 C.F.R.§ 200.339. FEMA may place a hold on funds until the matter is corrected, or additional information is provided per 2 C.F.R.§ 200.339, or it may do both. Similar remedies for noncompliance with certain federal civil rights laws are authorized pursuant to 44 C.F.R. Part 7 and 44 C.F.R. Part 19 or other applicable regulations.
If the noncompliance is not able to be corrected by imposing additional conditions or the recipient or subrecipient refuses to correct the matter, FEMA may take other remedies allowed under 2 C.F.R.§ 200.339.

**Audits**

FEMA grant recipients are subject to audit oversight from multiple entities including the DHS Office of Inspector General (OIG), the Government Accountability Office (GAO), the pass-through entity, or independent auditing firms for single audits, and may cover activities and costs incurred under the award. Auditing agencies such as the DHS OIG, the GAO, and the pass-through entity (if applicable), and FEMA in its oversight capacity, must have access to records pertaining to the FEMA award.