No. 25-12873

# In the United States Court of Appeals for the Eleventh Circuit

FRIENDS OF THE EVERGLADES, INC., ET AL.,
*Plaintiffs-Appellees,*

v.

EXECUTIVE DIRECTOR, FLORIDA DIVISION OF
EMERGENCY MANAGEMENT, ET AL.,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Southern District of Florida
No. 25-cv-22896-KMW

## APPELLANT FDEM'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO SUPPLEMENT

James Uthmeier
  *Attorney General of Florida*
Jeffrey Paul DeSousa
  *Acting Solicitor General*
Nathan A. Forrester
  *Chief Deputy Solicitor General*
Kevin A. Golembiewski
  *Senior Deputy Solicitor General*
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399
jeffrey.desousa@myfloridalegal.com

January 20, 2026

Jesse Panuccio
Evan Ezray
David Costello
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, FL  33301
jpanuccio@bsfllp.com

*Counsel for Kevin Guthrie, in his official capacity as Executive Director of the Florida Division of Emergency Management*

## INTRODUCTION

Plaintiffs are two political-advocacy organizations that filed this meritless lawsuit, in the wrong venue, and immediately used it as a lure to their fundraising websites.[1] They secured an improper preliminary injunction barring an important law-enforcement initiative—and they fundraised off that, too.[2] But then this Court saw through the ruse, stayed the preliminary injunction, and stayed district-court proceedings while venue and other case-dispositive questions are litigated in this Court. *See Friends of the Everglades, Inc. v. Noem (FOE)*, 2025 WL 2598567, at *8-9, *13 (11th Cir. Sept. 4, 2025); FDEM Stay Mot.45 (requesting a stay of proceedings because the district court lacked venue). Plaintiffs fundraised off this Court's decision as well, accusing the Court

---

[1] *Friends of the Everglades and Allies File Lawsuit to Protect the Everglades From Reckless "Alligator Alcatraz"*, Friends of the Everglades (June 27, 2025), https://perma.cc/Z6P3-XM2V; *Lawsuit Filed to Protect Everglades from Becoming I.C.E. Detention Center*, Ctr. for Biological Diversity (June 27, 2025), https://perma.cc/ALL8-DVDJ.

[2] *EVERGLADES WIN: We Stopped "Alligator Alcatraz"— For Now*, Friends of the Everglades (Aug. 22, 2025) ("If you're able, we invite you to help power the next phase of this existential battle."), https://perma.cc/TY94-WWHZ; *Judge Halts Operations at Everglades Detention Center with Preliminary Injunction*, Ctr. for Biological Diversity (Aug. 21, 2025), https://perma.cc/R72F-BY4N.

of engaging in "a full-on assault on our nation's most important environmental laws."[3]

That was back in September 2025. Since then, Plaintiffs have filed a motion for reconsideration and several motions related to scheduling, and Appellants have filed their opening briefs. Not once did Plaintiffs suggest that the record was incomplete or that they would seek to supplement it. Nor did Plaintiffs' counsel confer with opposing counsel about supplementing the record.

Now, months later, and only after the opening briefs were filed, Plaintiffs have filed this Motion for Leave to Supplement the Record on Appeal, dressing it up as some case-altering revelation and using it to cast scurrilous accusations that the State of Florida and the federal government violated the duty of candor. Unsurprisingly, Plaintiffs are fundraising off this gambit, too.[4]

---

[3] *Our Fight For the Everglades Just Got More Urgent — Here's What Comes Next*, Friends of the Everglades (Sept. 5, 2025) ("We invite you to stand with us in this next, crucial phase by supporting the Everglades Defense Fund."), https://perma.cc/BGA9-2HLJ; *Challenge Vowed After Court Stalls Everglades Detention Center Shutdown*, Ctr. for Biological Diversity (Sept. 4, 2025), https://perma.cc/UE9Z-B3XM.

[4] *See Florida Misled the Court – We're Setting the Record Straight*, Friends of the Everglades (Jan. 9, 2026) (promoting this motion by falsely

Yet it is Plaintiffs that lack candor. They claim the "facts" they seek to add to the record were previously "undisclosed" and are "material" to the issues on appeal. Mot.1. But the very first document they seek to add to the record is an email they submitted to this Court *months ago* to oppose FDEM's stay motion. ECF No. 35 at 7 n.6; Pls.' Stay App'x, Vol. II at 434. And none of the three documents they seek to admit on appeal show that, when the preliminary injunction issued, the federal government had granted or allocated funds to Florida. *See FOE*, 2025 WL 2598567, at *7-9 (holding that lack of formal funding decision was material to stay). Finally, as Plaintiffs must admit, Florida squarely told this Court in its Opening Brief that, after the stay decision, the federal government conditionally granted—but had not disbursed—funding for immigration detention (not construction). FDEM Opening Br. at 10, 38-39. But, as explained in that brief, DHS's post-order decision is immaterial to an appeal of a preliminary injunction.

Plaintiffs thus fall far short of the high bar for admitting new evidence on appeal. They have achieved their goal of making unfounded

---

stating "Florida misled the court" and linking to "Stop 'Alligator Alcatraz' hub"), https://perma.cc/9JTH-7TZ7.

allegations to revive their fundraising efforts. But they have not presented a valid basis for relief in their motion.

## ARGUMENT

This Court "rarely" supplements the record on appeal. *Shahar v. Bowers*, 120 F.3d 211, 213 (11th Cir. 1997) (en banc) (quotation omitted). After all, "[w]hen the district court enters" an appealable order, "the evidence is closed; and the record … for appeal is established." *Id.* at 212 n.1. Thus, the Court should admit new evidence "only in exceptional circumstances." *Est. of Keeter v. Comm'r of Internal Revenue*, 75 F.4th 1268, 1288 (11th Cir. 2023) (quotation omitted). A "primary factor" in establishing such exceptional circumstances is whether the evidence "would establish beyond any doubt the proper resolution of the pending issues." *CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1330 (11th Cir. 2000); *see also Keeter*, 75 F.4th at 1288 (denying motion to supplement when evidence was not "dispositive of the issues").

Plaintiffs have not demonstrated exceptional circumstances here. The documents Plaintiffs seek to add do not alter the analysis of any dispositive issue in this appeal. Indeed, this Court already considered and rejected the DHS email in granting FDEM's stay motion. And

4

neither FDEM's grant application nor its August 15, 2025 conversation show that FEMA had made, at the time the injunction was entered, a "legally binding" commitment to "reimburse Florida for its expenditures." *FOE*, 2025 WL 2598567, at *8-9.

## I. PLAINTIFFS' PROPOSED SUPPLEMENTAL EXHIBITS DO NOT RESOLVE THE ISSUES ON APPEAL

Plaintiffs (at 11) seek to reopen the record to admit three exhibits that supposedly prove "a commitment of federal funding occurred" before the district court issued its injunction. Of course, Plaintiffs must show more than "federal funding" to establish major federal action; they must also show "federal control." *FOE*, 2025 WL 2598567, at *6; *see also Ctr. for Biological Diversity v. HUD*, 541 F. Supp. 2d 1091, 1098 (D. Ariz. 2008) ("[F]unding alone is not enough[.]"). But regardless, Plaintiffs' evidence does not show that, prior to the injunction, FEMA made any "legally binding payment decision," *FOE*, 2025 WL 2598567, at *8, much less do they prove the point "beyond any doubt," *CSX Transp.*, 235 F.3d at 1330.

A.    Exhibit 1 contains a June 20, 2025 email exchange between the then-Chief of Staff to Florida's Attorney General and counsel at DHS. In the exchange, DHS's counsel explains "DHS's interest in working with

[the State] to detain aliens under 287g in facilities provided by Florida." Mot. Ex.1 at 2.  He also says that "we will work out a method of partial reimbursement" "if [Florida] go[es] forward."  *Id.*  This email is not newly discovered or disclosed; Plaintiffs neglect to mention that they submitted the email to this Court in opposing FDEM's stay motion.  *See* ECF No. 35 at 7 n.6.

As this Court held in granting that stay, DHS's equivocal and speculative statements do not establish a "legally binding payment decision."  *FOE*, 2025 WL 2598567, at *8.  Nothing in that informal email—sent weeks before Florida even submitted its initial application on August 7, 2025, Mot. Ex.2 at 2—suggests it marked "the consummation of [DHS's] decisionmaking" for a highly "technical" grant award.  *FOE*, 2025 WL 2598567, at *8 (quotation omitted).  Rather, DHS's email was a classic "informal letter[] written by [an] agency lawyer[]" that "lack[s] the force of law."  *Heimmermann v. First Union Mortg. Corp.*, 305 F.3d 1257, 1262 (11th Cir. 2002); *see also Clayton Cnty. v. FAA*, 887 F.3d 1262, 1266 (11th Cir. 2018) (letter from FAA's Office of Chief Counsel was not final agency action).

Indeed, DHS's counsel's statements are even less probative than the funding "assurances" DHS Secretary Noem offered on social media. *FOE*, 2025 WL 2598567, at *8. Below, Plaintiffs belabored that Secretary Noem had posted on Facebook that "the Facility would be funded by the federal government." *Id.* at *7; *see* Doc. 25-1; Doc. 55 at 3. But just as that "Facebook post d[id] not somehow transfer funds from the federal fisc to Florida," *FOE*, 2025 WL 2598567, at *8, a contingency-riddled email from a DHS lawyer did not either. Put differently, if public "assurances" from the head of DHS did not establish a "legally binding payment decision," *id.*, informal private inquiries from her subordinate do not come close. Thus, Exhibit 1 would not change this Court's prior analysis and does not "establish beyond any doubt the proper resolution of the pending issues." *CSX Transp.*, 235 F.3d at 1330.

**B.** Exhibit 2 suffers a similar flaw. It contains an email confirming that FDEM applied for grant funding on August 7, 2025. But the existence of federal funding turns on final federal *agency* action, not *applicant* action. *See Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1173 (11th Cir. 2006) (explaining that NEPA claims require final agency action). As this Court already concluded, the critical question is not

7

whether Florida applied for a grant, but whether FEMA has "approve[d] [Florida's funding] request and reimburse[d] Florida for its expenditures." *FOE*, 2025 WL 2598567, at *9. Florida's funding application said nothing of whether FEMA had *granted* that application. FDEM did not "federalize" its project by merely applying for federal funds. *Id.* at *7 (quotation omitted); *see also Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1103-04 (9th Cir. 2007) (no final agency action when EPA had yet to approve a pending grant application); *Karst Env't Educ. & Prot., Inc. v. EPA*, 403 F. Supp. 2d 74, 81 (D.D.C. 2005) (similar for HUD), *aff'd*, 475 F.3d 1291 (D.C. Cir. 2007); *Citizens Alert Regarding Env't v. EPA*, 102 F. App'x 167, 168 (D.C. Cir. 2004) (similar for EPA). Thus, Exhibit 2 does not "establish beyond any doubt the proper resolution of the pending issues." *CSX Transp.*, 235 F.3d at 1330.

**C.** Exhibit 3 confirms, rather than undermines, the conclusion that the district court erred in finding "that a funding decision with any legal effect [was] made." *FOE*, 2025 WL 2598567, at *8. The award letter (at 6) describes a meeting on August 15, 2025, in which FEMA notified FDEM that its funding application was deficient because FDEM's proposed budget "exceed[ed] the available" grant funds. Such a

notification is the opposite of a grant. The award also reveals (at 32) that as of September 30, 2025 (more than a month after the district court entered its injunction), the federal government *still* had not reimbursed FDEM due to various conditional "funding hold[s]." So Exhibit 3 does not prove Plaintiffs' funding claim "beyond any doubt." *CSX Transp.*, 235 F.3d at 1330. It instead proves that "no federal dollars ha[d] been expended" on the facility when the district court issued its injunction. *FOE*, 2025 WL 2598567, at *7;[5] *see also Rapid Transit Advocs., Inc. v. S. Cal. Rapid Transit Dist.*, 752 F.2d 373, 378 (9th Cir. 1985) (grant award was not final agency action because it was contingent on the completion of a "second-tier EIS"); *Am. Airlines, Inc. v. Transp. Sec. Admin.*, 665 F.3d

---

[5] Plaintiffs rely on the September 30 award only for what it says about the August 15 conversation. Mot.9. Plaintiffs do not, and cannot, assert that post-injunction developments (like the conditional allocation on September 30, 2025) are relevant on appeal. As explained in FDEM's Opening Brief (at 38-39, 53), this Court's review of the preliminary injunction "is limited to the evidence before the district court at the time of the preliminary injunction hearing." *Verlo v. Martinez*, 820 F.3d 1113, 1126 (10th Cir. 2016). By definition, that cannot include a grant award issued over a month later.

170, 174 (D.C. Cir. 2011) (action is not "final" when it is "contingent on future agency actions").[6]

In sum, "the documents [Plaintiffs] seek[] to add to the record are not significantly probative or dispositive of any issue on appeal." *Perez v. Cigna Health & Life Ins. Co.*, 2021 WL 2935260, at *2 n.3 (11th Cir. July 13, 2021). The Court should deny the motion for that reason alone. *See Keeter*, 75 F.4th at 1288 (denying motion to supplement when evidence was not "dispositive of the issues"); *Nunnelly v. Life Ins. Co. of N. Am.*, 2022 WL 1640790, at *5 n.8 (11th Cir. May 24, 2022) (similar); *United States v. Andrews*, 2025 WL 1862325, at *2 (11th Cir. July 7, 2025) (similar).

---

[6] Plaintiffs wrongly contend (at 9-10) that the September 30 award proves FDEM was allocated funds by August 15 based on the award's notation that FDEM "is prohibited from obligating, expending, or drawing down ***funds allocated under DSGP***." But that line does not reference a statement FEMA made to FDEM on August 15; it is a statement FEMA made to FDEM on September 30 when FEMA tentatively allocated funds to FDEM (subject to conditional holds). The notation merely explains that FDEM could not "draw[] down funds" from the September 30 allocation because, as FEMA told FDEM on August 15, FDEM's budget was deficient. Nothing in the notation suggests that FEMA first allocated funding on or before August 15. That conditional allocation came on September 30, as the award letter states (at 2). And even that allocation did not reimburse FDEM due to conditional funding holds.

## II. THE CIRCUMSTANCES DO NOT OTHERWISE JUSTIFY REOPENING THE RECORD

To support their motion to supplement, Plaintiffs charge FDEM with violating the duty of candor. That accusation is scurrilous.

**A.** In its very first filing in the district court, FDEM disclosed that Florida intended to seek funding from the federal government. Doc. 16-1 ¶ 3. In its stay application to this Court, FDEM disclosed that "federal reimbursement is possible." *See* FDEM Stay Mot.1. And in its Opening Brief to this Court, FDEM disclosed that the federal government had conditionally granted its funding application on September 30, 2025, and tentatively allocated funding to FDEM (though the funds were subject to conditional holds and had not been dispersed). *See* FDEM Opening Br. at 38-39. Those open disclosures fatally undermine Plaintiffs' charge of lack of candor.

**B.** At its core, the duty of candor forbids litigants from "misrepresenting" facts, *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1503 (11th Cir. 1985), and "insisting upon a position after it is no longer tenable," *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010). That prohibition includes "reaffirming to the court and advocating positions contained in [prior filings] after learning that they cease to have any

11

merit." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. At the same time, the duty of candor is not a continuing-disclosure requirement. As Plaintiffs concede (at 11), the duty "does not impose an obligation to amend filings that were 'reasonably interposed' at the time of filing." *See Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Associated Contractors, Inc.*, 877 F.2d 938, 943 (11th Cir. 1989). Nor does it require litigants to "volunteer information to [their] opponent[s]" beyond what is "requested in discovery" or "required by statute or rule." *Apotex Corp. v. Merck & Co.*, 229 F.R.D. 142, 148 (N.D. Ill. 2005); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 328 (1986) (White, J., concurring) ("A [party] need not ... reveal his ... evidence unless required to do so under the discovery rules or by court order."). Were it otherwise, there would be little need for discovery practice, as litigants would have an inherent obligation to make their opponent's case for them. *Contra Shahar*, 120 F.3d at 213 (declining to supplement record due to a litigant's alleged non-disclosure when movant "had the opportunity to pursue discovery" in the district court yet failed to do so).

Against that backdrop, Plaintiffs contend (at 11-12) that FDEM violated its duty of candor in two ways.  <u>First</u>, they assert that FDEM made "inaccurate" factual "assertions" to this Court.  <u>Second</u>, they claim that FDEM improperly "failed to disclose" the information in Plaintiffs' exhibits.  Both allegations are false.

*1.*    Plaintiffs claim (at 11) FDEM made two factual misrepresentations.  Plaintiffs first complain that FDEM has "continued to deny any prior commitment to federally fund the facility," despite knowing of the DHS email, FDEM's application, and the August 15 budget rejection.  That accusation is a losing merits argument masquerading as a duty-of-candor allegation.  After all, Plaintiffs contend on appeal that FEMA had committed to reimburse Florida before the injunction issued.  By contrast, FDEM asserts (and this Court concluded at the stay stage) that it had not.  *FOE*, 2025 WL 2598567, at *9.  The only way FDEM violated the duty of candor in taking that position is if Plaintiffs' exhibits show that FDEM's argument was "no longer tenable" when made.  *Peer*, 606 F.3d at 1311.  But as discussed (*supra* 5-10), Plaintiffs' exhibits do not establish a final "payment decision" at the time of the injunction, *FOE*, 2025 WL 2598567, at *8-9,

much less prove the point so clearly that FDEM cannot reasonably contend otherwise.

As a result, this Court should refuse Plaintiffs' effort to recast a good-faith "legal argument" as a bad-faith "factual misrepresentation." *Saginaw Hous. Comm'n v. Bannum, Inc.*, 2012 WL 368575, at \*14 (E.D. Mich. Feb. 3, 2012) (no candor violation in similar scenario). Rather, it is Plaintiffs who are now improperly wielding an unfounded duty-of-candor threat to "intimidate" opposing counsel "into withdrawing contentions that are" not only "fairly debatable," but were endorsed by a panel of this Court at the stay stage. Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment; *cf. Nakash v. DOJ*, 708 F. Supp. 1354, 1370 (S.D.N.Y. 1988) (duty-of-candor claims should not be asserted for "strategic reasons"); *Atkison v. Steak N' Shake of Hampton, Inc.*, 2006 WL 208601, at \*1 n.1 (E.D. Mo. Jan. 25, 2006) (cautioning "Plaintiffs' counsel … to be more prudent in … accusations of improper conduct by others").

Plaintiffs next protest (at 11) that FDEM has "continued to rely on the Richardson declaration"—a federal-government declaration from July 2025 that accurately stated, among other things, that FDEM had

14

not yet applied for federal funds at that time, Doc. 21-2 ¶ 4. But FDEM has *never* cited the Richardson declaration to assert that FDEM had not applied for federal funding (and FDEM has *never* represented otherwise since it applied for funding on August 7, 2025). Rather, the Richardson declaration separately attests that FEMA "has not yet approved a federal award," *id.*, and FDEM has accurately cited the declaration for *that* proposition. *See* FDEM Stay Mot.9 (citing the declaration for the premise that "the federal government has not, in fact, reimbursed FDEM"); *id.* at 26 (same for the idea that "Plaintiffs also cannot ground their claim in federal funding because there has been none"); *see also* FDEM Op. Br. at 10, 37 (similar). If Plaintiffs' contention is that FDEM has a "continuing obligation" to update a part of the declaration that FDEM was not even using, this Court has rejected that premise. *See Associated Contractors*, 877 F.2d at 943; *see also XP Glob., Inc. v. AVM, L.P.*, 2018 WL 6448383, at *3 (S.D. Fla. Feb. 14, 2018) (no candor violation when litigant made assertions that later "proved to be false" but did not "pursue" those arguments after learning of their falsity). Indeed, that would be an absurd rule because declarations are always a snapshot in time, usable in the future for whatever probative value they still hold.

15

**2.** Plaintiffs also claim (at 12)—in a passing sentence without argument—that FDEM "fail[ed] to disclose pertinent material information that if disclosed would have been part of the record." Yet Plaintiffs have "identified no [discovery] request or [legal] requirement that would have called for [FDEM] to produce the evidence in question." *Apotex*, 229 F.R.D. at 148. Nor did FDEM have any "independent obligation to volunteer information to its opponent." *Id.*; *see also Celotex*, 477 U.S. at 328 (White, J., concurring) (same). Rather, it was *Plaintiffs'* job to use the ordinary discovery and evidentiary processes to litigate their case. *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 540 (3d Cir. 2007) (a party need not "volunteer information that was not encompassed within the scope of … discovery"); *In re Air Crash Disaster*, 86 F.3d 498, 539 (6th Cir. 1996) (similar). That Plaintiffs failed to exhaust those avenues is no fault of FDEM, but a consequence of Plaintiffs pursuing a preliminary injunction at breakneck pace. *See, e.g.*, Docs. 5, 31, 40, 55 (multiple motions seeking "expedited" relief); Doc. 114 at 124:19-24 (oral motion for a TRO during the preliminary-injunction hearing).

In fact, Plaintiffs could have obtained much of the information in their exhibits simply by calling state and federal witnesses at the preliminary-injunction hearing. But they declined that opportunity. Over four days of testimony, Plaintiffs did not call a single state or federal witness. Instead, to streamline their case and shield many of their own witnesses from cross-examination, Plaintiffs "entered into an agreement in district court" that allowed both sides to admit certain testimony by declaration. *Shahar*, 120 F.3d at 213; *see* Doc. 129 at 177:13-178:2, 234:6-9. That tactical choice voluntarily "limited" Plaintiffs' ability to examine Defendants' witnesses about funding developments. *Shahar*, 120 F.3d at 213. That Plaintiffs may regret their "strategic decision" is not grounds to evade its consequences on appeal. *Id.* (declining to supplement the record for similar reasons).

Nor do Plaintiffs' exhibits offer the type of case-altering, material information that would have triggered FDEM's independent duty to notify this Court. As discussed (*supra* 5-10), neither the DHS email, FDEM's application, nor the September 30 award establishes a funding decision at the time of the injunction, let alone "gut" FDEM's case. *Byrne v. Nezhat*, 261 F.3d 1075, 1116-17 (11th Cir. 2001). This Court already

17

considered the DHS email and still held there was no funding. *See* ECF No. 35 at 7 n.6. FDEM's mere funding application similarly does not resolve whether FEMA has "reimburse[d] Florida for its expenditures." *FOE*, 2025 WL 2598567, at *9. And the award letter (which FDEM alerted the Court about in its Opening Brief) proves only that FEMA deemed FDEM's application deficient on August 15, and that FEMA still had not reimbursed FDEM by September 30. *See* Mot. Ex.3 at 6, 32. Those are hardly case-shaking revelations that FDEM had a duty to update the Court about outside the normal course of discovery. *See Byrne*, 261 F.3d at 1116-17 (litigant had a duty to disclose case-dispositive information); *Bd. of License Comm'rs of Town of Tiverton v. Pastore*, 469 U.S. 238, 240 (1985) (similar).

The implications of Plaintiffs' position are also untenable. On their view, FDEM has a continuing duty to notify both this Court and the district court of *any* development that may inch FDEM closer to federal reimbursement—be it a closed-door meeting with FEMA officials or a working draft of a revised budget. The federal government, too, must apparently provide the federal courts with rolling updates on its internal decisionmaking. And, though Plaintiffs conveniently omit this part, even

*they* would have an obligation to continuously supply the Court with updates that may affect their case (e.g., Plaintiffs' repeated recreational use of the Everglades—including "bucket list" nature items after the facility opened—despite their witnesses' dire warnings to the contrary at the preliminary-injunction hearing).[7]  This Court has declined to impose such onerous "continuing obligation[s]." *Associated Contractors*, 877 F.2d at 943.

**C.**    Plaintiffs (at 2) invoke this Court's extraordinary "equitable power" to supplement the record on appeal.  But "[e]quity aids the vigilant." *Carver v. Liberty Mut. Ins. Co.*, 277 F.2d 105, 109 (5th Cir. 1960).  And "[h]e who comes into equity must come with clean hands." *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 241 (1933).  Plaintiffs meet neither standard.

---

[7] *See 2025 in the Everglades — Photos of Stunning Beauty Worth Protecting*, Friends of the Everglades (Dec. 10, 2025) ("Autumn brought some respite from the intense summer fight and a calm sunrise shoot at Loxahatchee Slough Natural Area brought me back to my camera. Communications Director Allie Hartmann and I achieved a bucket list item – seeing Southeastern Sunflowers in bloom at Corkscrew Swamp Sanctuary! And an October wet walk through Big Cypress with our special Marjory's Circle donors grounded us all."), https://perma.cc/5ZVH-PJ2G.

Indeed, Plaintiffs have known about the information in their exhibits for months. They knew about the DHS email by August 28, 2025 (Mot. Ex.1), the funding application by October 10, 2025 (Mot. Ex.2 at 1), and the award letter by October 15, 2025 (Mot. Ex.3 at 1)—all before this Court temporarily stayed proceedings pending the government shutdown. After learning of these materials, Plaintiffs wasted no time publishing the information on their fundraising website.[8] Yet despite now painting these exhibits as case-altering evidence, Plaintiffs delayed submitting this motion until *after* FDEM filed its Opening Brief. The reason is obvious: Plaintiffs wanted to level their false charge of FDEM supposedly "fail[ing] to disclose" this material "in [the] opening brief." Mot.2 (making that claim even though FDEM's brief disclosed the award). And Plaintiffs did not even try to confer about their requested relief—despite conferring with FDEM about their motions for extension and word enlargement just a few days earlier—surely to avoid the possibility that FDEM would agree to supplement the record (as it might have, to avoid burdening the Court and parties with briefing about

---

[8] *See* Eve Samples, *Alligator Alcatraz Should Be Closed by Now*, Friends of the Everglades (Oct. 23, 2025) (noting that FDEM "applied for a FEMA grant on Aug. 7"), https://perma.cc/E5HZ-VZ3W.

immaterial exhibits) and eliminate the ability to level a false charge and fundraise off it.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion.

Dated: January 20, 2026

James Uthmeier
  *Attorney General of Florida*
Jeffrey Paul DeSousa (FBN 110951)
  *Acting Solicitor General*
Nathan A. Forrester (FBN 1045107)
  *Chief Deputy Solicitor General*
Kevin A. Golembiewski (FBN 1002339)
  *Senior Deputy Solicitor General*
**Office of the Attorney General**
The Capitol, PL-01
Tallahassee, FL 32399
jeffrey.desousa@myfloridalegal.com

Respectfully submitted,

s/ *Jesse Panuccio*
Jesse Panuccio (FBN 31401)
Evan Ezray (FBN 1008228)
David Costello (FBN 1004952)
**BOIES SCHILLER FLEXNER LLP**
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, FL 33301
jpanuccio@bsfllp.com

*Counsel for Kevin Guthrie, in his official capacity as Executive Director of the Florida Division of Emergency Management*

22

## CERTIFICATE OF COMPLIANCE

**1.** This document complies with the type-volume limits of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 4,199 words.

**2.** This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

s/ *Jesse Panuccio*
Jesse Panuccio

**CERTIFICATE OF SERVICE**

I certify that on January 20, 2026, I electronically filed this document with the Clerk of Court using the Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

s/ *Jesse Panuccio*
Jesse Panuccio
