**No. 25-12873**

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

FRIENDS OF THE EVERGLADES and CENTER FOR BIOLOGICAL DIVERSITY,
*Plaintiffs/Appellees*,

v.

KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,
*Defendants/Appellants*.

Appeal from the United States District Court for the Southern District of Florida
No. 1:25-cv-22896 (Hon. Kathleen M. Williams)

**REPLY OF FEDERAL APPELLANTS IN SUPPORT OF COUNTER-MOTION FOR LEAVE TO SUPPLEMENT THE RECORD ON APPEAL**

On January 20, 2026, the federal defendants filed a counter-motion to supplement the record on appeal. ECF 104. As explained in that filing, the Court should deny Plaintiffs' motion to supplement the record on appeal outright because none of the extra-record documents is material, let alone conclusive, to the proper resolution of the issues before this Court. *Id.* at 3-7. The federal defendants asked, in the alternative, that the Court consider additional documents to provide context and background to alleviate any confusion that admitting those extra-record

1

documents might create about the issues on appeal. *Id.* at 8-10. Plaintiffs then used their responsive filing to sow further confusion, make a second request to further expand the record, and lob unwarranted accusations. ECF 110.

### 1. The documents provide necessary context and background.

The federal defendants' alternative motion sought to alleviate any confusion about the status of the agency's decisions that may be gleaned from the extra-record documents that Plaintiffs seek to introduce for the first time on appeal. Importantly, NEPA excludes from the definition of "major Federal action" a non-federal action "with no or minimal Federal funding." 42 U.S.C. § 4336e(10)(B)(i)(I).[1] Under this definition, the state's facility is not subject to NEPA because the state had not received federal funding. *See Friends of the Everglades v. Dep't of Homeland Security*, No. 25-12873, 2025 WL 2598567, at *5-8 (11th Cir. Sept. 4, 2025).

---

[1] Plaintiffs confuse the law when they state (at 3) that a proposal for major federal action is not final agency action. In fact, NEPA does not apply if "the proposed agency action is not a final agency action." 42 U.S.C. § 4336(a). Thus, any challenged agency action must be *both* a final and major federal action. Possible future funding decisions are neither. Moreover, NEPA gives agencies (not district courts) the discretion to determine whether an action is a major federal action. 42 U.S.C. § 4336e(10)(A). Plaintiffs ignore this NEPA provision too. And Plaintiffs' statement that this issue is forfeited is baseless. The federal defendants consistently have argued that a possible future funding decision is not final or major federal action. A party does not forfeit an issue by citing additional statutory authority in support of a consistent argument. *See Yee v. City of Escondido*, 503 U.S. 519, 534 (1992) ("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below.").

2

To the extent Plaintiffs imply a final federal funding decision had been made based on the statements of public officials (at 6-7), the stay panel concluded that it "is simply not plausible" based on these public statements "that a funding decision with any legal effect has been made here." *Friends of the Everglades*, 2025 WL 2598567, at *8. Plaintiffs' motion to supplement is a transparent attempt to backfill a deficient record on this issue by introducing documents that create the misimpression that a final federal funding decision had been made by August 21, when the process was and is still ongoing today.

The documents attached to the alternative motion to supplement provide crucial background and context to rebut this misimpression. As explained in the alternative motion to supplement, these documents show that, even as of September 30 (and certainly not by August 21), the federal defendants had not made a final decision to reimburse costs for this or any other facility. ECF 104 at 8-10. They show that the September 30 letter is a purely programmatic award, untethered to any specific facility.[2] *Id*., U.S. Exh. 1 at 1;[3] U.S. Exh. 2; U.S. Exh. 3 at 1. The letter expressly places all funds on hold and bars any obligation, expenditure, or drawdown

---

[2] Plaintiffs' repeated line that FDEM is the only potential applicant is beside the point. There is no indication that this facility is the only potentially eligible facility.

[3] If the Court grants this motion, the federal defendants ask that the signed version of document attached as Exhibit 1 to this reply be substituted for the unsigned version of the document attached as Exhibit 1 to the original motion.

3

absent further FEMA approval, pending completion of application review and environmental compliance. U.S. Exh. 1 at 1; U.S. Exh. 3. Crucially, the documents show that FEMA may not reimburse FDEM for construction costs, U.S. Exh. 4 at 7, 9, 10, and may ultimately disallow the requested costs altogether. U.S. Exh. 1 at 1.

In short, these documents provide necessary context showing that multiple discretionary steps remained, and no final or major federal action had occurred. Therefore, if the Court grants Plaintiffs' motion to supplement the record (which it should not), it should include these additional documents as necessary context.

### 2. This Court should not expand the record any further.

Plaintiffs' suggestion for supplementing the record even further demonstrates why motions to supplement the record on appeal are highly disfavored and rarely granted. *Shahar v. Bowers*, 120 F.3d 211, 213 (11th Cir. 1997) (en banc). Granting such motions risks opening the door to never-ending record expansion.

Notably, these never-ending requests are made possible because the district court ignored the Administrative Procedure Act's (APA) limits on judicial review. NEPA claims are reviewable only under the APA's arbitrary-or-capricious standard "based on the record the agency presents to the reviewing court." *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). The APA requires courts to review agency action based on the existing administrative record, not by creating a new one through de novo fact-finding. *Id.* at 744. If the record is too incomplete to

allow proper review, the APA's ordinary remedy is a remand to the agency for explanation rather than having a court supplement the record itself. *Id.*

The district court ignored these basic principles governing APA review. Here, because the facility's construction and operation are exclusively state actions without substantial federal involvement or funding, there is no written decision or record from the agencies for the courts to review. But if such a decision or record were necessary to evaluate any claimed NEPA violation (which it isn't), the proper course would be to seek such an explanation and certified record from the agencies. *Id.* It is undoubtedly the wrong approach, however, to create a new record in the district court and then to continue to substitute the record on appeal beyond even what was introduced before the district court.

Finally, these documents do not create the inconsistencies that Plaintiffs allege, and the documents should be disregarded for that reason too. The August 2025 Record of Environmental Consideration reflected FEMA's expectations of the project's scope in August. ECF 110, Exh. A. But as mentioned in the September 30 letter, there were problems with the state's application that prevented FEMA from making a final decision on that application. ECF 91, Exh. 3 at 6. On further review, the project's scope developed into one of programmatic scope, not specific to any facility, obligating funds on a per detainee basis (not for construction), and subject to strict holds for further environmental and other reviews before any final decision

5

to disburse funds to FDEM is made. ECF 104, U.S. Exh. 1 at 1; U.S. Exh. 2; U.S. Exh. 3 at 1. The evolution of these documents is consistent with the ongoing decision-making process that was and is continuing before the federal agencies.[4] It is also consistent with the Supreme Court's teachings on how NEPA works—because NEPA review is only "one input into an agency's decision," if the project's scope changes before final decision, agencies should ensure that their NEPA documents are current. *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168 (2025).

### 3. Plaintiffs' accusations are baseless.

Plaintiffs also use their response to lob unwarranted accusations. For instance, Plaintiffs contend that the federal defendants allegedly told the stay panel that a state application had not been filed. To make this false assertion, Plaintiffs quote two sentences from the stay motion, but they blatantly *omit* the preceding sentences that make clear that the quoted statement was part of a hypothetical about the series of prerequisite events that would be necessary before any potential funding proposal would become reviewable. U.S. Motion to Stay, ECF 20 at 12. The stay motion

---

[4] The other documents similarly do not create any inconsistencies. No one disputes that $608.4 million in federal funds is available. ECF 110, Exh. B. And the Program Guidance document confirms the federal defendants' position that reimbursement for construction is not available. ECF 110, Exh. C at 5.

never stated that a state application had not been filed, and the existence of state application is not material to the ultimate question of finality in any event.

Plaintiffs then create the false impression that the stay panel relied on that hypothetical, when it did not. While the stay panel relied on the separate Richardson declaration, the federal defendants never cited that declaration to show that a state application had not been filed. U.S. Motion to Stay, ECF 20.

Plaintiffs also create the false impression that the lack of a state application somehow drove the stay panel's decision, when it did not. While the stay panel referred to the absence of an application, those statements were only a minor part of its overall analysis of whether a *final* federal funding decision had been made. *See Friends of the Everglades*, 2025 WL 2598567, at \*8-\*9. The existence of a state application is only a preliminary step towards a final federal funding decision, and FEMA has not made that ultimate decision even now. That fact is the engine that drove the stay panel's decision: "There may come a time when FDEP applies for FEMA funding. *If* the Federal Defendants *ultimately decide to approve* that request *and* reimburse Florida for its expenditures related to the Facility, they may need to first conduct an EIS. But, having *not yet formally committed* to funding that project, the Federal Defendants have taken no major federal action subjecting them to the procedural requirements of NEPA." *See Friends of the Everglades*, 2025 WL 2598567, at \*9 (emphasis added, quotations, citations and parentheticals omitted).

## CONCLUSION

For the foregoing reasons, if this Court grants the motion to supplement the record on appeal (which it should not do), it should also supplement the record with the documents submitted by the federal defendants in their counter motion to provide context and background. It should expand the record no further.

Respectfully submitted,

/s/ *Allen M. Brabender*
ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

ROBERT STANDER
*Deputy Assistant Attorney General*

MARISSA A. PIROPATO
HAYLEY A. CARPENTER
ALLEN M. BRABENDER
*Attorneys*
U.S. Department of Justice
Environment and Natural Resources Division
Post Office Box 7415
Washington, D.C. 20044
(202) 532-3281
allen.brabender@usdoj.gov

February 3, 2026
DJ # 90-1-4-17960

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing reply complies with the type-volume limitation provided by Fed. R. App. P. 27(d). This reply contains 1,737 words, as recorded by the word count of the Microsoft Word word processing system used to prepare the brief.

/s/ Allen M. Brabender

Exhibit 1

Disaster/Emergency/Program/Project Title: Award of Detention Support Grant Program Funds to the State of Florida
Grantee/Recipient: State of Florida Division of Emergency Management

USCA11 Case: 25-12873    Document: 118    Date Filed: 02/03/2026    Page: 11 of 18

# Record of Environmental Consideration

See FEMA Directive 108-1 and FEMA Instruction 108-1-1.

**Project Name/Number:** Award of Detention Support Grant Program Funds to the State of Florida

**Project Location:** Statewide

**Project Description:**

The Detention Support Grant Program (DSGP) will provide financial assistance through a U.S. Department of Homeland Security (DHS)/Federal Emergency Management Agency (FEMA, or the Agency) grant to a non-federal entity to support detaining illegal aliens in a detention environment and related activities until transfer to U.S. Immigration and Customs Enforcement (ICE), in support of relieving overcrowding in short-term holding facilities of the U.S. Customs and Border Protection (CBP). This grant is administered by FEMA's Grant Programs Directorate (GPD). FEMA through the DGSP will be providing funds to the State of Florida and eligible subapplicants to undertake or be reimbursed for program eligible activities. Program eligible activities under this award are not limited or specific, to any particular location or facility within the State of Florida, including the temporary soft-sided holding facility in Collier County known as "Alligator Alcatraz."

The scope of this project is the initial award and obligation of funds from FEMA to the State of Florida. This award of funds comes with strict financial holds that prevent the recipient from obligating, expending, or drawing down funds under the award without further FEMA approval. This award process refers to a practice where FEMA awards a grant and obligates federal grant funds to the grantee, but puts a "hold" on use of those funds pending FEMA review of additional application information and/or for environmental planning and historic preservation (EHP) compliance (including compliance with NEPA and Section 7 of the Endangered Species Act). The financial hold requires the applicant/subapplicant recipient to submit its final application(s) and scope of work to FEMA for review, including required EHP review. When GPD applies such a hold, the condition states that the recipient is prohibited from obligating, expending, or drawing down funds under the award until FEMA completes its final review. FEMA may, upon this future review, disallow requested costs.

# National Environmental Policy Act (NEPA) Determination

- [ ] Statutorily excluded from NEPA review. **(Review Concluded)**
- [x] Categorical Exclusion - **N1** [x] No Extraordinary Circumstances exist.
    Are project conditions required?  [ ] YES (see section V)  [x] NO  **(Review Concluded)**
- [ ] Extraordinary Circumstances exist (See Section IV).
    - [ ] Extraordinary Circumstances mitigated. (See Section IV comments)
    Are project conditions required?  [ ] YES (see section V)  [x] NO  **(Review Concluded)**
    - [ ] Environmental Assessment required. See FONSI for determination, conditions and approval.
- [ ] Environmental Assessment required. See FONSI for determination, conditions and approval.

*Comments:*
**N1 Administrative Actions Associated with Grants Management.** This categorical exclusion (CE) applies to <u>actions related to grant administration performed at</u> any stage during the grants lifecycle, such as the development and issuance of grant guidance; announcements of availability of funds; project reviews for program eligibility; provision of technical assistance; conducting inspections, financial audits, and monitoring activities; development of information technology systems for grants management; grant close-out activities; and actions taken in situations where a grantee or subgrantee is

in non-conformance with grant program requirements, such as disallowances, recoupment of funds, and debarment. The grant administration functions undertaken by the Agency thus are covered by this CE.

This action is only the administrative obligation of programmatic Detention Support Grant Program funds. FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have potential to impact EHP resources.

## Reviewer and Approvals

FEMA Environmental Reviewer
Name: Portia Ross

Signature/Date: PORTIA M ROSS — Digitally signed by PORTIA M ROSS, Date: 2025.09.30 18:28:36 -04'00'

FEMA Historic Preservation Reviewer
Name: Portia Ross

Signature/Date: PORTIA M ROSS — Digitally signed by PORTIA M ROSS, Date: 2025.09.30 18:29:05 -04'00'

FEMA Environmental Officer Reviewer or delegated approving official
Name: Portia Ross

Signature/Date: PORTIA M ROSS — Digitally signed by PORTIA M ROSS, Date: 2025.09.30 18:29:36 -04'00'

## I. Compliance Review for Environmental Laws (other than NEPA)

### A. National Historic Preservation Act

- [x] Not type of activity with potential to affect historic properties. **(Review Concluded)**
- [ ] Applicable executed Programmatic Agreement. Activity meets Programmatic Allowance (enter date and # in comments). . .
    - [ ] Activity meets Programmatic Allowance # _____
      Are project conditions required? [ ] YES (see section V) [ ] NO **(Review Concluded)**
- [ ] Applicable executed Programmatic Agreement (enter date in comments) **(Review Concluded)**
- [ ] Standard Section 106 Review

    **HISTORIC BUILDINGS AND STRUCTURES**
- [ ] No properties in the project area are 50 years or older or listed on the National Register **(Review Concluded)**
- [ ] Building or structure 50 years or older or listed on the National Register in the project area and activity not exempt from review.
    - [ ] Determination of No Historic Properties Affected (FEMA finding/SHPO/THPO concurrence on file)
      Are project conditions required? [ ] YES (see section V) [ ] NO **(Review Concluded)**
    - [ ] Determination of Historic Properties Affected (FEMA finding/SHPO/THPO concurrence on file)
        - [ ] Property a National Historic Landmark and National Park Service was provided early notification during the consultation process. If not, explain in comments
        - [ ] No Adverse Effect Determination (FEMA finding/SHPO/THPO concurrence on file).
          Are project conditions required? [ ] YES (see section V) [ ] NO **(Review Concluded)**
        - [ ] Adverse Effect Determination (FEMA finding/SHPO/THPO concurrence on file)
            - [ ] Resolution of Adverse Effect completed. (MOA on file)
              Are project conditions required [ ] YES (see section V) [ ] NO **(Review Concluded)**

**Disaster/Emergency/Program/Project Title:** Award of Detention Support Grant Program Funds to the State of Florida
**Grantee/Recipient:** State of Florida Division of Emergency Management

USCA11 Case: 25-12873     Document: 118     Date Filed: 02/03/2026     Page: 13 of 18

### ARCHEOLOGICAL RESOURCES
☐ Project affects only previously disturbed ground. **(Review Concluded)**
☐ Project affects undisturbed ground.
　　☐ Project area has no potential for presence of archeological resources.
　　　　☐ Determination of no historic properties affected (FEMA finding/SHPO/THPO concurrence or consultation on file). **(Review Concluded)**
　　☐ Project area has potential for presence of archeological resources.
　　　　☐ Determination of no historic properties affected (FEMA finding/SHPO/THPO concurrence on file).
　　　　　　Are project conditions required? ☐ YES (see section V)　☐ NO **(Review Concluded)**
　　　　☐ Determination of historic properties affected.
　　　　　　☐ NR eligible resources not present (FEMA finding/SHPO/THPO concurrence on file).
　　　　　　　　Are project conditions required ☐ YES (see section V)　☐ NO **(Review Concluded)**
　　　　　　☐ NR eligible resources present in project area. (FEMA finding/SHPO/THPO concurrence on file)
　　　　　　　　☐ No Adverse Effect Determination. (FEMA finding/ SHPO/THPO concurrence on file)
　　　　　　　　　　Are project conditions required? ☐ YES (see section V) ☐ NO **(Review Concluded)**
　　　　　　　　☐ Adverse Effect Determination. (FEMA finding/ SHPO/THPO concurrence on file)
　　　　　　　　　　☐ Resolution of Adverse Effect completed. (MOA on file)
　　　　　　　　　　　　Are project conditions required? ☐ YES (see section V)　☐ NO
　　　　　　　　　　　　**(Review Concluded)**

> *Comments:* This action is only the administrative obligation of programmatic Detention Support Grant Program funds. FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have potential to impact EHP resources.

## B. Endangered Species Act
☐ No listed species and/or designated critical habitat present in areas affected directly or indirectly by the federal action. **(Review Concluded)**
☒ Listed species and/or designated critical habitat present in areas affected directly or indirectly by the federal action.
　　☒ No effect to species or designated critical habitat. (See comments for justification) **(Review Concluded)**
　　☐ May affect, but not likely to adversely affect species or designated critical habitat. (FEMA determination/USFWS/NMFS concurrence on file) **(Review Concluded)**
　　☐ Likely to adversely affect species or designated critical habitat.
　　　　☐ Formal consultation concluded. (Biological Assessment and Biological Opinion on file)
　　　　　　Are project conditions required? ☐ YES (see section V)　☐ NO **(Review Concluded)**

> *Comments:* FEMA has determined that this award is purely administrative and will result in no effect to ESA-listed species or critical habitats. However, in an abundance of caution, FEMA sought and obtained concurrence from the Fish and Wildlife Service that the action is not likely to adversely affect ESA-listed species or critical habitats. The applicant will not be able to draw down the funds until FEMA reviews and approves the application including FEMA EHP review (and ESA section 7 consultation, as appropriate). In the event a submitted cost does not comply with EHP requirements, FEMA will disallow the cost.
> *Correspondence/Consultation/References:*
> *Conditions:* Project conditions are listed in Section V.

## C. Coastal Barrier Resources Act
☒ Project is not on or connected to a Coastal Barriers Resource System Unit or Otherwise Protected Area. **(Review Concluded)**
☐ Project is on or connected to CBRA Unit or Otherwise Protected Area.
　　☐ Proposed action an exception under Section 3505.a.6? **(Review Concluded)**
　　☐ Proposed action not excepted under Section 3505.a.6.
　　　　Are project conditions required? ☐ YES (see section V)　☐ NO **(Review Concluded)**

> *Comments:* This action is only the administrative obligation of programmatic Detention Support Grant Program funds. FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have potential to impact EHP resources.
> *Correspondence/Consultation/References:*
> *Conditions:*

**Disaster/Emergency/Program/Project Title:** Award of Detention Support Grant Program Funds to the State of Florida
**Grantee/Recipient:** State of Florida Division of Emergency Management

USCA11 Case: 25-12873      Document: 118      Date Filed: 02/03/2026      Page: 14 of 18

## D. Clean Water Act

☒ Project would not affect any water of the U.S. **(Review Concluded)**
☐ Project would affect waters, including wetlands, of the U.S.
　　☐ Project exempted as in kind replacement or other exemption. **(Review Concluded)**
　　☐ Project requires Section 404/401/or Section 9/10 (Rivers and Harbors Act) permit, including qualification under Nationwide Permits.
　　　Are project conditions required?　☐ YES (see section V)　☐ NO **(Review Concluded)**

> *Comments:* This action is only the administrative obligation of programmatic Detention Support Grant Program funds. FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have potential to impact EHP resources.
> *Correspondence/Consultation/References:*
> *Conditions:*

## E. Coastal Zone Management Act

☒ Project is not located in a coastal zone area and does not affect a coastal zone area. **(Review concluded)**
☐ Project is located in a coastal zone area and/or affects a coastal zone:
　　☐ State administering agency does not require consistency review. **(Review Concluded)**.
　　☐ State administering agency requires consistency review.
　　　Are project conditions required?　☐ YES (see section V)　☐ NO **(Review Concluded)**

> *Comments:* This action is only the administrative obligation of programmatic Detention Support Grant Program funds. FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have potential to impact EHP resources.
> *Correspondence/Consultation/References:*
> *Conditions:*

## F. Fish and Wildlife Coordination Act

☒ Not applicable for financial assistance. **(Review Concluded)**

> *Comments:* This action is only the administrative obligation of programmatic Detention Support Grant Program funds. FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have potential to impact EHP resources.
> *Correspondence/Consultation/References:*
> *Conditions:*

## G. Clean Air Act

☒ Project will not result in permanent air emissions. **(Review Concluded)**
☐ Project is located in an attainment area. **(Review Concluded)**
☐ Project is located in a non-attainment area.
　　☐ Coordination required with applicable state administering agency.
　　　Are project conditions required?　☐ YES (see section V)　☐ NO **(Review Concluded)**

> *Comments:* This action is only the administrative obligation of programmatic Detention Support Grant Program funds. FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have potential to impact EHP resources.
> *Correspondence/Consultation/References:*
> *Conditions:*

## H. Farmlands Protection Policy Act

☒ Project does not affect prime or unique farmland. **(Review Concluded)**
☐ Project causes unnecessary or irreversible conversion of prime or unique farmland.
　　☐ Coordination with Natural Resource Conservation Commission required.
　　　☐ Farmland Conversion Impact Rating, Form AD-1006, completed.
　　　Are project conditions required?　☐ YES (see section V)　☐ NO **(Review Concluded)**

Disaster/Emergency/Program/Project Title: Award of Detention Support Grant Program Funds to the State of Florida
Grantee/Recipient: State of Florida Division of Emergency Management
USCA11 Case: 25-12873     Document: 118     Date Filed: 02/03/2026     Page: 15 of 18

*Comments:* This action is only the administrative obligation of programmatic Detention Support Grant Program funds. FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have potential to impact EHP resources.
*Correspondence/Consultation/References:*
*Conditions:*

## I. Migratory Bird Treaty Act
☐ Project not located within a flyway zone. **(Review Concluded)**
☒ Project located within a flyway zone.
    ☒ Project does not have potential to take migratory birds. **(Review Concluded)**
    ☐ Project has potential to take migratory birds.
        ☐ Contact made with USFWS
        Are project conditions required? ☐ YES (see section V) ☐ NO **(Review Concluded)**

*Comments:* This action is only the administrative obligation of programmatic Detention Support Grant Program funds. FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have potential to impact EHP resources.
*Correspondence/Consultation/References:*
*Conditions:*

## J. Magnuson-Stevens Fishery Conservation and Management Act
☒ Project not located in or near Essential Fish Habitat. **(Review Concluded)**
☐ Project located in or near Essential Fish Habitat.
    ☐ Project does not adversely affect Essential Fish Habitat. **(Review Concluded)**
    ☐ Project adversely affects Essential Fish Habitat. (FEMA determination/USFWS/NMFS concurrence on file)
        ☐ NOAA Fisheries provided no recommendation(s). **(Review Concluded).**
        ☐ NOAA Fisheries provided recommendation(s).
            ☐ Written reply to NOAA Fisheries recommendations completed.
        Are project conditions required? ☐ YES (see section V) ☐ NO **(Review Concluded)**

*Comments:* This action is only the administrative obligation of programmatic Detention Support Grant Program funds. FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have potential to impact EHP resources.
*Correspondence/Consultation/References:*
*Conditions:*

## K. Wild and Scenic Rivers Act
☒ Project is not along and does not affect Wild and Scenic River. - **(Review Concluded)**
☐ Project is along or affects Wild and Scenic River.
    ☐ Project adversely affects WSR as determined by NPS/USFS. **FEMA cannot fund the action**. (NPS/USFS/USFWS/BLM consultation attached.)
    ☐ Project does not adversely affect WSR. (NPS/USFS/USFWS/BLM consultation attached.)
    Are project conditions required? ☐ YES (see section V) ☐ NO **(Review Concluded)**

*Comments:* This action is only the administrative obligation of programmatic Detention Support Grant Program funds. FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have potential to impact EHP resources.
*Correspondence/Consultation/References:*
*Conditions:*

## L. Other Relevant Laws and Environmental Regulations
Identify relevant law or regulations, resolution and any consultation/references such as EO 13112 Invasive Species, RCRA or State Soil & Water Conservation Laws and include any conditions by law/EO **N/A**

## II. Compliance Review for Executive Orders

**Disaster/Emergency/Program/Project Title:** Award of Detention Support Grant Program Funds to the State of Florida
**Grantee/Recipient:** State of Florida Division of Emergency Management

USCA11 Case: 25-12873    Document: 118    Date Filed: 02/03/2026    Page: 16 of 18

## A. E.O. 11988 - Floodplains

☐ Outside Floodplain and No Effect on Floodplains/Flood levels. **(Review Concluded)**
☒ Located in Floodplain or Effects on Floodplains/Flood levels.
    ☒ No adverse effect on floodplain ad not adversely affected by the floodplain. **(Review Concluded)**
    ☐ Beneficial Effect on Floodplain Occupancy/Values. **(Review Concluded)**
    ☐ Possible adverse effects associated with investment in floodplain, occupancy or modification of floodplain environment.
        ☐ 8 Step Process Complete - documentation attached. **(Review Concluded)**

*Comments:* This action is only the administrative obligation of programmatic Detention Support Grant Program funds. FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have potential to impact EHP resources.
*Correspondence/Consultation/References:*
*Conditions:*

## B. E.O. 11990 - Wetlands

☒ No Effects on Wetlands and Project Outside Wetlands. **(Review Concluded)**
☐ Located in Wetlands or effects on Wetlands.
    ☐ Beneficial Effect on Wetland. **(Review Concluded)**
    ☐ Possible adverse effect associated with constructing in or near wetland.
        ☐ Review completed as part of floodplain review.
        ☐ 8 Step Process Complete – documentation attached. **(Review Concluded)**

*Comments:* This action is only the administrative obligation of programmatic Detention Support Grant Program funds. FEMA will complete a project-specific EHP review prior to the drawdown of any funds for activities that may have potential to impact EHP resources.
*Correspondence/Consultation/References:*
*Conditions:*

# III. Other Environmental Issues

**Identify other potential environmental concerns in the comment box not clearly falling under a law or executive order (see environmental concerns scoping checklist for guidance).**

*Comments:* **N/A**
*Correspondence/Consultation/References:*
*Conditions:*

# IV. Extraordinary Circumstances

**Based on the review of compliance with other environmental laws and Executive Orders, and in consideration of other environmental factors, review the project for extraordinary circumstances.**

    \* A "Yes" under any circumstance may require an Environmental Assessment (EA) with the exception of (ii) which should be applied in conjunction with controversy on an environmental issue. If the circumstance can be mitigated, please explain in comments. If no, leave blank.

    ☐ (i) A potentially significant effect on public health or safety;
    ☐ (ii) A potentially significant effect on species or habitats protected by the ESA, Marine Mammal Protection

6

**Disaster/Emergency/Program/Project Title:** Award of Detention Support Grant Program Funds to the State of Florida
**Grantee/Recipient:** State of Florida Division of Emergency Management

USCA11 Case: 25-12873     Document: 118     Date Filed: 02/03/2026     Page: 17 of 18

☐    Act, Migratory Bird Treaty Act, Magnuson-Stevens Fishery Conservation and Management Act, or other law protecting a species or habitat;

☐    (iii) A potentially significant effect on historic properties (e.g., districts, sites, buildings, structures, or objects) that are listed in or eligible for listing in the National Register of Historic Places, affects traditional cultural properties or sacred sites, or leads to the loss or destruction of a significant scientific, cultural, or historical resource;

☐    (iv) A potentially significant effect on an environmentally sensitive area;

☐    (v) A potential or threatened violation of a Federal, State, or local law or requirement imposed to protect the environment. Some examples of other requirements to consider are: a local noise control ordinance; the requirement to conform to an applicable State Implementation Plan for air quality standards; Federal, Tribal, State, or local requirements to control hazardous or toxic substances; and environmental permits;

☐    (vi) An effect on the quality of the human environment that is likely to be highly controversial in terms of scientific validity, likely to be highly uncertain, or likely to involve unique or unknown environmental risks. This also includes effects that may result from the use of new technology or unproven technology. Controversy over, including public opposition to, a proposed action absent any demonstrable potential for significant environmental impacts does not itself constitute an extraordinary circumstance;

☐    (vii) Extent to which a precedent is established for future actions with significant effects;

☐    (viii) Significantly greater scope or size than normally experienced for this particular category of action;

☐    (ix) Potential for significant degradation of already existing poor environmental conditions. Also, initiation of a potentially significant environmental degrading influence, activity, or effect in areas not already significantly modified from their natural condition;

☐    (x) Whether the action is related to other actions with individually insignificant, but cumulatively significant impacts.

*Comments:* Project does not trigger any Extraordinary Circumstances

Disaster/Emergency/Program/Project Title: Award of Detention Support Grant Program Funds to the State of Florida
Grantee/Recipient: State of Florida Division of Emergency Management

USCA11 Case: 25-12873    Document: 118    Date Filed: 02/03/2026    Page: 18 of 18

# V. Environmental Review Project Conditions

General comments: **N/A**

Project Special Conditions:

**N/A**

Standard Conditions:
1. Any change to the approved scope of work will require re-evaluation for compliance with NEPA and other Laws and Executive Orders.
2. This review does not address all federal, state and local requirements. Acceptance of federal funding requires recipient to comply with all federal, state and local laws. Failure to obtain all appropriate federal, state and local environmental permits and clearances may jeopardize federal funding.
3. If ground disturbing activities occur during construction, applicant will monitor ground disturbance and if any potential archeological resources are discovered, will immediately cease construction in that area and notify the State and FEMA.

Monitoring Requirements: **None**