In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 25-12873

————————————

FRIENDS OF THE EVERGLADES, INC.,
  a Florida 501(c)(3) not-for-profit corporation,
CENTER FOR BIOLOGICAL DIVERSITY,
  a 501(c)(3) nonprofit organization,

*Plaintiffs-Appellees,*

MICCOSUKEE TRIBE OF INDIANS OF
FLORIDA,

*Plaintiff-Intervenor-Appellee,*

*versus*

SECRETARY OF THE UNITED STATES
DEPARTMENT OF HOMELAND SECURITY,
ACTING DIRECTOR, OF THE UNITED STATES
IMMIGRATION AND CUSTOMS ENFORCEMENT,
EXECUTIVE DIRECTOR, OF THE FLORIDA DIVISION
OF EMERGENCY MANAGEMENT,

*Defendants-Appellants,*

2                    Order of the Court                  25-12873

MIAMI-DADE COUNTY,
   a political subdivision of the State of Florida,

                                                        *Defendant.*

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:25-cv-22896-KMW

————————————————

Before JORDAN, BRANCH, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

Pursuant to Federal Rule of Appellate Procedure ("FRAP") 27 and Eleventh Circuit Rules 27-1 and 27-2,[1] Plaintiffs-Appellees Friends of the Everglades, Inc.; Center for Biological Diversity; and Miccosukee Tribe of Indians of Florida have moved for this Court to reconsider our order staying the proceedings below. For the following reasons, Plaintiffs-Appellees' motion for reconsideration is DENIED.

While our Circuit precedent does not describe the limited purposes of a motion for reconsideration, our caselaw about FRAP 40, Petitions for Rehearing, and Motions for Reconsideration at the district court level offer guidance. *See* FRAP 40(a) ("Panel rehearing is the ordinary means of reconsidering a panel decision[.]").

---

[1] FRAP 27 provides the content requirements of a motion, generally. Eleventh Circuit Rule 27-1 provides the form requirements of a motion, generally, and Rule 27-2 provides the timing requirements of a motion for reconsideration, specifically.

25-12873                Order of the Court                3

The purpose of a petition for rehearing is to "state … each point of law or fact that the petitioner believes the court has over-looked or misapprehended."  FRAP 40.  In considering a petition for rehearing, "we do not consider issues that are first presented in an application for rehearing" "absent exceptional circumstances." *United States v. Martinez*, 96 F.3d 473, 475 (11th Cir. 1996) (citing *United States v. Richards*, 646 F.2d 962, 963 (5th Cir. 1981)).  This is because "[h]aving tried and appealed a case on one theory, an un-successful party may not then use a petition for rehearing as a de-vice to test a new theory."  *Id.* (citing *United States v. Sutherland*, 428 F.2d 1152, 1158 (5th Cir. 1970)).  This is a "long-standing prudential rule" that serves the "valuable purposes" of "judicial economy and finality."  *United States v. Levy*, 416 F.3d 1273, 1275-76 (11th Cir. 2005); *see also Reilly v. Herrera*, 729 Fed. App'x 760, 763 (11th Cir. 2018) ("We have repeatedly declined to consider issues raised for the first time in a petition for rehearing.").

A motion for reconsideration at the district court level is an-alyzed under similar principles.  It "cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment."  *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 977 (11th Cir. 2009).  "This prohibition includes new arguments that were 'previously available, but not pressed.'" *Id.* (citing *Stone v. Wall*, 135 F.3d 1438, 1442 (11th Cir. 1998)).  "De-nial of a [motion for reconsideration] is 'especially soundly exer-cised' when a party gives no reason for not previously raising an issue."  *Id.*

4                          Order of the Court                        25-12873

With these principles in mind, we turn now to the motion before us.  Plaintiffs-Appellees' motion for reconsideration raises new arguments that were previously available but not pressed and they provide no reason for not previously raising them.  *See id.*; *Martinez*, 96 F.3d at 475.  Because Plaintiffs-Appellees' arguments are improperly raised for the first time in their motion, we will not consider them now.

The nature of a motion for reconsideration notwithstanding, we briefly respond to the points raised by our dissenting colleague.

As to appellate jurisdiction, our authority to stay the proceedings in the district court pending resolution of the State and Federal Defendants' appeal has been recognized by the Supreme Court.  In *Ex Parte Nat'l Enameling & Stamping Co.*, the Court held that a case "is to proceed in the lower court" while the appeal of an interlocutory order granting an injunction is pending "unless otherwise specially ordered."  201 U.S. 156, 162 (1906).  Here, we issued such an order.  *See* 11A C.A. Wright, A. Miller & M.K. Kane, Fed. Prac. & Proc. § 2962 (3d ed. 2013) ("An appeal from the grant or denial of a preliminary injunction does not divest the trial court of jurisdiction or prevent it from taking other steps in the litigation while the appeal is pending. . . .  The only restriction on the trial court's power occurs if the appellate court enters an order staying the lower court until the appeal has been completed."); *see also Upside Foods Inc. v. Comm'r, Fla. Dep't of Agric. and Consum. Serv. et al.*,

-- F.4th --, 2026 WL 797121, at *6 (11th Cir. Mar. 23, 2026) ("A district court lacks the jurisdiction to take any action that would alter the status of the case on interlocutory appeal.") (citation modified).

As to the recent developments discussed in our colleague's dissent, "[o]ur adversarial judicial system requires that the parties develop the record, not that the appellate courts do so." *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1347 (11th Cir. 2021). This means "[w]e do not consider facts outside the record," particularly when Plaintiffs-Appellees' motion to supplement the record with those same facts was previously denied. *See Turner v. Burnside*, 541 F.3d 1077, 1086 (11th Cir. 2008).

For the reasons stated above, Plaintiffs-Appellees have not alleged any points of law or fact that this Court overlooked or misapprehended, and thus the motion for reconsideration is **DENIED**.

25-12873                  JORDAN, J., Dissenting                        1

JORDAN, Circuit Judge, Dissenting:

When the majority granted a stay of the district court's preliminary injunction, it also provided the state and federal defendants with additional unprecedented relief—it stayed *all* proceedings in the district court, even as to claims which have not yet been addressed and which are unrelated to the preliminary injunction appeal. The state defendants asked for this additional relief in their stay motion, but did not provide any legal authority to support their request. When the majority granted this relief, it too did not cite to any authority to support its ruling.

Now the majority denies the plaintiffs' emergency motion for reconsideration of this additional stay relief, again without providing any legal support for the blanket stay. As far as I can tell, the majority's action has no basis in law. I therefore respectfully dissent.

**I**

We are a "court of limited jurisdiction," and as a result "we may exercise appellate jurisdiction only where 'authorized by Constitution and statute.'" *Jenkins v. Prime Ins. Co.*, 32 F.4th 1343, 1345 (11th Cir. 2022) (citation omitted). In this case, the statute that gives us appellate jurisdiction is 28 U.S.C. § 1292(a)(1), which allows circuit courts to review "interlocutory orders of the district courts . . . granting, continuing, refusing, or dissolving injunctions, or refusing to dissolve or modify injunctions . . . ." The only order subject to review here under § 1292(a)(1) is the district court's preliminary injunction order.

As we have explained, "§ 1292(a)(1) must be construed narrowly so as to limit the availability of interlocutory appeals in cases involving injunctions." *Birmingham Fire Fighters Ass'n 117 v. Jefferson County*, 280 F.3d 1289, 1293 (11th Cir. 2002). We have therefore long held that "[a] litigant's right to appeal interlocutory injunctions only goes to the injunction itself, and he cannot force consideration of the merits of the underlying action except as necessary to review the injunction." *Gould v. Control Laser Corp.*, 650 F.2d 617, 621 n.7 (5th Cir. Unit B July 13, 1981). *See also Allen v. Miss. Comm'n of L. Enf't*, 424 F.2d 285, 290 (5th Cir. 1970) ("[O]ur review is strictly limited to the denial of the preliminary injunction.").

The district court issued a preliminary injunction only on the plaintiffs' NEPA claims. It did not address any of the plaintiffs' other claims. Indeed, the state and federal defendants have not yet answered the complaint or moved to dismiss any of the claims asserted by the plaintiffs. We therefore have no appellate jurisdiction—and therefore no authority—to order a stay of the entire action in the district court. In other words, we have no business micromanaging aspects of the case that lack a nexus to the preliminary injunction order being appealed. *See, e.g., In re Bayshore Ford Truck Sales, Inc.*, 471 F.3d 1233, 1260–61 (11th Cir. 2006) (district court's order excluding expert report, which had nothing to do with injunction, could not be reviewed under § 1292(a)(1) or under pendent appellate jurisdiction); *Teamsters Loc. Unions 745 v. Braswell Motor Freight*, 428 F.2d 1371, 1373 (5th Cir. 1970) (holding that an order of the district court referring the matter of damages to a special master could not reviewed under 28 U.S.C. § 1292).

25-12873                 JORDAN, J., Dissenting                    3

There is no pendent appellate jurisdiction either.  That is be-
cause the district court has not issued any orders on the non-NEPA
claims.  *See Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 814,
820 (11th Cir. 2010) ("To qualify for review under our pendent ap-
pellate jurisdiction, the nonappealable order must be inextricably
intertwined with an appealable order, or review of the former must
be 'necessary to ensure meaningful review of the latter.'") (citation
omitted).

## II

In addition to lack of appellate jurisdiction, there is another
fundamental reason why the majority's stay of all proceedings in
the district court is wrong.  It has been hornbook law for over a
century that an interlocutory appeal from a preliminary injunction
does not deprive the district court of jurisdiction to continue with
the case.  Indeed, the court can even proceed to trial while such an
appeal is pending.  The Supreme Court has made this clear, and so
have we.  *See, e.g.*, *Ex Parte Nat'l Enameling & Stamping Co.*, 201 U.S.
156, 162 (1906) ("Obviously that which is contemplated is a review
of the interlocutory order [granting or continuing an injunction],
and of that only.  It was not intended that the cause as a whole
should be transferred to the appellate court prior to the final de-
cree.  The case, except for the hearing on the appeal from the in-
terlocutory order, is to proceed in the lower court as though no
such appeal had been taken, unless otherwise specially ordered.");
*Johnson v. 3M Co.*, 55 F.4th 1304, 1309 (11th Cir. 2022) ("[A]n inter-
locutory appeal does not completely divest the district court of ju-
risdiction. The district court has authority to proceed forward with

portions of the case not related to the claims on appeal.") (internal quotation marks and citation omitted); *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1309 (11th Cir. 2003) (same as *3M*); *United States v. Lynd*, 321 F.2d 26, 28 (5th Cir. 1963) (recognizing the "general proposition that an appeal from the denial or granting of a preliminary injunction should not ordinarily delay the final trial of the case on its merits").

Other circuits also recognize this well-settled principle. *See, e.g.*, *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1174 (6th Cir. 1995) ("It is well established that an appeal from an order granting or denying a preliminary injunction does not divest the district court of jurisdiction to proceed with the action on the merits.") (quotation marks and citation omitted); *Railway Lab. Execs. Ass'n v. City of Galveston*, 898 F.2d 481, 481 (5th Cir. 1990) ("Because the pendency of the interlocutory appeal from the district court's judgment denying the preliminary injunction did not divest the district court of jurisdiction to proceed with other aspects of the case, that court did not act improperly in considering the plaintiff's petition for a permanent injunction.") (footnote omitted); *United States v. Price*, 688 F.2d 204, 215 (3d Cir. 1982) ("Although the filing of a notice of appeal ordinarily divests the district court of jurisdiction, in an appeal from an order granting or denying a preliminary injunction, a district court may nevertheless proceed to determine the action on the merits."); *United States v. City of Chicago*, 534 F.2d 708, 711 (7th Cir. 1976) ("An appeal from an interlocutory order does not divest the trial court of jurisdiction to continue deciding other issues involved in the case."). And respected treatises on federal

25-12873                 JORDAN, J., Dissenting                 5

practice do as well.  *See, e.g.,* 20 James Wm. Moore et al., Moore's Federal Practice – Civil § 303.32 (3d ed. 2025) ("[A]n appeal from an order granting or denying a preliminary injunction does not divest the district court of jurisdiction to proceed with the action on the merits."); 11A C.A. Wright, A. Miller & M.K. Kane, Fed. Prac. & Proc. § 2962 (3d ed. 2013 & 2023 Supp.) ("[T]he district court retains jurisdiction . . . and the case may proceed to a trial on the merits.").

Given this recognized principle, I cannot understand how or why the majority believes it can stay all proceedings in the district court.  The majority cites language from *National Enameling* suggesting that a district court can proceed with the merits "unless otherwise specially ordered," 201 U.S. at 162, but it still does not explain *why* it stayed the entire case.  The majority's failure to adequately explain its decision speaks volumes.

The majority rests its denial of the motion for reconsideration on the principle that we will not, absent exceptional circumstances, consider issues raised for the first time in a petition for rehearing.  This principle, however, is simply inapplicable.

First, as explained above, we lack appellate jurisdiction to consider "the merits of the underlying action except as necessary to review the injunction."  *Gould*, 650 F.2d at 621 n.7.  And we always have an obligation to inquire into the basis of our jurisdiction, whether or not any party has raised it.  *See Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1275 (11th Cir. 2012).  The majority's reliance on an abandonment principle to decline to reconsider its

6                    JORDAN, J., Dissenting                    25-12873

blanket stay order is misplaced given that the question is whether such a stay is precluded by lack of appellate jurisdiction.

Second, the majority faults the plaintiffs for "rais[ing] new arguments that were previously available but not pressed," and "provid[ing] no reason for not previously raising them." Order at 4. But that, too, is mistaken.

Our prudential rule against considering new *issues* does not generally bar considering new *arguments* because litigants "can waive or forfeit positions or issues . . . but not authorities or arguments[.]" *Gould v. Interface, Inc.*, 153 F.4th 1346, 1355 (11th Cir. 2025) (internal quotation marks and citation omitted). Here, the plaintiffs *expressly* opposed the state defendants' unsupported request for a stay of all district court proceedings. *See* D.E. 35 at 12–20, 54. Because they addressed and responded to the defendants' arguments on this issue, they are not barred from asserting new arguments in support of their position.

### III

Let me close with some additional observations based on recent developments.

### A

As a reminder, the district court concluded that the plaintiffs had demonstrated a substantial likelihood of success on their NEPA claims because it found that the detention facility at issue constituted a major federal action. *See* 42 U.S.C. §§ 4336e(10)(A) & (10)(B)(i). The court found that the facility "was the product of a

25-12873                JORDAN, J., Dissenting                7

[Department of Homeland Security] request, that there would be a federal reimbursement to [Florida] for the facility's costs, that detainees are dropped off at the site by federal agents, and that [Immigration and Customs Enforcement] inspects the facility." *Friends of the Everglades, Inc. v. Noem*, 796 F. Supp. 3d 1234, 1248 (S.D. Fla. 2025). The court noted that (now former) DHS Secretary Kristi Noem and Florida Governor Ron DeSantis—high level federal and state executive decisionmakers—confirmed that the detention facility would be funded by the federal government. *See id.* at 1277. And to eliminate any doubt on the matter, the Acting Administrator of the Federal Emergency Management Agency, David Richardson, confirmed that the application process was rigged in favor of Florida. He stated that DHS and FEMA had announced $600 million in grant funding for which Florida was the only eligible applicant. *See id.*; D.E. 21-2 ¶ 3.

The majority ruled it was "wholly unreasonable to conclude from the naked assurances of politicians and lawyers that the [f]acility is federally funded when not only is the record devoid of credible evidence that a legally binding payment decision has been made, but the record undisputedly contradicts that finding." Maj. Initial Order at 21 (emphasis omitted). In doing so, the majority disregarded the Supreme Court's admonition that a finding of fact governs as long as it is plausible. *See Cooper v. Harris*, 581 U.S. 285, 293 (2017).

Recent events have shown that the district court's factual determinations about federal funding for, and involvement in, the

8                JORDAN, J., Dissenting                25-12873

detention facility were spot on.  On September 30, 2025, the day before the federal government shut down due to a budget impasse in Congress, "FEMA gave [Florida] $608 million to pay for the construction and management" of the facility (and another immigration detention facility being built in the state).  *See* Ana Goñi-Lassen, *Feds Pay Florida $608M for Alligator Alcatraz Day Before Government Shutdown*, USA Today (Oct. 2, 2025).  *See also* Christina Vazquez, *Nine-figure FEMA Payout for 'Alligator Alcatraz' Adds Twist to Ongoing Environmental Lawsuit*, WPLG Local 10 News (Oct. 2, 2025) ("The Governor's Office confirmed the funds will pay for construction and management of Alligator Alcatraz and 'Deportation Depot,' a state-run immigration detention center located in Sanderson."); Sergio R. Bustos, *FEMA Awards Florida $608 Million for 'Alligator Alcatraz,' Reports Local 10 News*, WLRN Public Media (Oct. 2, 2025) ("A spokesperson for the Department of Homeland Security (DHS) told Local 10 News that Florida's application for FEMA funds was approved on Tuesday, just one day before the federal shutdown took effect.  The state was awarded the full amount it requested.").

Government emails produced in a pending state-court case reveal that Florida submitted its grant application on August 7, 2025.  They also confirm that the federal government later approved Florida's application and awarded it over $600 million.  *See Friends of the Everglades, Inc. v. Florida Div. of Emergency Mgmt.*, Case No. 2025 CA 001972 (Fla. 2d Jud. Cir. 2025), D.E. 20, Exhs. 7–8.  *See also* D.E. 91, Exhs. 2 (transmittal emails), 3 (including FEMA award

25-12873                JORDAN, J., Dissenting                9

letter).  Government documents attached to the defendants' motion to supplement the record are not inconsistent with that conclusion, adding only that the funds are currently on hold.  *See* D.E. 104, Exhs. 1–3.  Florida's application and the federal government's award of the grant are likely appropriate subjects of judicial notice pursuant to Fed. R. Evid. 201(b).  *See Gose v. Native Am. Servs. Corp.*, 109 F.4th 1297, 1308 n.13 (11th Cir. 2024) ("'Absent some reason for mistrust, courts have not hesitated to take judicial notice of agency records and reports.'") (quoting *Terrebonne v. Blackburn*, 646 F.2d 997, 1000 n.4 (5th Cir. 1981) (en banc)).

The district court's factual finding that the detention center would be funded by federal dollars, then, is more than plausible—it is very likely to be correct in the end.

**B**

One last thing.  As noted, Florida submitted its grant application to the federal government on August 7, 2025, weeks before the district court issued the preliminary injunction.  Yet neither the state defendants nor the federal defendants, nor their counsel, notified the district court—which was acting as fact-finder—of Florida's pending application.  They also did not notify us—the stay panel—of that application while their motion to stay was under consideration.

As part of its rationale for granting a stay, the majority declared that DHS had "not *received, processed*, or approved any applications for funding[.]"  Maj. Initial Order at 18 (emphasis added).  When our panel issued the stay order, none of the defendants or

10                    JORDAN, J., Dissenting                    25-12873

their counsel sought to correct the majority's misconception that Florida had not yet applied for the federal grant.  This failure was significant because, as noted, Florida was the only eligible applicant for the grant.  Once Florida submitted its application, federal approval was—as former DHS Secretary Noem and Governor DeSantis had proclaimed—essentially a *fait accompli*.

Attorneys "always ha[ve] a duty of candor to the tribunal." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).  *See also Douglas v. Donovan*, 704 F.2d 1276, 1279 (D.C. Cir. 1983) ("As officers of the court, counsel have an obligation to ensure the tribunal is aware of significant events that may bear directly on the outcome of litigation.  This is especially true for government attorneys, who have special responsibilities to both th[e] court and the public at large.").  The failure to disclose Florida's pending application to the district court or to us does not speak well of counsel for the state defendants and the federal defendants.

### IV

I respectfully dissent from the majority's refusal to reconsider its blanket stay of all proceedings in the district court.